Richard S. Taffet
Edward L. Powers
**BINGHAM McCUTCHEN LLP**
399 Park Avenue
New York, NY 10022-4689
Telephone: (212) 705-7000
Facsimile: (212) 752-5378

*Attorneys for Plaintiff*
*Brassica Protection Products LLC*



RECEIVED SEP 0 5 2007 U.S.D.C. S.D. N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRASSICA PROTECTION PRODUCTS LLC,

    Plaintiff,

    -against-

CAUDILL SEED & WAREHOUSE CO., INC.
d/b/a CAUDILL SEED CO.,

    Defendant.

---

JUDGE SCHEINDLIN

07 CIV. 7844

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Plaintiff, Brassica Protection Products LLC ("Brassica"), by and through its undersigned counsel, Bingham McCutchen LLP, as for its Complaint against Defendant Caudill Seed & Warehouse Co., Inc. d/b/a Caudill Seed Co. ("Caudill"), hereby avers, upon knowledge as to itself, and otherwise upon information and belief, as follows:

### NATURE OF THE ACTION

1.     This is a civil action for infringement of United States Patents Nos. 5,725,895 (the "'895 patent"); 5,968,567 (the "'567 patent"); 6,177,122 (the "'122 patent"); and 6,242,018 (the "'018 patent") (collectively, "the patents-in-suit") brought pursuant to 35 U.S.C. § 271, *et seq.* and for breach of contract.

A/72195362.4

## THE PARTIES

2. Plaintiff Brassica is a Delaware limited liability company having a principal place of business at 2400 Boston Street, Suite 358, Baltimore, Maryland 21224.

3. Defendant Caudill is a corporation organized and existing under the laws of the State of Kentucky having a principal place of business at 1402 West Main Street, Louisville, Kentucky 40203.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(c) and 1400(b). Caudill resides and transacts business in this district pursuant to an agreement between Brassica and Caudill whereby Caudill has submitted to this forum and the exclusive jurisdiction of the courts in this district for the purpose of resolving disputes between the parties.

## FACTS

**The Patents-In-Suit**

6. The '895 patent was duly and legally issued by the United States Patent and Trademark Office ("the USPTO") on March 10, 1998. The inventors of the subject matter claimed in the '895 patent, Jed W. Fahey and Paul Talalay, assigned the '895 patent to The Johns Hopkins School of Medicine, a division of The Johns Hopkins University. Reexamination of the '895 patent was requested on October 12, 1999, and the corresponding reexamination certificate issued on October 10, 2000. The '895 patent and its reexamination certificate are attached as Exhibit A. All claims of the '895 patent at issue in this action are valid and enforceable.

7. The '567 patent was duly and legally issued by the USPTO on October 19, 1999. The inventors of the subject matter claimed in the '567 patent, Jed W. Fahey and Paul Talalay,

assigned the '567 patent to The Johns Hopkins School of Medicine, a division of The Johns Hopkins University. The '567 patent is attached as Exhibit B. All claims of the '567 patent at issue in this action are valid and enforceable.

8. The '122 patent was duly and legally issued by the USPTO on January 23, 2001. The inventors of the subject matter claimed in the '567 patent, Jed W. Fahey and Paul Talalay, assigned the '122 patent to The Johns Hopkins School of Medicine, a division of The Johns Hopkins University. The '122 patent is attached as Exhibit C. All claims of the '122 patent are valid and enforceable.

9. The '018 patent was duly and legally issued by the USPTO on June 5, 2001. The inventors of the subject matter claimed in the '018 patent, Jed W. Fahey and Paul Talalay, assigned the '018 patent to The Johns Hopkins School of Medicine, a division of The Johns Hopkins University. The '018 patent is attached as Exhibit D. All claims of the '122 patent are valid and enforceable.

10. Pursuant to a License Agreement with an effective date of March 10, 1998, The Johns Hopkins University granted Brassica an exclusive license of the Johns Hopkins University's entire right and interest, *inter alia*, with respect to the patents-in-suit (defined in the Agreement as "Patent Rights"), to make, have made, use and sell "Licensed Products" in the United States and worldwide, for the life of the patents. Licensed Products as defined in the License Agreement are:

> any material, compositions, drug, ingredient, extract, supplement from extracts, fresh food or product derived from fresh foods, or any other product, the manufacture, use or sale of which would constitute, but for the license granted to the Company [Brassica] pursuant to this Agreement, an infringement of a claim of PATENT RIGHTS (infringement shall include, but is not limited to, direct contributory or inducement to infringe).

**The Agreement**

11.  By Sublicense, Manufacture and Distribution Agreement, effective as of December 6, 2004 (the "Agreement"), Brassica granted Caudill a non-exclusive sublicense to use and exploit the patents-in-suit, as well as Brassica "Know-How" (defined in the Agreement), for the purpose of manufacturing, distributing and selling certain products (the "Products") in the United States and Canada. Under the Agreement, Products consist of or comprise extracts of glucosinolates or isothiocyanates from cruciferous seeds or sprouts. A true and correct copy of the Agreement is attached as Exhibit E.

12.  Pursuant to the Agreement, Brassica also furnished Caudill with Brassica's "Confidential Information" (defined in the Agreement) for using the patented inventions as claimed by the patents-in-suit.

13.  The Agreement required Caudill to manufacture the Products in accordance with current good manufacturing practices ("GMP") and written quality control specifications ("Specifications") as established by Brassica. Pursuant to section 3.8 of the Agreement, Brassica had the right to "amend or supplement the Specifications unilaterally at any time for the purpose of complying with Laws, Regulations, and GMPs."

14.  Brassica transmitted Specifications to Caudill in December 2005. In February 2006, Brassica made minor revisions to the Specifications and transmitted the revised Specifications to Caudill. At no time over the next 17 months did Caudill object to or reject the Specifications. A true and correct copy of the Specifications, as revised, is attached to the Complaint as Exhibit F.

15.  With respect to GMP requirements, Brassica advised Caudill at various times that in accordance with the Agreement, Caudill was obligated to meet the requirements of proposed

21 CFR Parts 111 and 112, Current Good Manufacturing Practice in Manufacturing, Packing, or Holding Dietary Ingredients and Dietary Supplements (the "Dietary Supplement Regulations").

16. In October 2006, Brassica wrote to Caudill requesting confirmation that Caudill would adhere to the Dietary Supplement Regulations. By email dated November 14, 2006, Caudill's Chief Executive Officer, Dan Caudill, responded by noting that Caudill was sending production and GMP documents to Brassica, and stating:

> I can assure you that these GMPs meet or exceed the requirements in the Part II Department of Health and Humans Services, Food and Drug Administration, 21 CFR Parts 111 and 112 Current Good Manufacturing Practice in Manufacturing, Packing, or Holding Dietary Supplements; Proposed Rule [the Dietary Supplement Regulations].

17. Caudill was further obligated under the Agreement to comply with requirements related to labeling and packaging. The Agreement defines "Labeling" in section 1.21 as "any and all material used to label either the Product, the Packaging or any promotional materials." "Packaging" is defined in section 1.30 as "all material used in packaging, promotional materials or accompanying the Product . . . ."

18. Section 3.4 of the Agreement required Caudill to use only Labeling and Packaging approved in advance in writing by Brassica.

19. Caudill was also required to obtain Brassica's "prior express written approval of any claims, including, without limitation, any health claims or claims asserting that the Product is beneficial to a consumer, that [Caudill] intends to make with respect to the Product" (section 4.3(b) of the Agreement) and Caudill agreed that it "shall not use" The John Hopkins University name in any Labeling, Packaging or other promotional materials without Brassica's and The Johns Hopkins University's prior express written consent (section 4.4 of the Agreement).

20. Caudill further agreed to make quarterly royalty payments to Brassica pursuant to section 5.2 of the Agreement. In addition, Caudill also agreed to pay a minimum royalty to Brassica of $100,000 for the twelve months ending December 6, 2007, less the amount it paid in actual royalties for the same period.

21. Section 10.3 states that "[e]ach of the following events shall constitute an 'Event of Default' by [Caudill]," including:

> (c) <u>Quarterly Payment</u>: failure to pay the Quarterly Payment when due;
>
> (e) <u>Quality Control</u>: material breach of an obligation relating to the Laboratory or manufacture of the Product;
>
> (f) <u>Material Breach</u>: any other material breach of this Agreement.

22. Section 10.2(a) of the Agreement provides that Brassica may terminate the Agreement for certain "Event[s] of Default which Caudill has not cured to the reasonable satisfaction of [Brassica] . . . within 30 days of Brassica's written notice" to Caudill. Section 10.2(a) also states that Caudill has five days from notice to cure an Event of Default for failure to make a quarterly payment.

23. Section 10.4 of the Agreement provides that upon termination of the Agreement Caudill is required (i) to cease the production, manufacture, distribution, sale, use or advertisement of the Products, and (ii) to return Brassica's Confidential Information to Brassica.

**The Breaches of the Agreement**

24. Caudill failed to manufacture Products in accordance with GMP and the quality control Specifications. In addition, despite Caudill's clear and unambiguous obligation to obtain Brassica's written, advance approval of Labeling and Packaging, Caudill repeatedly used or permitted the use of Labeling and Packaging that was not approved in advance by Brassica.

25. Caudill also failed to comply with the Agreement with respect to product samples, marketing, and customer communication files, and Caudill failed to meet other contractual obligations that were confirmed by Caudill in writing in August 2006 regarding irradiation, inventory, and labeling of certain Products.

26. By letter dated June 8, 2007, Brassica notified Caudill (the "Default Notice") that it was in default under sections 10.3(e) and (f) of the Agreement.

27. In accordance with the Agreement, the Default Notice stated that the termination of the Agreement would not occur if within 30 days from the notice Caudill "cures the Events of Default to the reasonable satisfaction" of Brassica.

28. In the 30 days that followed the Default Notice (the "Cure Period"), Caudill failed to cure its breaches of the Agreement. Instead, on the 29th day of the Cure Period, Caudill requested, for the sole purpose of negotiating a possible new sublicense, an extension of time with regard to the termination date.

29. Brassica agreed to defer the termination date of the Agreement for nine days, *i.e.*, until July 21, 2007. The letter agreeing to the extension stated: "If on or before July 20, 2007, [Brassica] and [Caudill] do not enter into a new . . . agreement, then the [June 8, 2007] Letter shall continue in effect and the Effective Date [of termination] shall be July 21, 2007.

30. Brassica and Caudill did not enter into a new sublicense agreement.

31. The Agreement terminated on July 21, 2007.

32. Caudill thereafter failed to pay Brassica the April - June 2007 quarterly royalty payment, which was due on July 25, 2007.

33. Brassica notified Caudill of this Event of Default of nonpayment on or about August 7, 2007.

34. Caudill did not cure this Event of Default, which constitutes a separate basis for the termination of the Agreement.

35. In addition, with the termination of the Agreement effective July 21, 2007, Caudill owes -- and has not paid -- Brassica the prorated minimum royalty, which is approximately $56,600.

36. Notwithstanding the termination of the Agreement, Caudill continues to produce, manufacture, distribute, sell and/or offer for sale within the United States Products covered by the patents-in-suit, including Products Caudill is marketing under the Caudill division name "CS Agra" or "CS Health."

37. Notwithstanding the termination of the Agreement, Caudill continues to perform within the United States methods that are the subject of the patents-in-suit.

38. Caudill has not returned any Confidential Information to Brassica.

## COUNT 1

### (Infringement of '895 patent)

39. Paragraphs 1-38 are incorporated by reference as if fully stated herein.

40. Caudill is directly infringing, contributorily infringing, and/or inducing the infringement of the '895 patent without authority and in violation of 35 U.S.C. § 271, *et seq*.

41. Caudill's infringing conduct has been undertaken willfully.

42. By reason of Caudill's infringing acts, Brassica has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT 2

### (Infringement of '567 patent)

43. Paragraphs 1-42 are incorporated by reference as if fully stated herein.

44. Caudill is directly infringing, contributorily infringing, and/or inducing the infringement of the '567 patent without authority and in violation of 35 U.S.C. § 271, *et seq.*

45. Caudill's infringing conduct has been undertaken willfully.

46. By reason of Caudill's infringing acts, Brassica has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT 3

### (Infringement of '122 patent)

47. Paragraphs 1-46 are incorporated by reference as if fully stated herein.

48. Caudill is directly infringing, contributorily infringing, and/or inducing the infringement of the '122 patent without authority and in violation of 35 U.S.C. § 271, *et seq.*

49. Caudill's infringing conduct has been undertaken willfully.

50. By reason of Caudill's infringing acts, Brassica has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT 4

### (Infringement of '018 patent)

51. Paragraphs 1-50 are incorporated by reference as if fully stated herein.

52. Caudill is directly infringing, contributorily infringing, and/or inducing the infringement of the '018 patent without authority and in violation of 35 U.S.C. § 271, *et seq.*

53. Caudill's infringing conduct has been undertaken willfully.

54. By reason of Caudill's infringing acts, Brassica has suffered and will continue to suffer monetary damages and irreparable harm.

## COUNT 5

### (Breach of Contract)

55. Paragraphs 1- 54 are incorporated by reference as if fully stated herein.

56. The Agreement constituted a valid and binding contract between Brassica and Caudill.

57. Brassica fully and faithfully performed its obligations under the Agreement.

58. Caudill has breached the Agreement by failing to meet its performance obligations, including, *inter alia*, failing to comply with GMP and the Specifications, and failing to comply with its Labeling and Packaging obligations.

59. Caudill has further breached the Agreement by failing, without justification, to cease the production, manufacture, distribution, sales and/or offers for sale of the Products.

60. Caudill has further breached the Agreement by failing to pay the contractually specified royalty payments for the second quarter of 2007 and the prorated minimum royalty payment due under the terminated Agreement.

61. Caudill further breached the Agreement by failing to return Brassica's Confidential Information.

62. As a direct and proximate result of the foregoing, Brassica has suffered and will continue to suffer irreparable harm and monetary damages.

## DEMAND FOR JURY TRIAL

Brassica hereby demands a jury trial as to all triable issues.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Brassica prays for the following relief:

A. A judgment in favor of Brassica that Defendant Caudill has infringed, directly and indirectly, U.S. Patent No. 5,725,895, as alleged herein;

B.   A judgment in favor of Brassica that Defendant Caudill has infringed, directly and indirectly, U.S. Patent No. 5,968,567, as alleged herein;

C.   A judgment in favor of Brassica that Defendant Caudill has infringed, directly and indirectly, U.S. Patent No. 6,177,122, as alleged herein;

D.   A judgment in favor of Brassica that Defendant Caudill has infringed, directly and indirectly, U.S. Patent No. 6,242,018, as alleged herein;

E.   A judgment and order awarding Plaintiff Brassica damages under 35 U.S.C. § 284, including treble damages for willful infringement and supplemental damages for any continuing post-verdict infringement up and until entry of final judgment with an accounting, as needed;

F.   A judgment and order declaring this to be an exceptional case and awarding Plaintiff Brassica the costs of this action (including all disbursements) and attorneys' fees as provided by 35 U.S.C. § 285;

G.   A judgment and order that Defendant Caudill, its agents, employees, representatives, successors, and assigns, and those acting in privity or in concert therewith, be preliminarily and permanently enjoined from (i) practicing the claims at issue of the U.S. Patents Nos. 5,725,895; 5,968,567, 6,177,122; and 6,242,018 and (ii) further production, manufacture, distribution, sales or offers for sale of the Products as required by the Agreement;

H.   A judgment and order awarding Plaintiff Brassica monetary damages for Caudill's breaches of the Agreement;

I.   A judgment and order that Defendant Caudill, its agents, employees, representatives, successors, and assigns, and those acting in privity or in concert therewith, be

preliminarily and permanently enjoined from using Plaintiff Brassica's Confidential Information and ordered to return such information to Brassica, and awarding Brassica monetary damages;

J. A judgment and order awarding Plaintiff Brassica pre-judgment and post-judgment interest on the damages awarded;

K. Such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

Dated: September 5, 2007

*(signature)*
Richard S. Taffet
Edward L. Powers
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York  10022
(212) 705-7000
*Attorneys for Plaintiff*
*Brassica Protection Products LLC*

Of Counsel
*(Not admitted in SDNY)*
Malcolm K. McGowan
Erin M. Dunston
BINGHAM McCUTCHEN LLP
2020 K Street, N.W.
Washington, D.C.  20006
(202) 373-6000