UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
BRASSICA PROTECTION PRODUCTS LLC,    :    1:07-cv-07844-SAS

                      Plaintiff,    :

      -against-    :

CAUDILL SEED & WAREHOUSE CO., INC.    :

                      Defendant.    :
-------------------------------------------------------------X

## OPENING BRIEF IN SUPPORT OF
## DEFENDANT CAUDILL SEED & WAREHOUSE CO., INC.'S MOTION TO TRANSFER, STAY, OR DISMISS

Gregory P. Gulia
Vanessa C. Hew
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
(212) 692-1062
(212) 202-6151 (fax)
GPGulia@duanemorris.com
VCHew@duanemorris.com

OF COUNSEL:

Ann G. Schoen
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6128
(513) 651-6981 (fax)
aschoen@fbtlaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................................... 1

     A.   The Parties ......................................................................................................... 1

     B.   The Patents In Suit ............................................................................................. 3

     C.   The Litigation .................................................................................................... 3

ARGUMENT .................................................................................................................... 6

I.   THE NEW YORK FEDERAL ACTION SHOULD BE DISMISSED OR STAYED IN
     FAVOR OF THE FIRST-FILED KENTUCKY ACTION ........................................... 6

     A.   The Forum Selection Clause In The Agreement Is Not Determinative Of The
          Proper Venue ..................................................................................................... 6

          1.   The Forum Selection Clause Does Not Apply To This Patent Dispute ....... 6

               a.   The Forum Selection Clause Scope Is Narrow ................................. 6

               b.   The Gist Of The Parties' Dispute Is Not A Contract Dispute ......... 7

          2.   The Forum Selection Clause Is At Most One Factor To Be Considered In
               Deciding The Proper Venue ........................................................................ 8

     B.   The "First-Filed" Rule Applies .......................................................................... 9

     C.   Venue Is Proper In Kentucky ........................................................................... 11

     D.   The Filing of the State Court Action Has No Impact on the First-To-File
          Analysis ........................................................................................................... 12

II.  ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE WESTERN
     DISTRICT OF KENTUCKY UNDER 28 USC § 1404(a) ........................................ 13

CONCLUSION ................................................................................................................ 15

CERTIFICATE OF SERVICE ........................................................................................ 17

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Bense v. Interstate Battery System*, 683 F.2d 718 (2d Cir. 1982) ................................... 7

*Caville v. Malibu Toys, Inc.*, No. 03 Civ. 9727, 2004 U.S. Dist. LEXIS 12514
    (S.D.N.Y. 2004) ........................................................................................... 13

*City of New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991) .................................. 9

*Compass Worldwide, Inc. v. Pinnacle Equipment, Inc.*, 280 F. Supp. 2d 641
    (W.D.Ky. 2003) ........................................................................................... 11

*Cuno, Inc. v. Hayward Industrial Prod., Inc.*, No. 03-CV-3076, 2005 U.S. Dist.
    LEXIS 8886 (S.D.N.Y. May 11, 2005) .................................................... 6, 7

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ........................................ 9

*First City National Bank & Trust Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) ........ 9, 10

*Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931 (Fed. Cir. 1993) ............................. 10

*Light v. Taylor*, No. 05-CV-5003, 2007 U.S. Dist. LEXIS 5855 (S.D.N.Y.
    Jan. 29, 2007) ............................................................................................... 6

*Martin v. Graybar Electric Co.*, 266 F.2d 202 (7th Cir. 1959) ................................. 10

*Medimmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007) ...................................... 8

*Mitsui Sumotomo Insurance Co. v. Nippon Express U.S.A. (Ill.), Inc.*, No. 03 Civ.
    2774, 2003 U.S. Dist. LEXIS 15761 (S.D.N.Y. September 10, 2003) ........ 9

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) ............................................ 7

*S-Fer International, Inc. v. Paladion Partners, Ltd.*, 906 F. Supp. 211 (S.D.N.Y.
    1995) ............................................................................................................. 7

*Silverman v. Aptekar*, No. 89 Civ. 2353, 1990 U.S. Dist. LEXIS 10844 (S.D.N.Y.
    Aug. 21, 1990) ........................................................................................ 8, 9

*Smith v. M'Iver*, 22 U.S. (9 Wheat.) 532 (1824) ......................................................... 9

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) .................................. 8

*Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 633 F. Supp. 1209 (W.D.N.Y. 1986) ................................................................................................. 7

*Williams Adv. Mat'ls, Inc. v. Target Technology Co., LLC*, 2007 U.S. Dist. LEXIS 56189 (W.D.N.Y., Aug. 1, 2007) .............................................................. 14

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x. 433, 437 (6th Cir. 2001) ......................................................................................... 12

**FEDERAL STATUTES**

28 U.S.C. § 1338(a) ................................................................................................. 12

28 U.S.C. § 1391(b) ................................................................................................. 11

28 U.S.C. § 1391(c) ................................................................................................. 11

28 U.S.C. § 1404(a) ........................................................................................ i, 8, 13

I.   INTRODUCTION

Defendant Caudill Seed & Warehouse Co. requests that the Court grant its motion to dismiss or stay Plaintiff Brassica Protection Products' Complaint, or in the alternative, transfer Plaintiff's Complaint to the U.S. District Court for the Western District of Kentucky. The forum selection clause in the parties' former license agreement does not apply to the patent claims that form the heart of the parties' dispute. Furthermore, even in cases where such a clause would apply, the clause would not be determinative of the venue issue but would merely be one factor to be considered in a convenience analysis. The first-filed rule applies to this case because the heart of Plaintiff's complaint are patent infringement claims which mirror the patent non-infringement and invalidity claims of Defendant's first-filed declaratory judgment action. Furthermore, the balance of convenience favors Kentucky, the locus of operative facts, witnesses and documents. As a result, the overall convenience is substantially increased by transfer to the Western District of Kentucky.

II.  STATEMENT OF FACTS

A.   The Parties

Defendant Caudill Seed & Warehouse Co., Inc. ("Caudill") is a family-owned business headquartered in Louisville, Kentucky for its entire 60 year history. (Exhibit A, Declaration of Dan Caudill, at ¶ 3).

Caudill employs 160 workers, and its principal place of business is the Louisville facility, where 103 employees work. All but five of its employees live in the Kentucky/Indiana region, well within 100 miles of the U.S. District Court for the Western District of Kentucky, also located in Louisville. *Id.* at ¶ 4. Caudill makes and sells, among other things, glucoraphanin ("GR") containing products, which are the subject of the patent infringement claims in this

1

pending action. The seed that is used in Caudill's accused GR-containing products is grown in California. The initial processing of seeds into a mash, or collet, occurs in Kansas. The seed collet is then shipped to Germany, where oil is removed via Caudill's patent-pending super critical carbon dioxide extraction process. All final processing of the accused GR-containing products, including refining, milling, screening, and final inspection, occurs in Seymour, Indiana, which is about 50 miles from Louisville. Quality control testing of the accused products occurs in Madisonville, Kentucky, which is within 100 miles of the U.S. District Court for the Western District of Kentucky located in Louisville. *Id.* at ¶ 5.

All of Caudill's sales activities for its products occur in Louisville, either at its Main Street facility or through an independent sales broker located in Louisville. Caudill ships all of the accused GR-containing products from Louisville or from its processor/packer in Seymour, Indiana. *Id.* at ¶ 6.

Plaintiff Brassica Protection Products LLC ("BPP") is a limited liability company with its principal place of business in Baltimore, Maryland. Its employees are all believed to work at its Baltimore office, except for Earl Hauserman who is believed to live part of the year in Colorado and part of the year in Florida. BPP has no offices in the City of New York. *Id.* at ¶ 7.

BPP sells GR-containing teas and broccoli sprouts throughout the United States. These products are made from seeds BPP buys, directly or indirectly, from Caudill's Louisville warehouse. BPP has designated Caudill the exclusive seed supplier for all of BPP's licensees. BPP directs its licensees to purchase over 100,000 pounds of seeds annually from Caudill. BPP itself recently purchased about $70,000 worth of seeds directly from Caudill. *Id.* at ¶ 8. In the past, BPP and Caudill have regularly held meetings in Louisville. *Id.* at ¶ 9.

B.   **The Patents In Suit**

BPP claims to be the exclusive licensee of United States Patents 5,725,895; 5,968,567; 6,177,122; and 6,242,018 (collectively referred to as "the BPP Patents"), which are at issue in this action. Copies of the BPP Patents are attached hereto as Exh. B-E.

C.   **The Litigation**

Caudill and BPP entered into a license agreement ("the Agreement") on December 6, 2004. Exh. A at ¶ 10, Exhibit 1 thereto. Under the Agreement, Caudill was granted a sublicense under the BPP Patents, and two applications, U.S. Patent Application Serial No. 08/528,858, and International PCT Application Serial No. PCT/US96/14866, to develop, manufacture, and sell GR-containing products. *Id.* at ¶ 10. The relationship began as a positive collaborative effort, with the two companies working together toward a common goal of developing a GR-containing nutritional supplement. However, the relationship quickly deteriorated once BPP became more and more critical of Caudill's efforts and its products. BPP made unreasonable, constantly changing demands. *Id.* at ¶ 11.

Although working with BPP continued to be difficult, Caudill persevered until BPP notified Caudill of purported "breaches" of the Agreement on June 8, 2007. Exh. A at ¶ 12, Exhibit 2 thereto. Caudill tried in good faith to resolve the issues raised by BPP in that letter; however, BPP still terminated the Agreement on July 21, 2007. Exh. A at ¶ 12, Exhibit 3 thereto. BPP quickly filed suit after the termination letter. On August 6, 2007, BPP filed a complaint against Caudill in a matter captioned *Brassica Protection Products LLC v. Caudill Seed & Warehouse Co., Inc. d/b/a Caudill Seed Co.,* Index No. 602664/07 (the "New York State Court Action"). A copy of this complaint is attached hereto as Exhibit F. In the New York State Court Action, BPP asserted various claims of breach of contract, unjust enrichment, trademark

3

infringement, misappropriation of proprietary and confidential information, and unfair competition under New York State and common law. BPP also accused Caudill of unauthorized use of the BPP Patents. See, e.g., ¶¶ 13, 95, 100 of Exhibit F. On September 6, 2007, BPP moved to voluntarily dismiss the New York State Court Action. Exhibit G, Declaration of Kelly Kuhl, at ¶ 4, Exhibit 5 thereto.

In light of the allegations asserted in the New York State Court Action, Caudill had a reasonable apprehension of being sued for patent infringement. Caudill's manufacture, use, sale, and offer for sale of GR-containing products does not infringe any valid claim of the BPP Patents. Therefore, Caudill has no need for the license it previously held from BPP. Based on BPP's allegations in the New York State Court Action, Caudill sought protection from incorrect allegations of patent infringement. Accordingly, on September 4, 2007, Caudill filed an action in the U.S. District Court for the Western District of Kentucky in Louisville ("the Kentucky Action"), seeking declaratory judgment of noninfringement and invalidity with respect to the BPP Patents, as well as other patents that had originally been included in the Agreement. A copy of the complaint that was filed in connection with the Kentucky Action is attached hereto as Exh. G, at ¶ 2, Exhibit 1 thereto.

On September 5, 2007, BPP filed a complaint in the U.S. District Court for the Southern District of New York in connection with this matter captioned as *Brassica Protection Products LLC v. Caudill Seed & Warehouse Co., Inc.,* (Civil Action No. 07CV7844) (SAS) ("the New York Federal Action"). In the complaint, Brassica alleged four claims of patent infringement and one breach of contract claim, Exh. G at ¶ 3, Exhibit 2 thereto.

At this time, Caudill anticipates that its Chief Executive Officer, Dan Caudill, will be required to attend the entire trial, which may easily extend for more than one week. Exh. A, at ¶

4

13. He is expected to provide testimony on the development of the accused GR-containing products; non-infringement; patent invalidity and unenforceability; and damages. *Id.* In addition, Kean Ashurst, Caudill's Director of Research, who is the inventor of Caudill's patent-pending process by which the accused GR-containing products are made, will likely be required to attend much, if not all, of the trial. He is also expected to provide testimony on the development of the accused GR-containing products; non-infringement, patent invalidity and unenforceability. These two technical specialists will also be needed to assist Caudill's counsel in understanding and responding to BPP's evidence, in particular, technical evidence related to patent claim scope, invalidity and/or unenforceability. *Id.* In addition, Joseph Lyons, Caudill's Director of Marketing, is expected to provide testimony on sales and marketing of Caudill's GR-containing products; and damages. *Id.* As the person most knowledgeable about sales of the GR-containing products, including profitability and cost, he too will likely need to attend much, if not all, of the trial. *Id.*

The testimony of these individuals will be critical. If this action is tried in New York, Caudill can expect to have at least three of its senior management in New York for an extended period of time. Exh. A, at ¶ 14. That would interfere with the efficient conduct of Caudill's business. *Id.* Requiring Caudill's senior management to collectively miss a great deal of work time will be a tremendous hardship and burden on the company. *Id.* This burden would be significantly lessened if the trial is transferred to the Western District of Kentucky, where these personnel can be on the job and at home during the trial. *Id.*

Unlike Caudill, BPP's witnesses will travel regardless where trial occurs. The ability to cost-effectively attend trial and return home in one day is a convenience afforded to BPP by the Kentucky Action that will be more difficult for Caudill if the New York Action goes forward.

## ARGUMENT

I. THE NEW YORK FEDERAL ACTION SHOULD BE DISMISSED OR STAYED IN FAVOR OF THE FIRST-FILED KENTUCKY ACTION

    A. The Forum Selection Clause In The Agreement Is Not Determinative Of The Proper Venue

        1. The Forum Selection Clause Does Not Apply To This Patent Dispute

New York courts have determined that a forum selection clause is unenforceable when "the forum selection clause does not encompass the claims at issue . . . or if the underlying suit does not arise out of the contract containing the clause." *Light v. Taylor*, No. 05-CV-5003, 2007 U.S. Dist. LEXIS 5855, at *14 (S.D.N.Y. Jan. 29, 2007) (citations omitted). In *Cuno, Inc. v. Hayward Indus. Prod., Inc.*, No. 03-CV-3076, 2005 U.S. Dist. LEXIS 8886 (S.D.N.Y. May 11, 2005), the Court explained that a forum selection clause is enforceable if "those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." *Id.* at *12.

        a. The Forum Selection Clause Scope Is Narrow

In the present case, the forum selection clause is limited to performance, enforcement and validity of the parties' Agreement. The clause is contained in a paragraph entitled "Governing Law; Severability." Exh. A, Exh. 1 thereto, at ¶ 14.5. It states that the Agreement shall be "interpreted in accordance with" New York law. It states that the parties submit to the jurisdiction of New York courts without specifically identifying the types of disputes. The paragraph then continues to explain what happens in the event a court holds any provision of the Agreement "invalid, void or unenforceable." This clause only contemplates actions related to the interpretation, validity, or enforcement of particular sections of the Agreement. Unlike other

6

more broadly worded forum selection clauses, it does not attempt to apply to every dispute between the parties.

The narrow scope of the forum selection clause in this case is apparent when compared to the <u>broad</u> forum selection clauses that have been found to apply to non-contractual disputes. *See Warner & Swasey Co. v. Salvagnini Transferica S.p.A.*, 633 F. Supp. 1209, 1211-12 (W.D.N.Y. 1986) ("any suit brought . . ."); *Bense v. Interstate Battery Sys.*, 683 F.2d 718 (2d Cir. 1982) ("any suits or causes of action arising directly or indirectly from this agreement . . ."); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1359 (2d Cir. 1993) ("any dispute and/or controversy of whatsoever nature arising out of or relating to . . ."); *Cuno*, 2005 U.S. Dist. LEXIS 8886, at *4 ("any actions, claims, or lawsuits . . . arising out of or relating to this contract . . .").

In *S-Fer Int'l, Inc. v. Paladion Partners, Ltd.*, 906 F.Supp. 211 (S.D.N.Y. 1995), the forum selection clause, which identified California, was held to be similarly narrow (limited to actions related to validity, performance, and enforcement of a contract) and convenience favored the first-filed forum (New York). *Id.* at 213-14. The Court found "the circumstances of this case are strikingly well-suited to a straightforward application of the first-filed rule.". *Id.* at 217. The present case is similarly striking, and should be transferred to the first-filed forum, the Western District of Kentucky.

    **b.**  **The Gist Of The Parties' Dispute Is Not A Contract Dispute**

"A dispute is a contract dispute only if its resolution 'ultimately depend[s] on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the []claims involve the same operative facts as a parallel claim for breach of contract.'" *Cuno*, 2005 U.S. Dist. LEXIS 8886, at *13 (quotations omitted). In the instant case, the subject matter does not arise out of the performance, enforcement or

7

validity of the Agreement. The gist of the parties' dispute is a patent matter. The resolution of the claims does not ultimately depend on the existence of the contractual relationship between the parties; nor does it relate to interpretation of the Agreement; nor does it involve the same operative facts. The operative facts of this case, as evidenced by the parties' proposed schedule, involve defining claim terms in the patent, the existence of invalidating prior art, the proper conduct of those involved in the patent applications that issued as the BPP Patents, and the details of the process used by Caudill to produce its accused products.

Further, even though this dispute relates to the same patents that BPP once licensed to Caudill, that fact does not turn this patent dispute into a contract dispute. Genuine patent disputes can arise between licensor and licensee, and licensees pay royalties on patents they believe to be not infringed, invalid, or unenforceable. These are facts of business recognized by the Supreme Court. *Medimmune, Inc. v. Genentech, Inc.,* 127 S.Ct. 764 (2007). In that case, there were distinct patent invalidity claims, as well as, contract claims. *Id.* For all of the above reasons, the narrow forum selection clause in this case does not apply to this patent dispute.

2. **The Forum Selection Clause Is At Most One Factor To Be Considered In Deciding The Proper Venue**

Even if the forum selection clause were to apply to such a dispute, it, by itself, would not determine the proper venue for the dispute. "The Supreme Court has held that the existence of a forum selection clause does not prevent the court from transferring the action to another district." *Silverman v. Aptekar,* No. 89 Civ. 2353, 1990 U.S. Dist. LEXIS 10844, at *5 (S.D.N.Y. Aug. 21, 1990) (*citing Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22 (1988)). As quoted by the *Silverman* court, the Supreme Court held that, when a court is making a determination of the proper forum under 28 U.S.C. §1404(a), a forum selection clause "'should receive neither dispositive

consideration . . . nor no consideration . . ., but rather the consideration for which Congress provided in §1404(a).'" *Id.,* at *6.

In *Silverman,* like the present case, the plaintiff argued that its forum selection clause in favor of New York should be dispositive. Even though the forum selection clause was a "significant factor" that indicated the plaintiff's choice of forum, the *Silverman* court transferred the case to Texas in part because the activities that gave rise to the complaint occurred in Texas, most of the non-party witnesses lived and worked in and around Houston, and the physical evidence was in Texas. Similarly, in the present case, the alleged infringing activities occurred in and around Louisville; the non-party witnesses that are within the subpoena power of either of the New York or the Louisville court (the Caudill suppliers in Seymour, Indiana, and Madisonville, Kentucky) are within the reach of the Louisville court; and the physical evidence resides in Louisville, Kentucky. "In other words, the parties' agreement that New York is the appropriate forum is pertinent but not controlling." *Mitsui Sumotomo Ins. Co. v. Nippon Express U.S.A. (Ill.), Inc.,* No. 03 Civ. 2774, 2003 U.S. Dist. LEXIS 15761, at *5 (S.D.N.Y. September 10, 2003) (although the forum selection clause indicated New York, the Court transferred the case to the Northern District of Illinois because the convenience factors favored transfer).

B.      The "First-Filed" Rule Applies

"In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Smith v. M'Iver,* 22 U.S. (9 Wheat.) 532, 535 (1824). "[W]here there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989) (internal quotations, citation, and alterations omitted); *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir. 2006); *City of*

9

*New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991) ("The 'first filed' rule states that 'where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action,' unless 'there are special circumstances which justify giving priority to the second' action") (citations omitted). Deference to the first filing "embodies considerations of judicial administration and conservation of resources." *First City Nat'l*, 878 F.2d at 80 (citations omitted). In fact, the first-filed court "may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution" of the later filed case. *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961) (citations omitted).

  The Court of Appeals for the Federal Circuit has determined that its precedent controls in the context of patent cases and it "prefer[s] to apply in patent cases the general rule whereby the forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993). "The considerations affecting transfer to or dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action." *Id.* at 938. Furthermore, "the rule favoring the right of the first litigant to choose the forum . . . [is] 'just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.'" *Id.* (quoting *Martin v. Graybar Elec. Co.*, 266 F.2d 202, 205 (7th Cir. 1959)).

  The New York Federal Action and the Kentucky Action have the exact same parties and embrace the same key issues: patent infringement, validity, and enforceability. The two cases involve the same underlying questions of fact and law involving infringement, validity, and enforceability of the BPP Patents. Discovery from one lawsuit will be relevant to the other

lawsuit. Thus, the Kentucky Action is the first-filed case that "had possession of the subject" at the heart of the parties' dispute, and deference should be given to the Kentucky courts in deciding the parties' dispute.

To the extent the New York Federal Action includes an additional issue of breach of contract, the inclusion of this claim is non-dispositive as to the primary issue of where this case should be litigated. The primary dispute is clearly the patent issue. Indeed, the contract claim is a minor issue even in the mind of BPP. It is listed as the fifth of five claims (the four preceding claims being claims for patent infringement of the BPP Patents). If there are residual issues from the terminated Agreement, the Kentucky Action is easily amendable to address those issues.

C.     **Venue Is Proper In Kentucky**

"A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State . . ." 28 U.S.C. § 1391(b). The statute goes on to explain that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Therefore, venue is proper in Kentucky if, at the time the Kentucky Action was filed, the Kentucky court had personal jurisdiction over BPP.

The Kentucky long-arm statute provides that Kentucky courts "may exercise jurisdiction over a person who acts directly or by an agent," as to a claim arising from the transacting of business in Kentucky. K.R.S. § 454.210. Furthermore, the Kentucky long-arm statute is co-extensive with the limits of due process. *Compass Worldwide, Inc. v. Pinnacle Equip., Inc.*, 280 F. Supp. 2d 641, 645 (W.D.Ky. 2003) (citation omitted). BPP regularly transacts business with Caudill in Louisville, Kentucky. Indeed, BPP recently purchased $70,000 worth of seeds from

Caudill's Louisville warehouse, and directed all of its licensees to purchase from Caudill. In the past, its employees regularly visited Caudill in Louisville. Given the extensive contacts that BPP has had with Kentucky, being subject to jurisdiction in Kentucky is not unfair. Accordingly, the Kentucky court has personal jurisdiction over BPP.

### D. The Filing of the State Court Action Has No Impact on the First-To-File Analysis

The filing by BPP of an action in state court has no bearing on the applicability of the first-to-file rule. "The first-to-file rule is a well-established doctrine that encourages comity among <u>federal courts</u> of equal rank." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x. 433, 437 (6th Cir. 2001) (emphasis added). In *Zide Sport Shop*, the Court found that because the earlier filed case had been in state court, the federal first-to-file rule did not apply. *Id.* at 436.

In response to BPP's allegation in the New York State Action that Caudill was making unauthorized use of the BPP patents and believing itself not to be infringing any valid claim of the BPP Patents, Caudill sought a declaration in a Kentucky federal court that the BPP Patents were not infringed and/or were invalid. The next day, BPP filed a patent infringement action against Caudill in this court. Caudill filed the first patent action in Kentucky federal court, before BPP's New York patent action. Caudill's federal court complaint should proceed and BPP's federal action should be dismissed or stayed.

This result is particularly proper since the New York State Action was filed in a court that cannot have jurisdiction over a patent dispute. 28 U.S.C. § 1338(a) ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . [s]uch jurisdiction shall be exclusive of the courts of the states in patent . . . cases."). For all

of these reasons, the state court action has no bearing on the analysis of where this dispute should be litigated.

For the above reasons, the Agreement and its forum selection clause do not dictate the proper forum for this patent dispute. Further, since the Kentucky Action was filed-first, holding separate patent trials would defeat the purposes of the first-filed rule and needlessly waste judicial resources.

## II.    ALTERNATIVELY, THIS CASE SHOULD BE TRANSFERRED TO THE WESTERN DISTRICT OF KENTUCKY UNDER 28 USC § 1404(a)

Federal law provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it may have been brought." 28 U.S.C. § 1404(a). As this Court has previously noted, the relevant factors include: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties; and (8) the forum's familiarity with the governing law. *Caville v. Malibu Toys, Inc.,* No. 03 Civ. 9727, 2004 U.S. Dist. LEXIS 12514, at *7 (S.D.N.Y. 2004) (Scheindlin, J.).

This particular case requires no balancing or weighing of factors. All of the factors favor a transfer of venue to Kentucky. Each of the relevant factors is addressed individually below.

Caudill (plaintiff in the first-filed Kentucky action) manifested its original choice of Kentucky as the forum in which to resolve the parties' dispute. Louisville is its hometown and principal place of business. As the first filed plaintiff, Caudill's choice of forum should not be disturbed and should be honored.

13

In this case, none of the known potential witnesses reside in New York. Caudill's anticipated witnesses all live and work in the Louisville, Kentucky area. In contrast, by choosing to litigate in New York, BPP has ensured that its witnesses, who presumably live and work in the Baltimore area, will be forced to travel regardless of whether the case proceeds in New York or in Kentucky.

A substantial majority of the relevant documents and physical proof are in Kentucky, compelling transfer to that forum.

The testimony and attendance of Caudill's senior managers will be required during most, if not all, of the trial. The company will be required to attempt to carry on operations while missing much of its senior management. In contrast, if the trial is held in Kentucky, less than two miles from Caudill's place of business, they will be absent from the job for less time and be home every evening.

"In a patent infringement action, the locus of operative facts is where the research, design, and development of the infringing product occurred." *Williams Adv. Mat'ls, Inc. v. Target Tech. Co., LLC*, 2007 U.S. Dist. LEXIS 56189, at *19 (W.D.N.Y. Aug. 1, 2007). Caudill developed, and currently makes, uses, sells and offers for sale its accused product from its Louisville base. The claims of patent infringement arise there.

To the extent that third party evidence is required, at least some of Caudill's final production, testing, and shipping of its accused products is performed by suppliers in Indiana and Kentucky, within the 100-mile subpoena-power radius of the Kentucky court. In contrast, all of Caudill's suppliers are outside the subpoena power of this Court. Exh. G at ¶ 5, Exhibit 6 thereto.

There is no appreciable difference in the caseloads of the Kentucky and New York courts that would lead one to expect disposition of this matter will be quicker in one court or the other. For all of the above reasons, the balance of convenience for the parties and the witnesses favors transfer to Kentucky.

## CONCLUSION

For all of the foregoing reasons, Caudill respectfully requests that the Court decline BPP's invitation to wasteful and duplicative litigation of the same dispute. Consequently, this action should be either (a) dismissed or stayed, or (b) transferred to the Western District of Kentucky.

Respectfully submitted,

_____
Gregory P. Gulia
Vanessa C. Hew
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Tel: (212) 692-1000
Fax: (212) 692-1020 (fax)

and

Ann G. Schoen
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6128
(513) 651-6981 (fax)

Attorneys for Defendant
Caudill Seed & Warehouse Co., Inc.
d/b/a Caudill Seed Co.

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2007, the Opening Brief in Support of Defendant Caudill Seed & Warehouse Co., Inc.'s Motion to Transfer, Stay, or Dismiss was filed with the Clerk of the Court via ECF and served in accordance with Southern District's Rules on Electronic Service upon the following parties:

>Richard S. Taffet
>Edward L. Powers
>Bingham McCutchen LLP
>399 Park Avenue
>New York, NY 10022-4689

*s/ Gregory P. Gulia*

DM1\1229632.1

16