UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BRASSICA PROTECTION PRODUCTS LLC,    :    1:07-cv-07844-SAS

        Plaintiff,    :

   -against-    :

CAUDILL SEED & WAREHOUSE CO., INC.    :

        Defendant.    :
---------------------------------------------------------------X

### DECLARATION OF DAN CAUDILL
### IN SUPPORT OF DEFENDANT CAUDILL SEED & WAREHOUSE CO., INC.'S
### MOTION TO TRANSFER, STAY, OR DISMISS

I, Dan Caudill, make the following declaration pursuant to 28 U.S.C. § 1746, and declare as follows:

1. I am the chief executive officer of CAUDILL SEED & WAREHOUSE CO., INC., (hereinafter "Caudill"), the defendant in the about-captioned action. Because it was my family's business, I have been employed by Caudill since I was a child. I began full-time employment with Caudill in March 1983.

2. I have personal knowledge of the facts set forth in this Declaration. I make this Declaration in support of Caudill's Motion to Transfer, Stay or Dismiss in the above-captioned matter.

3. Caudill is a family-owned business headquartered at 1402 W. Main Street, Louisville, Kentucky, and was established in 1947. We are a provider of organically produced agricultural products and sells agricultural seeds and turf seeds to dealers and distributors. Caudill also supplies sprouting seeds and beans, and related equipment, to the commercial sprouting industry. We have been located in downtown Louisville for our entire 60 year history.

1

4. Caudill employs 160 workers, all but seven of whom work in the state of Kentucky. Our principal place of business is our Louisville facility where 103 of our employees work. All but five of our employees live in the Kentucky/Indiana region, well within 100 miles of the United States District Court for the Western District of Kentucky located in Louisville.

5. The seed that is used in Caudill's accused glucoraphanin ("GR") containing products is grown in California. The initial processing of seeds into mash, or collet, occurs in Kansas. Oil is removed from this seed collet via Caudill's patent-pending super critical carbon dioxide extraction process in Germany. All final processing of the accused GR-containing products, including refining, milling, screening and final inspection, occurs in Seymour, Indiana, which is within about 50 miles of Louisville. Quality control testing of the accused products occurs in Madisonville, Kentucky, which is within 100 miles of the Louisville U.S. District Court.

6. All of Caudill's sales activities for all of our products occurs in Louisville, either at our Main Street facility or via an independent sales broker located in Louisville. We ship all of the accused GR-containing products from Louisville or from our processor/packer in Seymour, Indiana.

7. I believe that Plaintiff Brassica Protection Products LLP ("BPP") is a limited liability company with its principal place of business at 2400 Boston St., Ste. 358, Baltimore, MD. I believe that its employees all work at its Baltimore office, except for Earl Hauserman who I believe to live part of the year in Colorado and part of the year in Florida. I am not aware that BPP has any offices in the city of New York.

8. BPP sells GR-containing teas and broccoli sprouts throughout the Unites States. These products are made from seeds it buys, directly or indirectly, from Caudill's Louisville

warehouse. BPP has designated Caudill the exclusive seed supplier for BPP's licensees. BPP directs its licensees to purchase over 100,000 pounds of seeds annually from Caudill's Louisville warehouse. BPP recently purchased about $70,000 worth of seeds directly from Caudill.

9. BPP and Caudill have had regular meetings in Louisville, in the past. The parties have never met in New York. As chief executive officer of Caudill, I have attended meetings of the board of directors of BPP in New York, but only as a director of BPP.

10. Caudill and BPP entered into a license agreement ("the Agreement") on December 6, 2004. A copy of that Agreement is attached as Exhibit 1 hereto. Under the Agreement, Caudill was granted a sublicense under the BPP Patents and two applications, U.S. Patent Application Serial No. 08/528,858, and International PCT Application Serial No. PCT/US96/14866, to develop, manufacture, and sell GR-containing products.

11. The relationship between Caudill and BPP began as a positive collaborative one, with the two companies seeming to work toward a common goal of developing a GR-containing nutritional supplement. However, it quickly deteriorated, as BBP became more and more critical of our efforts and products. BPP began to make unreasonable and constantly changing demands, such as requiring that we meet requirements that far exceed any requirements of any federal regulations applicable to the Caudill products.

12. Although working with BPP continued to be more and more difficult, Caudill persevered until BPP notified us of purported "breaches" of the Agreement. A copy of that letter is attached as Exhibit 2 hereto. Caudill tried in good faith to resolve the issues raised by BPP in that letter, but BPP refused to be satisfied and terminated the Agreement on July 21, 2007. A copy of the letter is attached as Exhibit 3 hereto.

13. As Caudill's chief executive officer, I anticipate that I will likely be required to attend the entire trial, which I understand may easily extend more than one week. I expect to provide testimony on the development of the accused GR-containing products, non-infringement, patent invalidity and unenforceability and damages. In addition, Kean Ashurst, Caudill's Director of Research, who is the inventor of Caudill's patent pending process by which the accused GR-containing products are made, will likely be required to attend much, if not all, of the trial. He is also expected to provide testimony on the development of the accused GR-containing products, non-infringement, patent invalidity and unenforceability. As technical specialists we will also be needed to assist our counsel in understanding and responding to BPP's evidence, particularly with respect to technical evidence related to patent claim scope, invalidity and/or unenforceability. Also, Joseph Lyons, Caudill's Director of Marketing, as a person most knowledgeable about sales and marketing of the GR-containing products, including profitability and cost, will be required to provide testimony. It is also expected that he will likely need to attend much, if not all, of the trial.

14. The testimony of Kean Ashurst, Joseph Lyons and myself will be critical to this litigation. If this action is tried in New York, Caudill can expect to have, at least, up to three of its senior management in New York for an extended period of time. This will interfere with the efficient conduct of Caudill's business. Requiring Caudill's senior management to miss a collectively great deal of work time will be a tremendous hardship and burden on the company. This burden can be significantly lessened if the trial is transferred to the Western District of Kentucky where we can be on the job and at home for the duration of the trial.

I declare under penalty of perjury the foregoing is true and correct, to the best of my knowledge, information and belief.

____11-20-07____  ____[signature]____
Date                               Dan Caudill

CINLibrary 1765543v.1