# Exhibit 3

# CAUDILL SEED
#### COMPANY, INCORPORATED



1402 W. Main St.
Louisville, KY 40203-1328

502 583-4402
Fax 502 585-4374
E-mail: ceo@caudillseed.com

July 20, 2007

Brassica Protection Products LLC
2400 Boston Street
Suite 358
Baltimore, Maryland 21224

Attn: Mr. Antony Talalay

Dear Tony:

This letter is in response to yours of June 8, 2007 ("Termination Letter"), which attempts to provide notice of termination of the Sublicence, Manufacture and Distribution Agreement ("Agreement"), dated as of December 6, 2004, between Brassica Protection Products LLC ("BPP") and Caudill Seed & Warehouse Co., Inc., d/b/a Caudill Seed Co. ("CSC"), as amended by letter from BPP's counsel, Floyd I. Wittlin, dated July 11, 2007, to CSC's counsel, Patrick Welsh.

All capitalized terms used herein and not otherwise defined herein shall have the same meanings as in the Agreement.

First and foremost, with one, immaterial exception, CSC disputes each and every allegation contained in your Termination Letter. The exception refers to CSC's failure to deliver to BPP a certificate of insurance, as provided in Section 12.4 of the Agreement. That certificate is attached to this letter, thus curing any so called "breach," although we assert that BPP has waived any related breach.

Each and every other document and other item referenced in the Termination Letter as not having been delivered to BPP has either in fact been delivered or made available to BPP or its representatives for its inspection pursuant to the terms of the Agreement. Such documentation and items include, but are not limited to, "all Records relating to the production, manufacture, packaging, labeling, storage, shipment, supplying and disposition of each Product batch"; "complete Product manufacturing batch records"; "samples of each lot or batch of Product manufactured and shipped under the Agreement"; "annual marketing plans"; "customer communications"; and Product samples

Additionally, CSC has complied in all respects with the terms of the August 23, 2006 letter referred to in the Termination Letter.

Finally, CSC is not in violation of any of its obligations with respect to Labeling of Product.

CSC's obligations with respect to Product are governed by the Agreement. Specifically, in Section 3.1 of the Agreement, "Standards," "CSC agrees to produce or cause to be produced, manufacture or cause to be manufactured, fill, test, package, label, store, ship, supply, dispose and otherwise handle the Product, and to perform its obligations hereunder, in material compliance with applicable Laws, Regulations, GMPs and in strict compliance with the Specifications." The Agreement defines "Specifications" as "specifications for the Ingredient Product and the Finished Product as set forth in Exhibit A attached hereto ...." That Exhibit was not attached to the Agreement when executed, and has never been delivered by BPP. The only document specifically addressing Specifications for Product were attached to a document entitled "Exhibit B," which again was not delivered at the time of execution of the Agreement. Moreover, Section 3.3 of the Agreement, pursuant to which Exhibit was to be delivered addresses the use of broccoli seeds, not the manufacture of the Product. As you are aware, CSC has never, including during our August meeting at your counsel's office, agreed to the provisions of Exhibit B. Nonetheless, with the exception of the subsequently irradiated Product, it has never been alleged that Product has not complied with the "Material specifications: SGS brand glucosinolate," which was attached to the proposed Exhibit B and is the only reference to specifications.

BPP bases several of its allegations on the report, dated May 31, 2007 (the "Report"), of its retained consultant, Carl C. Reynolds, of EAS Consulting Group ("Reynolds"). One need only look to Reynolds' conclusions to determine that BPP lacks sufficient basis on which to terminate the Agreement. Nowhere in those conclusions does Reynolds state that Product was not manufactured in accordance with the requirements of the Agreement. Rather, Reynolds states that he has no basis to conclude otherwise, and that with the caveat that he has not visited other manufacturing facilities. He does conclude that "SGS is not manufactured in accordance with the Product Specifications." The Report defines Product Specifications as those contained on the aforementioned Exhibit B, which never constituted a part of the Agreement. Based upon these conclusions, I will not take the time in this letter to address the other inaccuracies contained in the Report, but we are fully prepared to do so if it becomes necessary.

As we have discussed on several occasions, CSC would agree to discuss obligations with respect to compliance with 21 CFR 111 and other Regulations with respect to the manufacture of Product. Otherwise we remain committed to the performance of our obligations under the Agreement, including those related to the manufacture of the Product pursuant to Section 3.2 of the Agreement. Accordingly, we expect BPP to fulfill its corresponding obligations.

In conclusion, CSC asserts that it has not breached the Agreement as provided in the Termination Letter, and the Termination Letter is ineffective with respect to termination of the Agreement. Additionally, BPP's attempt to terminate the Agreement constitutes a material breach thereof, entitling CSC to exercise all rights and remedies available to it, including, without limitation, termination of the Agreement, all of which rights and remedies are hereby preserved by CSC. CSC intends to defend vigorously its rights under the Agreement so as to enable it to realize the benefits of its bargain, as evidenced by CSC's investment in BPP, the fees paid to BPP pursuant to the Agreement, and CSC's enormous investment in the development, manufacture and marketing of the Product.

Very truly yours,

Caudill Seed Co.

By: _____

Dan Caudill
President


cc: Bingham McCutchen LLC
399 Park Avenue
New York, NY 10022
Attn: Floyd I. Wittlin, Esq.
(via Facsimile and Federal Express)

Jul. 17. 2007 3:50PM    Sypris Tube Turns Div                         No. 0632   P. 2/3

# ACORD CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY): 07/17/2007

**PRODUCER** (615)292-2286   FAX (615)292-2911
Arthur J. Gallagher & Co. of Tennessee, Inc.
3322 West End Ave.
Suite 500
Nashville, TN 37203

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

**INSURED** Caudill Seed & Warehouse Co., Inc.
DBA: Caudill Seed Company
1402 West Main St.
Louisville, KY 40203

**INSURERS AFFORDING COVERAGE** | NAIC #
- INSURER A: Michigan Millers Mutual Ins Co
- INSURER B: Technology Insurance Co.
- INSURER C: Federal Insurance Co.
- INSURER D:
- INSURER E:

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | **GENERAL LIABILITY** [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR | A0105095 | 08/15/2006 | 08/15/2007 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $100,000 |
| | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | | | | | GENERAL AGGREGATE | $2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY [ ] PROJECT [ ] LOC | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| A | | **AUTOMOBILE LIABILITY** [X] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [ ] HIRED AUTOS [ ] NON-OWNED AUTOS | A0105095 | 08/15/2006 | 08/15/2007 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY** [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN AUTO ONLY: EA ACC / AGG | $ |
| C | | **EXCESS/UMBRELLA LIABILITY** [X] OCCUR [ ] CLAIMS MADE [ ] DEDUCTIBLE [ ] RETENTION $ | 79826330 | 08/15/2006 | 08/15/2007 | EACH OCCURRENCE | $9,000,000 |
| | | | | | | AGGREGATE | $9,000,000 |
| B | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | TWC3113286 | 08/15/2006 | 08/15/2007 | [X] WC STATU-TORY LIMITS / OTHER | |
| | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |
| | | **OTHER** | | | | | |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS**
Brassica Protection Products is named as additional insured-vendor as respects General Liability coverage as evidenced herein, as required by written contract.

**CERTIFICATE HOLDER**

Brassica Protection Products
2400 Boston St.
Suite 358
Baltimore, MD 21224

**CANCELLATION**
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL __30__ DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

AUTHORIZED REPRESENTATIVE
Don Mayes/MSHILL

ACORD 25 (2001/08)   FAX: (410)732-1980                    ©ACORD CORPORATION 1988