**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**BRASSICA PROTECTION PRODUCTS LLC,**

                  **Plaintiff,**

      **-against-**

**CAUDILL SEED & WAREHOUSE CO., INC. d/b/a**
**CAUDILL SEED CO.,**

                  **Defendant.**

**07 Civ. 7844 (SAS)**

**Filed Electronically**

**MEMORANDUM OF PLAINTIFF BRASSICA PROTECTION PRODUCTS LLC IN**
**OPPOSITION TO MOTION TO TRANSFER, STAY, OR DISMISS ACTION**

i

# TABLE OF CONTENTS

Page

Preliminary Statement ............................................................................................ 1

Facts ....................................................................................................................... 1

I.      THE MANDATORY FORUM SELECTION CLAUSE APPLIES TO THIS
        ACTION AND SHOULD BE ENFORCED ................................................... 3

        A.      The Forum Provision Applies to Each of Brassica's Claims ................................ 4

        B.      All of Brassica's Claims Arise From the Agreement ............................ 5

        C.      If the Patent Infringement Claims Are Unrelated to the Contract Claims,
                Brassica Would Not be Subject to Jurisdiction in Kentucky. ................................ 8

II.     CAUDILL'S FIRST-TO-FILE ARGUMENT IS MERITLESS ....................................... 8

        A.      Brassica Was First to File ........................................................ 8

        B.      Brassica Was the First to Serve ..................................................... 9

        C.      Even if Caudill Filed First, the Court Should Give Priority to Brassica .............. 10

III.    CAUDILL HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT
        TRANSFER IS WARRANTED ..................................................................... 10

        A.      Standard of Review ........................................................................... 10

        B.      The Balance of Factors Weigh Against Transfer ................................................. 11

                1.      Caudill is Bound By its Agreement to Litigate in New York .................. 11

                2.      New York is the Contractually Convenient Forum and Caudill
                        Waived Its Right to Assert Otherwise. ...................................... 12

                3.      Caudill Has Not Demonstrated that Kentucky Would Be a More
                        Convenient Forum for Non-Party Witnesses. ........................................... 13

                4.      Caudill's Argument About Relevant Proof Is Insufficient to
                        Override the Forum Selection Clause. ...................................... 14

                5.      Public Policy Favors Litigating this Matter in New York ...................... 15

Conclusion ............................................................................................................. 15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128 (S.D.N.Y. 1994) ...............................................................................................................8

*AGR Fin., LLC v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399 (S.D.N.Y. 2000) ....................3

*Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341 (S.D.N.Y. 2002) ....11, 14

*American Fin. Servs. Group v. Technimar Indus., Inc.*, 97 Civ. 9067, 1998 WL 684589 (S.D.N.Y. Sept. 30, 1998) ...............................................................................3

*Cruise v. Castleton, Inc.*, 449 F. Supp. 564 (S.D.N.Y. 1978) ..........................................4, 5

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) ...............................10, 11

*Elite Parfums, Ltd. v. Rivera*, 872 F. Supp. 1269 (S.D.N.Y. 1995) ............................11, 14

*Everest Capital Ltd. v. Everest Funds Mgmt., LLC*, 178 F. Supp. 2d 459 (S.D.N.Y. 2002) ..................................................................................................................9

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979) (*abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990). .......................................................................11, 13

*First Interstate Leasing Serv. v. Sagge*, 697 F. Supp. 744 (S.D.N.Y. 1988) ...............12, 13

*Full-Sight Contact Lens v. Soft Lenses, Inc.*, 466 F. Supp. 71 (S.D.N.Y. 1978) ...........5, 12

*General Elec. Credit Corp. v. Toups*, 644 F. Supp. 11 (S.D.N.Y. 1985) ..............12, 13, 15

*Gessler v. Sobieska Destylarnia, S.A.*, 06 Cir. 6510 (HB), 2007 WL 1295671 (S.D.N.Y. May 3, 2007) ....................................................................................................7

*Gibbs & Hill v. Harbert International, Inc.*, 745 F. Supp. 993 (S.D.N.Y. 1999) ..........9, 10

*GMT Corp. v. Quiksilver*, 02 Civ. 2229 (GBD), 2002 WL 1788016 (S.D.N.Y. Aug. 1, 2002) .....................................................................................................................8

*Haagen-Dazs Shoppe Co., Inc. v. Born*, 897 F. Supp. 122 (S.D.N.Y. 1995) ...................15

*Hernandez v. Graebel Van Lines*, 761 F. Supp. 983 (E.D.N.Y. 1991) ..............................14

# TABLE OF AUTHORITIES
(continued)

Page

*Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955 (S.D.N.Y. 1995) ......................11

*Koninklijke Philips Elec. v. Digital Works, Inc.*, 358 F. Supp. 2d 328 (S.D.N.Y. 2005) ..................................................................................................................................4

*Lancelot Investors Fund, LP. v. TSM Holdings, Ltd.*, 07-C-4023, 2007 WL 3120011 (N.D. Ill. Oct. 24, 2007) ................................................................................13

*Leasing Serv. Corp. v. Graham*, 646 F. Supp. 1410 (S.D.N.Y. 1986) .............................12

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ...........................................4, 12

*Mass v. Maclehnahan*, 93 Civ. 3290 (JSM), 1993 WL 267418 (S.D.N.Y. July 9, 1993) ...................................................................................................................................10

*Mfrs. Hanover Trust Co. v. Palmer Corp.*, 798 F. Supp. 161 (S.D.N.Y. 1992) .................8

*Mitsuisumotomo Ins. Co. v. Nippon Express U.S.A.*, 03 Civ. 2774 (LAK) 2003 WL 22097438 (S.D.N.Y. Sept. 10, 2003) ......................................................................14

*Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372 (7th Cir. 1990) ...................................12, 13

*Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203 (S.D.N.Y. 1998) ..............................................................................................................................13, 14

*Orix Credit Alliance v. Mid-South Materials, Corp.*, 816 F. Supp. 230 (S.D.N.Y. 1993) ..............................................................................................................................12, 15

*Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990) .................................................11

*Richardson Greenshields Secs., Inc. v. Metz*, 566 F. Supp. 131, 134 (S.D.N.Y. 1983) ...................................................................................................................................12

*S-Fer Intn'l, Inc., v. Paladion Partners, Ltd.*, 906 F. Supp. 211 (S.D.N.Y. 1995)..............7

*Sharimalia Food Corp. v. Monarch Wine Co.*, 91 Civ. 6691 (RPP), 1992 WL 58308 (S.D.N.Y. March 13, 1992)................................................................................10

*Silverman v. Aptekar*, 89 Civ. 2353 (TPG), 1990 WL 124512 (S.D.N.Y. Aug. 21, 1990) ...................................................................................................................................14

## TABLE OF AUTHORITIES
(continued)

Page

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)................................................11

*Weingrad v. Telepathy, Inc.,* 05 Civ. 2024 (MBM), 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) .............................................................................................................3

*Wildwood Imports v. M/V Zim Shanghai*, 04 Civ. 5538 (MBM) 2005 WL 425490 (S.D.N.Y.  Feb. 20, 2005) ...................................................................................2, 12

*Young Women's Christian Assoc. v. HMC Entm't, Inc.*, 91 Civ. 7943 (KMW), 1992 WL 279361 (S.D.N.Y. 1992)..........................................................................4, 6

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associate, Inc.*, 00-3183, 2001 WL 897452 (6th Cir. July 31, 2001) ...................................................................................9

### STATE CASES

*Devos Ltd. v. Rx Recalls, Inc.*, 824 N.Y.S.2d 761 (Sup. Ct. Suffolk Co. 2005) .................5

*Triple Z Postal Servs. v. United Parcel Service, Inc.*, 831 N.Y.S.2d 357, 2006 WL 3393259 (Sup. Ct. N.Y. Co. Nov. 24, 2006) ................................................................5

### FEDERAL STATUTES

28 U.S.C. § 1404 .......................................................................................................10, 11

**Preliminary Statement**

At the heart of this dispute is an Agreement, now terminated, with a mandatory forum selection clause.  Pursuant to that Agreement, (i) the patents-in-suit were licensed to defendant Caudill Seed ("Caudill"), (ii) plaintiff Brassica's Know-How was provided to Caudill, (iii) the obligation to pay royalties was undertaken by Caudill, and (iv) Caudill expressly contracted to cease the manufacture of the products at issue following termination of the Agreement.  The fact that Caudill has not ceased manufacturing the products at issue is <u>both</u> an express violation of the Agreement and an infringement of the patents identified therein.  Consequently, Brassica's complaint seeks injunctive and monetary relief in accordance with the underlying Agreement, as well as injunctive and monetary relief for Caudill's infringement of the four patents-in-suit.  The parties' forum selection clause undeniably encompasses Brassica's contract claims (and Caudill's possible counterclaims) as well as Brassica's interwoven patent infringement claims.

Moreover, transfer of this action to Kentucky would neither comport with the parties' agreement nor be more convenient for anyone, other than perhaps a few Caudill employees. Caudill's cries of hardship stand in sharp contrast to its express waiver of objection to the New York forum and the numerous occasions on which Mr. Caudill and his colleagues have spent extensive periods outside Kentucky in connection with their business, as described in Brassica's accompanying declaration.  Caudill's motion should be denied.

**Facts**

This action arises from a sublicense agreement entered into by the parties in December 2004 (the "Agreement"), by which Caudill was granted non-exclusive rights to manufacture and distribute "Products" produced using Brassica Know-How and Brassica Patent Rights. Agreement (Declaration of Antony Talalay, executed on November 27, 2007 ("Talalay Decl.")

Ex. 1) §§ 1.4, 1.5, 1.12, 1.17, 1.31, and 2.1.  Caudill agreed to pay Brassica minimum royalties of $50,000 for the July - December 2006 period and $100,000 annually thereafter.  *Id.* § 10.2(a).[1]

Caudill also agreed that upon termination of the Agreement, "all rights herein granted to CSC [Caudill] shall revert to BPP [Brassica] and CSC shall cease the production, manufacture, sale, use or advertisement of the Product."  *Id.* § 10.4(a).

Section 14.5 of the Agreement provides, in relevant part:

> This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York applicable to agreements made and to be performed entirely within such State. The parties (i) irrevocably submit to the exclusive jurisdiction of the courts of the State of New York and the United States District Court located in the Borough of Manhattan in New York City; (ii) waive (a) any objection to the laying of venue in such court, (b) any claims that a proceeding brought in any such court has been brought in an inconvenient forum and (c) any objection that any such court does not have jurisdiction over them; and (iii) irrevocably appoint the Secretary of the State of New York to receive service of process in any proceeding brought in such court.

This section (the "Forum Provision") was affirmatively negotiated by the parties.  Talalay Decl. ¶ 6.  In August 2006, Caudill's chief executive, Dan Caudill, met with Brassica's chief executive, Mr. Talalay, in New York to discuss Caudill's performance of the Agreement.  *Id.* ¶ 8. Mr. Caudill also regularly attended Brassica Board meetings in New York.  Caudill Decl. ¶ 9.

Caudill did not perform its obligations under the Agreement.  In June 2007, Brassica sent Caudill a notice and opportunity to cure.  During the 30-day cure period that followed, Caudill did not seek to cure its breaches of the Agreement, which terminated effective July 21, 2007. Complaint (Affidavit of Edward Powers, sworn to on November 27, 2007 ("Powers Aff.") Ex. 5)

---

[1]     On a motion to dismiss for improper venue, "'a court must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.'"  *Wildwood Imports v. M/V Zim Shanghai*, 04 Civ. 5538 (MBM), 2005 WL 425490, at *2 (S.D.N.Y. Feb. 20, 2005) (citation omitted).

¶¶ 24 - 31.  At no time prior to or during the term of the Agreement did Caudill ever suggest that the patents-in-suit were invalid or unenforceable.  Talalay Decl. ¶ 13.

Hours before the termination of the Agreement became effective, Caudill sent a letter to Brassica stating, *inter alia*, that Brassica's notice and opportunity to cure "is ineffective with respect to termination of the Agreement," that Brassica had breached, and that Caudill "intends to defend vigorously its rights under the Agreement . . to the benefits of its bargain."  Talalay Decl. Ex. 3 at 3.

Despite its contractual obligation to the contrary, Caudill continues to manufacture and distribute Products using Brassica's Patent Rights and Know-How.  Complaint (Powers Aff. Ex. 5) ¶ 36.  In addition, Caudill has not paid the minimum royalty due Brassica.  *Id.* ¶ 35.  Caudill's continuing conduct is both a breach of the Agreement and an infringement of the patents-in-suit.  *Id.* ¶¶ 39-62 (Counts I - V).

## I.   THE MANDATORY FORUM SELECTION CLAUSE APPLIES TO THIS ACTION AND SHOULD BE ENFORCED

A mandatory forum selection clause is presumptively enforceable.  *AGR Fin. LLC v. Ready Staffing, Inc.*, 99 F. Supp. 2d 399, 401 (S.D.N.Y. 2000) (Scheindlin, J.).  Forum selection provisions are given strong deference, especially when negotiated by two businesses in an arms length transaction.  *See American Fin. Servs. Group v. Technimar Indus., Inc.*, 97 Civ. 9067, 1998 WL 684589, at *2 (S.D.N.Y. Sept. 30, 1998) ("the Second Circuit has a 'strong federal policy' of enforcing forum selection clauses"); *Weingrad v. Telepathy, Inc.,* 05 Civ. 2024 (MBM), 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005) (Second Circuit "'gives substantial deference to [forum clauses], particularly where the choice of forum was made in an arms length negotiation by experienced and sophisticated businessmen'") (citation omitted).

3

"'[A] litigant must make a strong showing to overcome this presumption.'" *Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 332 (S.D.N.Y. 2005) (citation omitted). The parties' choice of forum should be disregarded only in exceptional circumstances, such as fraud, deprivation of the resisting party's day in court, fundamental unfairness of the chosen law, or a showing that enforcement would be unjust, unreasonable or contravene a strong public policy. *Id.*; *Young Women's Christian Assoc. v. HMC Entm't, Inc.*, 91 Civ. 7943 (KMW), 1992 WL 279361, at *4 (S.D.N.Y. 1992). Caudill makes no such argument here. Rather, Caudill argues that the Forum Provision should be narrowly construed and that the "gist" of this action is for patent infringement. Caudill's Brief at 6-8. Caudill is wrong on both counts.

A.    The Forum Provision Applies to Each of Brassica's Claims.

Caudill contends that because the Forum Provision does not specify the kinds of disputes it covers, it does not apply to Brassica's patent claims. Caudill's Brief at 6-8. To the contrary, the provision is drafted without limitation.[2] At minimum, the Forum Provision covers the claims in this action. In an analogous case, *Cruise v. Castleton, Inc.,* 449 F. Supp. 564 (S.D.N.Y. 1978), plaintiffs were members of the United States Trotting Association ("USTA"). A by-law of the USTA provided:

> Every applicant for membership and every member shall be confined in any action at law or in equity against this Association to the jurisdiction of the courts, Federal or State, within which the principal office of the Association is situated.

---

[2]    In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the Supreme Court reviewed a forum provision that lacked specificity: "Any dispute arising must be treated before the London Court of Justice." The Court characterized the provision as "mandatory and all-encompassing." 407 U.S. at 20. Here, Caudill irrevocably submitted to this Court's jurisdiction and appointed an agent for service "in any proceeding brought in any such court." As in *M/S Bremen*, and consistent with the cases discussed herein, this clause also should be considered mandatory and all-encompassing.

496 F. Supp. at 566.  Like the Forum Provision here, the USTA by-law contained no limitation on the types of disputes it covered.  Plaintiffs argued that it should be narrowly construed to cover only actions brought "pursuant to" the by-laws of the USTA, and not to tort actions between the USTA and its members.  The court disagreed:

> The gist of plaintiffs' argument is that it would be unreasonable to read the by-law in question literally and apply it to "all conceivable litigations between members and the Association."  However, ... a fair reading of the provision is that it was intended to encompass suits which arise out of the membership relationship or the official activities of the USTA.

449 F. Supp. at 567.  Similarly, a fair reading of the Forum Provision is that it encompasses suits which arise out of the relationship formed by the parties' Agreement.  *See Full-Sight Contact Lens v. Soft Lenses, Inc.,* 466 F. Supp. 71, 74 (S.D.N.Y. 1978) (former distributor's antitrust claim did not involve parties' prior distribution agreement was subject to agreement's forum selection clause which covered "any action brought by Distributor").  Here, Caudill irrevocably submitted to this Court's jurisdiction and, among other things, "irrevocably appoint[ed an agent for service] in *any proceeding* brought in any such court."  Agreement § 14.5 (emphasis added).[3]

B.    All of Brassica's Claims Arise From the Agreement.

Nearly all the factual allegations in the Complaint are based upon the Agreement.  *See* Complaint (Powers Aff. Ex. 5) ¶¶ 11-38.  The Complaint includes one count identifying each of Caudill's breaches of contract (Count V), including Caudill's unauthorized practice of the patents-in-suit, and seeks damages and injunctive relief in accordance with Caudill's contractual

---

[3]    New York "public policy supports a broad reading of forum selection clauses."  *Devos Ltd. v. Rx Recalls, Inc.*, 824 N.Y.S.2d 761, 761 (Sup. Ct. Suffolk Co. 2005); *see also Triple Z Postal Servs. v. United Parcel Service, Inc.*, 831 N.Y.S.2d 357, 2006 WL 3393259, at *7 (Sup. Ct. N.Y. Co. Nov. 24, 2006) (public policy "favors enforcement of forum selection clauses and supports a broad reading of these clauses").

obligations. *Id.* ¶¶ 55-62. These contract claims unquestionably arise from the Agreement. This alone warrants rejection of Caudill's forum selection arguments. The Complaint also sets forth separate counts of infringement for each of the four patents-in-suit. *Id.* ¶¶ 39-54 (Counts I-IV). These clams incorporate by reference <u>all</u> of the allegations concerning the Agreement (including Caudill's breach) and arise directly from the Agreement.[4]

The Court's decision in *YWCA v. HMC Entm't, Inc.*, 1992 WL 279361, is instructive. In that case, the parties entered into a trademark licensing contract that included California choice of law and choice of forum provisions for any litigation "arising under" their agreement. *Id.* at *1. Plaintiff brought a declaratory judgment action in the Southern District of New York, based upon the post-contract assertion by defendant that plaintiff's proposed programming would constitute, among other things, trademark infringement. *Id.* at *1-2. In deciding to transfer the action to the forum chosen in the parties' agreement, the court rejected plaintiff's contention that the forum clause did not apply:

> [Plaintiff's declaratory judgment claims] involve rights arising out of the contract that defendant might assert against plaintiff. *Plaintiff's entire business relation with defendant with respect to the proposed award program stemmed from the contract between the two parties. Any determination with respect to plaintiff's claims will require consideration of the contract and of the parties' respective rights pursuant to the contract.* Therefore, it is clear that plaintiff's action arises pursuant to the contract.

*Id.* at *4 (emphasis added). The same is true here.

---

[4]    Caudill's contrary position before this Court smacks of gamesmanship. When Caudill needed to allege -- in compliance with Rule 11 -- a basis for a case or controversy to support its Kentucky declaratory judgment action, Caudill relied upon Brassica's "breach of contract" action, then in the state court. *See* Powers Aff. Ex. 6, ¶ 13. Now that those contract claims and their overlapping patent infringement claims are before this Court, however, Caudill reverses course, arguing that the contract and patent claims are independent.

- The parties' Agreement formed the basis of their relationship with respect to the patents-in-suit; pursuant to the Agreement Brassica conveyed its Know-How and confidential information to Caudill regarding the preparation and manufacture of the Products.

- Any determination with respect to Brassica's claims will require consideration of the Agreement and the parties' respective rights thereunder (including Brassica's right to enforce Caudill's obligation to cease making the Products).

- The Agreement underlies Brassica's affirmative claims in this action, as well as Caudill's possible counterclaims (noted below).

*See Gessler v. Sobieska Destylarnia, S.A.*, 06 Cir. 6510 (HB), 2007 WL 1295671, at *4 (S.D.N.Y. May 3, 2007) (trademark infringement and competition claims arise from expired manufacturing and licensing agreements specifying adjudication of "any disputes resulting from this agreement" in Poland).

Caudill's reliance on *S-Fer Int'l, Inc., v. Paladion Partners, Ltd.,* 906 F. Supp 211 (S.D.N.Y. 1995), is mistaken. There, the forum selection provision in the parties' lease was limited to "legal suit or action for enforcement of any obligation contained herein." Plaintiff's lawsuit did not seek enforcement of any lease obligation, but rather asserted claims in tort and for fraud in the inducement of the lease. *Id.* at 214. In the instant action, the Forum Provision contains no such words of limitation. Moreover, Brassica's Complaint, as already discussed, *does seek to enforce* Caudill's contractual obligations, including Caudill's obligation not to practice the patents-in-suit, its obligation to stop making the Products, and its obligation to pay royalties.[5]

---

[5] Caudill has also indicated that it may file counterclaims against Brassica for breach of the Agreement. *See* Scheduling Order (Powers Aff. Ex. 7) at 2; Caudill July 20, 2007 letter (Talalay Decl. Ex. 3) at 3 (asserting breach by Brassica stating that Caudill is entitled "to exercise all rights and remedies available to it," and that Caudill intends "to defend vigorously its rights under the Agreement ... to the benefits of its bargain"). If Caudill files such counterclaims, it must do so here in New York.

C.   If the Patent Infringement Claims Are Unrelated to the Contract Claims,
<u>Brassica Would Not be Subject to Jurisdiction in Kentucky.</u>

Caudill asserts that venue is proper in Kentucky.  Caudill's Brief at 11-12.  Brassica, however, does not own or operate any office in Kentucky, has no employees in Kentucky, and is not present in Kentucky for the assertion of general jurisdiction.  Talalay Decl. ¶ 22.  Further, neither this action nor the declaratory judgment action filed by Caudill in Kentucky arises out of the parties' unrelated seed supply agreement referenced by Caudill in its moving papers.  If -- as Caudill contends -- its Kentucky action does not arise from the Agreement (*i.e.*, the sublicense Agreement), then there is no basis to assert specific jurisdiction over Brassica there.

## II.   CAUDILL'S FIRST-TO-FILE ARGUMENT IS MERITLESS

Brassica was the first party to file and serve its complaints in this dispute and -- even if it were not -- the Court should give priority to this action.

A.   <u>Brassica Was First to File.</u>

On August 6, 2007, Brassica filed the first action against Caudill in New York Supreme Court.  Powers Aff. ¶ 3.  Where a state court action is subsequently removed to federal court, courts use the state court filing date as the relevant benchmark for purposes of applying the first filed rule.  *See 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 n. 1 (S.D.N.Y. 1994) (citing *Mfrs. Hanover Trust Co. v. Palmer Corp.*, 798 F. Supp. 161, 166 (S.D.N.Y. 1992)).  Brassica's federal filing, prior to Caudill's removal of the state action, essentially amended its earlier complaint based upon new information.  In these circumstances, this Court may look to Brassica's original filing date to determine which party filed first.  *See GMT Corp. v. Quiksilver*, 02 Civ. 2229 (GBD), 2002 WL 1788016, at *2 (S.D.N.Y. Aug. 1, 2002) ("[t]his circuit applies the first-filed rule in favor of a plaintiff who amends his complaint to include issues that his adversary has raised in a second-filed suit in another district.").

Caudill asserts that this Court should ignore the state complaint, citing the Sixth Circuit's decision in *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc*., 00-3183, 2001 WL 897452 (6th Cir. July 31, 2001).   That case is inapposite.   *Zide Sport* involved two *federal* actions; indeed, the Court dismissed the first-filed federal action for a declaratory judgment because the plaintiffs filed their complaint in "bad faith and engaged in procedural fencing."   *Zide Sport*, 2001 WL 897452, at *5.   Since the relevant benchmark for the first-filed should be Brassica's removed state court action, Brassica filed first.

> B.    Brassica Was the First to Serve.

Brassica filed its Complaint in this Court on September 5, 2007 and Caudill filed its declaratory judgment action in Kentucky on September 4, 2007.   Powers Aff. ¶¶ 4-5.   Brassica served its Complaint on September 6, 2007, while Caudill waited more than two weeks, to September 20, 2007, just to deliver its papers for service to the Kentucky Secretary of State, which in turn served Brassica on September 26, 2007.   *Id.* ¶ 5;   Powers Aff. Ex. 7.   Although "the Second Circuit has not addressed directly" this question of first service

> [t]here is almost uniform recognition, however, of the general principal that mechanical application of a rule should not be determinative of the result in cases where competing actions have been filed in close temporal proximity and service was not completed in the first case before the second was filed.

*Everest Capital Ltd. V. Everest Funds Mgmt., LLC*, 178 F. Supp. 2d 459, 463 (S.D.N.Y. 2002) (court applied rule after finding that defendant had avoided service).   Given Caudill's own delay in serving the Kentucky complaint, coupled with the one-day difference in filing dates, the first-filed rule should not apply to the Kentucky action.[6]

---

6    Where the parties filed only days apart, courts are less likely to give priority to the first filed action.   *See Gibbs & Hill v. Harbert Int'l, Inc.*,745 F. Supp. 993, 996 (S.D.N.Y. 1999)

C.    Even if Caudill Filed First, the Court Should Give Priority to Brassica.

Departure from the first-filed rule is warranted where special circumstances justify giving priority to the second filed action. *See Sharimalia Food Corp. v. Monarch Wine Co.*, 91 Civ. 6691 (RPP), 1992 WL 58308, at *2, 3 (S.D.N.Y. March 13, 1992) (declaratory judgment triggered by a notice letter is a factor weighing in favor of giving second filed action priority); *Gibbs & Hill*, 745 F. Supp. 993 at 996 (S.D.N.Y. 1999) (first filed rule did not apply to action filed after defendant sent a notice of default).

Caudill concedes that "[b]ased on BPP's [Brassica's] allegations in the New York State Court Action, Caudill sought protection from incorrect allegations of patent infringement." Caudill's Brief at 4.  In such circumstances, assuming Caudill is deemed to have filed first, departure from the first-filed rule is appropriate. *See e.g., Gibbs & Hill, supra*; *Sharimalia*, 1992 WL 58308, at *3.

The first-filed rule should not be permitted to trump a mandatory forum selection clause, and Caudill cites no case in support of its contrary position.  Indeed, the "'[d]eclaratory judgment is not a prize to the winner of a race to the courthouse.'"  *Mass v. Maclehnahan*, 93 Civ. 3290 (JSM), 1993 WL 267418, at *2 (S.D.N.Y. July 9, 1993).

## III.    CAUDILL HAS NOT MET ITS BURDEN TO DEMONSTRATE THAT TRANSFER IS WARRANTED

A.    Standard of Review.

It is well established that "[d]istrict courts have broad discretion in making determinations of convenience under [28 U.S.C.] Section 1404(a)" (*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)) and generally consider the following non-exclusive

---

("[c]ourts also pay little regard to the date of filing when the competing suits were commenced within days of each other.").

factors in making that determination:  (1) the plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of witnesses, (4) location of relevant documents, and (5) public policy issues.  *Id.* at 106-107; *Elite Parfums, Ltd. v. Rivera*, 872 F. Supp. 1269, 1271 (S.D.N.Y. 1995).

Plaintiff's choice of forum, is "typically afforded substantial weight . . . and that choice should not be lightly overridden."  *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002); *see also Hubbell Inc. v. Pass & Seymour, Inc.*, 883 F. Supp. 955, 962 (S.D.N.Y. 1995) ("Plaintiff's choice of forum should not be disturbed unless Defendants make a clear and convincing showing that the balance of convenience favors defendants choice.").  Importantly, "[t]he presence of a forum-selection  [clause]. . . will be a <u>significant</u> <u>factor</u> <u>that</u> <u>figures</u> <u>centrally</u> <u>in</u> <u>the</u> <u>district</u> <u>court's</u> <u>calculus</u>."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (emphasis added).

### B.    The Balance of Factors Weigh Against Transfer.

It is well settled that the moving party has the burden to establish that transfer is warranted.  *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979) (*abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990).  Even a cursory review of Caudill's motion to transfer venue reveals that Caudill simply prefers to litigate in its own turf.  Nothing more.  Caudill does not come close to meeting its burden to demonstrate that transfer is warranted.  Caudill -- the <u>defendant</u> in this case -- even asserts that the Court (in its Section 1404(a) analysis) should consider Caudill the plaintiff simply because it is the plaintiff in Kentucky.  Caudill's Brief at 13.  Not surprisingly, Caudill does not cite a single case to support this position.

### 1.    Caudill is Bound By its Agreement to Litigate in New York.

Caudill also has not -- and cannot -- meet its heavy burden of overcoming the prima facie validity and enforceability of the Forum Provision.  It must show that enforcement would be

unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching. *See Bremen*, 407 U.S. at 10; *accord Orix Credit Alliance v. Mid-South Materials, Corp*., 816 F. Supp. 230, 233 (S.D.N.Y. 1993); *Wildwood Imports*, 2005 WL 425490 at *3 ("contract clause selecting a forum is entitled to great weight"). Caudill has not done so.

### 2. New York is the Contractually Convenient Forum and Caudill Waived Its Right to Assert Otherwise.

While Caudill asserts that it would be more convenient to litigate this matter in Kentucky, it is black letter law that "[a] forum selection clause is determinative of the convenience to the parties." *Orix Credit Alliance*, 816 F. Supp. at 234; *see also Richardson Greenshields Secs., Inc. v. Metz*, 566 F. Supp. 131, 134 (S.D.N.Y. 1983) (same); *Full-Sight Contact Lens*, 466 F. Supp. at 74 ("convenience of the parties -- is properly within the power of the parties themselves to affect by a forum selection clause"); *General Elec. Credit Corp. v. Toups*, 644 F. Supp. 11, 15 (S.D.N.Y. 1985) (inconvenience of a party should not be considered because "this is what the parties bargained for"); *First Interstate Leasing Serv. v. Sagge*, 697 F. Supp. 744, 747 (S.D.N.Y. 1988) ("Even if the traveling were a serious inconvenience, it was contemplated by the parties when entering into the contract").

Further, Caudill contractually waived its right to assert that litigating this case in New York would be inconvenient. *See* Forum Provision ("The parties . . . waive . . . any claims that proceeding brought in any such [New York] courts has been brought in an inconvenient forum."); *Leasing Serv. Corp. v. Graham*, 646 F. Supp. 1410, 1415 (S.D.N.Y. 1986) ("A party who signs an agreement containing venue and jurisdiction selection clauses may be deemed to have waived his right to assert his own convenience as a factor favoring a transfer to another forum under Section 1404(a)."); *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir.

1990) ("signing of a valid forum selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience to the moving party").

In its moving papers, Caudill identifies three witnesses that it expects to call at trial. Caudill Decl. ¶ 13. All of these witnesses are members of Caudill's senior management. *Id.* Because Caudill contractually agreed that New York was a convenient forum for the parties, the alleged inconvenience of its own senior management should not be considered. *See Toups*, 644 F. Supp. at 15; *Sagge*, 697 F. Supp. at 747; *Lancelot Investors Fund, LP. v. TSM Holdings, Ltd.,* 07-C-4023, 2007 WL 3120011, at *2 (N.D. Ill. Oct. 24, 2007) ("This argument [inconvenience] is waived with respect to the inconvenience of Defendants' employees as well, who for present purposes are subsumed into their employers as party defendants.").

Caudill's claims of hardship are also, at best, overstated. For example, while Caudill asserts that it will be inconvenient for its senior management to travel to New York for trial (Caudill's Brief at 14), it fails to inform the Court that its senior management routinely travels outside of Kentucky (including outside the United States) for extended periods and still continues to manage to transact business. *See* Talalay Decl. ¶¶ 14-18. During his tenure as a Brassica director, Mr. Caudill regularly attended Board meetings in New York. Caudill Decl. ¶ 9.

        3.     Caudill Has Not Demonstrated that Kentucky Would Be a More
                    Convenient Forum for Non-Party Witnesses.

"When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc.*, 579 F.2d at 218; *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998) ("movant 'must support the transfer application with an affidavit containing detailed factual statements . . .

13

including the potential principal witnesses expected to be called and a general statement of the substance of their testimony'") (quoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 987 (E.D.N.Y. 1991)).  Here, Caudill does <u>not</u> identify a single non-party witness that it intends to call at trial.[7]

Further, Brassica has identified several non-party witnesses that it may seek to depose. None of these witnesses (other than a Caudill consultant) resides in Kentucky.  Talalay Decl. ¶ 20.  For these witnesses, New York is just as convenient a forum as Kentucky.  Indeed, "[g]iven the frequency of flights between New York and most major cities, it may, if anything be more convenient for a witness to travel . . . to New York." *Duke Energy*, 214 F. Supp. 2d at 344.

        4.      **Caudill's Argument About Relevant Proof Is Insufficient to <u>Override the Forum Selection Clause.</u>**

Caudill baldly asserts that "[a] substantial majority of the relevant documents and physical proof are in Kentucky."  Caudill's Brief at 14.  Caudill's own description of its production activities confirms that most of the activity occurs outside of Kentucky (Caudill Decl. ¶ 5), and Caudill's statement that "all of Caudill's sales activities" occur in Louisville is belied by the extensive sales activities that occur at trade shows and conventions outside Kentucky. Talalay Decl. ¶ 10.  In any event, Caudill's assertion is of no relevance, particularly in the face of the Forum Provision.  *See Elite Parfum*, 872 F. Supp. at 1273 (although "relevant events occurred in Texas, such as negotiation, signing, and alleged breach of the Agreement . . . [and]

---

[7]    The decisions cited by Caudill are plainly distinguishable.  In *Silverman v. Aptekar,* 89 Civ. 2353 (TPG), 1990 WL 124512 at \*3 (S.D.N.Y. Aug. 21, 1990), transfer to Texas was based on the finding that "[m]ost of the non-party witnesses who are expected to testify about these alleged acts live and work in and around Houston."  Similarly, in *Mitsuisumotomo Ins. Co. v. Nippon Express U.S.A.,* 03 Civ. 2774 (LAK) 2003 WL 22097438, at \*2 (S.D.N.Y. Sept. 10, 2003), the court found that "all of the witnesses [party and non-party] relating to liability are located in and around Chicago."  Here, Caudill has not identified a single non-party witness that resides in Kentucky.

contract contemplated performance in Texas . . . this is not enough to warrant overriding the forum selection clause."); *Orix Credit Alliance*, 816 F. Supp. at 235 ("fact that significant events leading to the signing of the Guarantee occurred in Mississippi does not justify a transfer").

     5.    <u>Public Policy Favors Litigating this Matter in New York.</u>

Perhaps realizing that public policy issues warrant denial of its motion to transfer, Caudill simply ignores them. First, there is a strong public policy in favor of requiring parties to abide by their contractual promises. *See Toups*, 644 F. Supp. at 15 ("by enforcing this [forum selection] clause, this court would encourage the policy of requiring parties to freely negotiate[d] contracts to live up to their terms"). Second, because the parties agreed that New York law would apply to the Agreement, denial of Caudill's motion to transfer is warranted. *See Haagen-Dazs Shoppe Co., Inc. v. Born*, 897 F. Supp. 122, 125 (S.D.N.Y. 1995) ("familiarity with governing law favors this Court because the franchise agreement provides that it will be 'interpreted, governed and construed' pursuant to New York law); *Toups*, 644 F. Supp. at 16 (because New York law governs this controversy, "[t]he District Court sitting in New York is obviously more familiar with New York law [than a court in Louisiana]"). Lastly, because this Court has already entered an order that will move this case forward promptly and expeditiously (the Court's Scheduling Order requires completion of fact discovery by July 31, 2008), public policy supports Brassica's right to prosecute its action in the agreed-upon forum.

Because Caudill has failed to make a clear and convincing showing that the balance of the relevant factors support transfer of this case to Kentucky, Brassica's choice of forum, which was agreed to by the parties, should not be disturbed.

**<u>Conclusion</u>**

For the foregoing reasons, Caudill's motion to transfer, stay or dismiss should be denied.

New York, New York
November 27, 2007

**BINGHAM McCUTCHEN LLP**


By:<u>s/ Edward L. Powers</u>
    Richard S. Taffet
    Edward L. Powers
    Lavanya Kilaru
    399 Park Avenue
    New York, NY 10022-4689
    (212) 705-7000

    *Attorneys for Plaintiff*
    *Brassica Protection Products LLC*