Gregory P. Gulia
Vanessa C. Hew
DUANE MORRIS LLP
1540 Broadway
New York, NY  10036-4086
(212) 692-1062
(212) 202-6151  (fax)
GPGulia@duanemorris.com
VCHew@duanemorris.com

and

Ann G. Schoen
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202
(513) 651-6128
(513) 651-6981  (fax)
aschoen@fbtlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | | |
|---|---|---|
| BRASSICA PROTECTION PRODUCTS LLC, and THE JOHNS HOPKINS UNIVERSITY | : | 1:07-cv-07844-SAS |
| | : | |
| Plaintiffs, | : | |
| | : | |
| -against- | : | **CAUDILL SEED & WAREHOUSE CO., INC.'S ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS** |
| CAUDILL SEED & WAREHOUSE CO., INC. | : | |
| Defendant. | : | |

------------------------------------------------------------X

Defendant Caudill Seed & Warehouse Co., Inc. ("Caudill") hereby submits the following

answer to Plaintiffs Brassica Protection Products LLC ("BPP") and The Johns Hopkins

University's ("JHU") Amended Complaint:

### NATURE OF THE ACTION

1.      Caudill admits that BPP asserts claims for patent infringement purportedly based upon the '895 patent (as defined in the Amended Complaint), the '567 patent (as defined in the Amended Complaint), the '122 patent (as defined in the Amended Complaint), the '018 patent (as defined in the Amended Complaint), and the '770 patent (as defined in the Amended Complaint), for breach of contract, and for trademark infringement, but otherwise denies the balance of the allegations in paragraph 1 of the Amended Complaint.

### THE PARTIES

2.      Caudill is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Amended Complaint, and therefore denies same.

3.      Caudill is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Amended Complaint, and therefore denies same.

4.      Caudill admits the allegations contained in paragraph 4 of the Amended Complaint.

### JURISDICTION AND VENUE

5.      Caudill admits that this Court has subject matter jurisdiction over patent infringement matters pursuant to 28 U.S.C. §§1331 and 1338, but otherwise denies the allegations of paragraph 5 of the Amended Complaint.

6.      Caudill denies the allegations of paragraph 6 of the Amended Complaint.

## FACTS

**The Patents-In-Suit**

7.      Caudill admits the '895 patent states on its face that it was issued on March 10, 1998, that Jed W. Fahey and Paul Talalay are the listed inventors, and that Johns Hopkins School of Medicine is the listed assignee. Caudill is without knowledge or information sufficient to form a belief as to the truth of the allegation that Johns Hopkins School of Medicine is a division of The Johns Hopkins University, and therefore denies same. Caudill further admits the reexamination certificate states on its face that the reexamination request was made on October `12, 1999, and that the certificate was issued on October 10, 2000. Caudill also admits that a copy of the '895 patent and its reexamination certificate are attached to the Amended Complaint as Exhibit A. Caudill denies the balance of the allegations contained in paragraph 7 of the Amended Complaint.

8.      Caudill admits the '567 patent states on its face that it was issued on October 19, 1999, that Jed W. Fahey and Paul Talalay are the listed inventors, and that John Hopkins School of Medicine is the listed assignee. Caudill denies the allegation in paragraph 7 of the Amended Complaint that Johns Hopkins School of Medicine is the listed assignee of the '567 patent. Caudill is without knowledge or information sufficient to form a belief as to the truth of the allegation that Johns Hopkins School of Medicine is a division of The Johns Hopkins University, and therefore denies same. Caudill also admits that a copy of the '567 patent is attached to the Amended Complaint as Exhibit B. Caudill denies the balance of the allegations contained in paragraph 8 of the Amended Complaint.

9.      Caudill admits the '122 patent states on its face that it was issued on January 23, 2001, that Jed W. Fahey and Paul Talalay are the listed inventors, and that Johns Hopkins School

of Medicine is the listed assignee. Caudill is without knowledge or information sufficient to form a belief as to the truth of the allegation that Johns Hopkins School of Medicine is a division of The Johns Hopkins University, and therefore denies same. Caudill also admits that a copy of the '122 patent is attached to the Amended Complaint as Exhibit C. Caudill denies the balance of the allegations contained in paragraph 9 of the Amended Complaint.

10.    Caudill admits the '018 patent states on its face that it was issued on June 5, 2001, that Jed W. Fahey and Paul Talalay are the listed inventors, and that Johns Hopkins School of Medicine is the listed assignee. Caudill is without knowledge or information sufficient to form a belief as to the truth of the allegation that Johns Hopkins School of Medicine is a division of The Johns Hopkins University, and therefore denies same. Caudill also admits that a copy of the '018 patent is attached to the Amended Complaint as Exhibit D. Caudill denies the balance of the allegations contained in paragraph 10 of the Amended Complaint.

11.    Caudill admits the '770 patent states on its face that it was issued on December 4, 2007, that Jed W. Fahey and Paul Talalay are the listed inventors, and that Johns Hopkins School of Medicine is the listed assignee. Caudill is without knowledge or information sufficient to form a belief as to the truth of the allegation that Johns Hopkins School of Medicine is a division of The Johns Hopkins University, and therefore denies same. Caudill also admits that a copy of the '770 patent is attached to the Amended Complaint as Exhibit E. Caudill denies the balance of the allegations contained in paragraph 11 of the Amended Complaint.

12.    Caudill denies the allegations contained in paragraph 12 of the Amended Complaint.

**The Agreement**

13.     Caudill admits that it entered into the Agreement on December 6, 2004 with BPP and that under the Agreement, BPP granted Caudill a non-exclusive sublicense to use and exploit the patents-in-suit, and that a copy of the Agreement was attached as Exhibit F to the Amended Complaint. Caudill denies the balance of the allegations of paragraph 13 of the Amended Complaint.

14.     Caudill denies the allegations of paragraph 14 of the Amended Complaint.

15.     Caudill admits that it obtained a license to use Trademarks as defined in the Agreement and that section 7.5 of the Agreement stated "Caudill shall not acquire or assert any right, title, and interest in and to any such Trademarks (except for the limited licensed granted hereunder)." Caudill denies the balance of the allegations of paragraph 15 of the Amended Complaint.

16.     Caudill admits that section 3.1 of the Agreement stated that "CSC agrees to produce or caused [sic] to be produced, manufacture or cause to be manufactured, fill, test, package, label, store, ship, supply, dispose and otherwise handle the Product, and to perform its obligations hereunder, in material compliance with applicable Laws, Regulations, GMPs and in strict compliance with the Specifications." Caudill further admits that section 3.8 of the Agreement stated that "BPP may amend or supplement the Specifications unilaterally at any time for the purpose of complying with Laws, Regulations or GMPs. Upon reasonable prior notice (and subject to CSC's approval, not to be unreasonably withheld), BPP may also amend or supplement the Specifications for any other reasonable business purpose." Caudill denies the balance of the allegations of paragraph 16 of the Amended Complaint.

17. Caudill admits that Exh. G to the Amended Complaint is entitled "Exhibit B Specifications for the Product" and is dated "Dec. 5, 2005, rev. Feb. 2005." Caudill denies that it is a Specification as defined by section 1.36 of the Agreement. Caudill denies the balance of the allegations of paragraph 17 of the Amended Complaint.

18. Caudill admits that it discussed the proposed Dietary Supplement Regulations with BPP, but denies the balance of the allegations of paragraph 18 of the Amended Complaint.

19. Caudill admits that Dan Caudill's email of November 14, 2006, has been accurately quoted in part. It denies the balance of the allegations of paragraph 19 of the Amended Complaint.

20. Caudill admits that sections 1.21 and 1.30 of the Agreement are accurately quoted in the Amended Complaint, but otherwise denies the allegations of paragraph 20 of the Amended Complaint.

21. Caudill admits that section 3.4 of the Agreement states that "CSC agrees … to label and package all Product with Labeling and Packaging approved in advance and in writing by BPP…" Caudill denies the balance of the allegations of paragraph 21 of the Amended Complaint.

22. Caudill admits the allegations of paragraph 22 of the Amended Complaint.

23. Caudill admits that section 5.2 of the Agreement states that royalty payments were due quarterly after the earlier of 18 months from the date of this Agreement and the date that CSC's aggregate Net Sales exceed $1,000,000. Caudill denies the balance of the allegations of paragraph 23 of the Amended Complaint.

24.    Caudill admits that portions of section 10.3 of the Agreement are accurately quoted in paragraph 24 of the Amended Complaint, but otherwise denies the allegations of paragraph 24 of the Amended Complaint.

25.    Caudill admits that portions of section 10.2 of the Agreement are accurately quoted in paragraph 25 of the Amended Complaint, but otherwise denies the allegations of paragraph 25 of the Amended Complaint.

26.    Caudill admits that section 10.4 of the Agreement stated that, upon termination of the Agreement, "CSC shall cease the production, manufacture, distribution, sale, use or advertisement of the Product." Caudill also admits that section 10.4 of the Agreement also stated that, upon termination of this Agreement, "each party shall immediately thereafter return to the other party all of the other party's 'Confidential Information' ..." Caudill denies the balance of the allegations contained in paragraph 26 of the Amended Complaint.

**The Breaches of the Agreement**

27.    Caudill denies the allegations contained in paragraph 27 of the Amended Complaint.

28.    Caudill denies the allegations contained in paragraph 28 of the Amended Complaint.

29.    Caudill admits that BPP sent a letter to it dated June 8, 2007 alleging breach of the Agreement by Caudill, but Caudill denies the balance of the allegations contained in paragraph 29 of the Amended Complaint.

30.    Caudill admits that the BPP letter dated June 8, 2007 stated that the termination of the Agreement would not occur if within 30 days from the notice Caudill cured the Events of

Default to the reasonable satisfaction of BPP, but denies the balance of the allegations contained in paragraph 30 of the Amended Complaint.

31.     Caudill denies the allegations contained in paragraph 31 of the Amended Complaint.

32.     Caudill admits that paragraph 32 accurately quotes from BPP's letter, but otherwise denies the allegations contained in paragraph 32 of the Amended Complaint.

33.     Caudill admits the allegations contained in paragraph 33 of the Amended Complaint.

34.     Caudill admits the allegations contained in paragraph 34 of the Amended Complaint.

35.     Caudill admits that it made no further payment to BPP after July 21, 2007, but otherwise denies the allegations contained in paragraph 35 of the Amended Complaint.

36.     Caudill admits that BPP made allegations related to purported non-payment of Quarterly Payment on or about August 7, 2007, but otherwise denies the allegations of paragraph 36 of the Amended Complaint.

37.     Caudill denies the allegations contained in paragraph 37 of the Amended Complaint.

38.     Caudill denies the allegations contained in paragraph 38 of the Amended Complaint.

39.     Caudill denies the allegations contained in paragraph 39 of the Amended Complaint.

40.     Caudill denies the allegations contained in paragraph 40 of the Amended Complaint.

41.    Caudill denies the allegations contained in paragraph 41 of the Amended Complaint.

42.    Caudill denies the allegations contained in paragraph 42 of the Amended Complaint.

## COUNT 1

### (Infringement of '895 patent)

43.    Caudill incorporates the answers and denials contained in paragraphs 1 through 42 of its Answer as if fully rewritten herein.

44.    Caudill denies the allegations contained in paragraph 44 of the Amended Complaint.

45.    Caudill denies the allegations contained in paragraph 45 of the Amended Complaint.

46.    Caudill denies the allegations contained in paragraph 46 of the Amended Complaint.

## COUNT 2

### (Infringement of '567 patent)

47.    Caudill incorporates the answers and denials contained in paragraphs 1 through 46 of its Answer as if fully rewritten herein.

48.    Caudill denies the allegations contained in paragraph 48 of the Amended Complaint.

49.    Caudill denies the allegations contained in paragraph 49 of the Amended Complaint.

50.     Caudill denies the allegations contained in paragraph 50 of the Amended Complaint.

## COUNT 3

### (Infringement of '122 patent)

51.     Caudill incorporates the answers and denials contained in paragraphs 1 through 50 of its Answer as if fully rewritten herein.

52.     Caudill denies the allegations contained in paragraph 52 of the Amended Complaint.

53.     Caudill denies the allegations contained in paragraph 53 of the Amended Complaint.

54.     Caudill denies the allegations contained in paragraph 54 of the Amended Complaint.

## COUNT 4

### (Infringement of '018 patent)

55.     Caudill incorporates the answers and denials contained in paragraphs 1 through 54 of its Answer as if fully rewritten herein.

56.     Caudill denies the allegations contained in paragraph 56 of the Amended Complaint.

57.     Caudill denies the allegations contained in paragraph 57 of the Amended Complaint.

58.     Caudill denies the allegations contained in paragraph 58 of the Amended Complaint.

## COUNT 5

### (Infringement of '770 patent)

59.     Caudill incorporates the answers and denials contained in paragraphs 1 through 59 of its Answer as if fully rewritten herein.

60.     Caudill denies the allegations contained in paragraph 60 of the Amended Complaint.

61.     Caudill denies the allegations contained in paragraph 61 of the Amended Complaint.

62.     Caudill denies the allegations contained in paragraph 62 of the Amended Complaint.

## COUNT 6

### (Breach of Contract)

63.     Caudill incorporates the answers and denials contained in paragraphs 1 through 62 of its Answer as if fully rewritten herein.

64.     Caudill admits the allegations contained in paragraph 64 of the Amended Complaint.

65.     Caudill denies the allegations contained in paragraph 65 of the Amended Complaint.

66.     Caudill denies the allegations contained in paragraph 66 of the Amended Complaint.

67.     Caudill denies the allegations contained in paragraph 67 of the Amended Complaint.

68.    Caudill denies the allegations contained in paragraph 68 of the Amended Complaint.

69.    Caudill denies the allegations contained in paragraph 69 of the Amended Complaint.

70.    Caudill denies the allegations contained in paragraph 70 of the Amended Complaint.

71.    Caudill denies the allegations contained in paragraph 71 of the Amended Complaint.

## COUNT 7

### (Trademark Infringement Under 15 U.S.C. § 1125(A))

72.    Caudill incorporates the answers and denials contained in paragraphs 1 through 71 of its Answer as if fully rewritten herein.

73.    Caudill denies the allegations contained in paragraph 73 of the Amended Complaint.

74.    Caudill admits that, according to the on-line records of the U.S. Patent and Trademark Office, a trademark application for SGS and design was filed on October 27, 2005, but otherwise denies the balance of the allegations contained in paragraph 74 of the Amended Complaint.

75.    Caudill denies the allegations contained in paragraph 75 of the Amended Complaint.

76.    Caudill denies the allegations contained in paragraph 76 of the Amended Complaint.

77.     Caudill denies the allegations contained in paragraph 77 of the Amended Complaint.

78.     Caudill denies the allegations contained in paragraph 78 of the Amended Complaint.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Amended Complaint fails to state a claim for which relief may be granted.

### SECOND DEFENSE

Caudill has not and does not infringe any valid and enforceable claim of the '895 patent, the '567 patent, the '122 patent, the '018 patent, or the '770 patent directly or indirectly, either literally or under the doctrine of equivalents, willfully or otherwise.

### THIRD DEFENSE

The claims of the '895 patent, the '567 patent, the '122 patent, the '018 patent, and the '770 patent are invalid for failure to comply with the requirements of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### FOURTH DEFENSE

By reason of proceedings in the United States Patent and Trademark Office, and by reasons of the statements, admissions, and/or amendments made by the applicants or on the applicants' behalf, Plaintiffs are estopped from asserting infringement of the '895 patent, the '567 patent, the '122 patent, the '018 patent, or the '770 patent.

## FIFTH DEFENSE

BPP is estopped from asserting infringement of the SGS mark because of express disclaimer of the word "SGS" in the pending trademark applications.

## SIXTH DEFENSE

BPP is estopped from asserting breach of contract because the relevant Trademark, as defined by the Agreement, has been abandoned.

Caudill reserves the right to amend its Answer to assert additional defenses which may become known through discovery or otherwise.

WHEREFORE, Caudill demands:

(a)     That Plaintiffs' Amended Complaint be dismissed with prejudice and that Plaintiffs take nothing by their Amended Complaint;

(b)     That judgment be entered in favor of Caudill and against Plaintiffs for all claims set forth in the Amended Complaint;

(c)     That Caudill be awarded its costs in this suit, and reasonable attorneys' fees and expenses; and,

(d)     That Caudill be granted such other and further relief as this Court may deem just and proper under the circumstances.

## COUNTERCLAIMS

Counterclaim Plaintiff Caudill Seed & Warehouse Co., Inc. ("Caudill"), by counsel, brings this Counterclaim against Counterclaim Defendants Brassica Protection Products, LLC and The Johns Hopkins University ("Plaintiffs") and alleges as follows:

### Jurisdiction and Venue

1.      This is an action for declaratory judgment arising under the patent laws of the United States, Title 35 of the United States Code, and 28 U.S.C. § 2201(a); for injunctive relief and damages based upon claims of unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a); and for breach of contract and breach of the covenant of good faith and fair dealing under the laws of the State of New York.

2.      Subject matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, 1332, 1338(a) and (b), and 1367, and pursuant to 15 U.S.C. § 1121.

3.      Personal jurisdiction over Plaintiffs is proper in this district.

4.      Although there is a more appropriate and more convenient forum in the District Court for the Western District of Kentucky, venue exists in this judicial district pursuant to 28 U.S.C. § 1391(b).

### The Parties

5.      Caudill is a Kentucky corporation headquartered at 1402 W. Main Street, Louisville, Kentucky. Caudill is the largest North American supplier, as well as one of the largest in the world, of sprouting seeds and beans to the commercial sprouting industry. Caudill makes and sells among other things glucoraphanin ("GR") containing products.

6.      Upon information and belief, Brassica Protection Products, LLC ("BPP") is a limited liability company with its principal place of business at 250 S. President Street, Suite

2000, Baltimore, MD 21202. BPP sells GR-containing products, which are made from seeds it buys from Caudill. Upon information and belief, The Johns Hopkins University is a Maryland corporation having its principal place of business at 3400 N. Charles Street, Baltimore, MD 21218.

<u>**The Patents In Suit**</u>

7.      Upon information and belief, BPP is the licensee of United States Patents RE-36,784; 5,725,895; 5,968,567; 5,968,505; 6,177,122; 6,521,818; 6,242,018; 6,737,441; and 7,303,770, (collectively, the "BPP Patents"). Upon information and belief, because the United States government maintains a license in each of the BPP Patents, BPP does not hold all substantial rights in the BPP Patents.

8.      Upon information and belief, Johns Hopkins School of Medicine is the assignee of each of the BPP Patents.

9.      United States Patent RE-36,784 ("the '784 patent") was re-issued to Cho et al. on July 18, 2000 for "Chemoprotective Isothiocyanates" and was originally issued as United States Patent 5,411,986 on May 2, 1995.  A copy of the '784 patent is appended hereto as Exhibit A.

10.      United States Patent 5,725,895 ("the '895 patent") was issued to Fahey et al. on March 10, 1998 for "Method of Preparing a Food Product from Cruciferous Seeds." A copy of the '895 patent is appended hereto as Exhibit B.

11.      United States Patent 5,968,567 ("the '567 patent") was issued to Fahey et al. on October 19, 1999 for "Method of Preparing a Food Product from Cruciferous Sprouts."  A copy of the '567 patent is appended hereto as Exhibit C.

12.    United States Patent 5,968,505 ("the '505 patent") was issued to Fahey et al. on October 19, 1999 for "Cancer Chemoprotective Food Products." A copy of the '505 patent is appended hereto as Exhibit D.

13.    United States Patent 6,177,122 ("the '122 patent") was issued to Fahey et al. on January 23, 2001 for "Cancer Chemoprotective Food Products." A copy of the '122 patent is appended hereto as Exhibit E.

14.    United States Patent 6,521,818 ("the '818 patent") was issued to Fahey on February 18, 2003 for "Development of Novel Highly Chemoprotectant Crucifer Germplasm." A copy of the '818 patent is appended hereto as Exhibit F.

15.    United States Patent 6,242,018 ("the '018 patent") was issued to Fahey et al. on June 5, 2001 for "Cancer Chemoprotective Food Products." A copy of the '018 patent is appended hereto as Exhibit G.

16.    United States Patent 6,737,441 ("the '441 patent") was issued to Fahey on May 18, 2004 for "Treatment of Helicobacter with Isothiocyanates." A copy of the '441 patent is appended hereto as Exhibit H.

17.    United States Patent 7,303,770 ("the '770 patent") was issued to Fahey et al. on December 4, 2007 for "Cancer Chemoprotective Food Products." A copy of the '770 patent is appended hereto as Exhibit I.

## Case or Controversy Suit

18.    There is a substantial controversy between Caudill and Plaintiffs which has adverse legal interests of sufficient immediacy and reality to warrant relief. BPP brought an action for patent infringement alleging infringement of several of the BPP Patents and breach of contract in this Court, one day after Caudill had filed a declaratory judgment action for

noninfringement in the United States District Court for the Western District of Kentucky. In an Amended Complaint, filed February 19, 2008, in this Court, Plaintiffs further alleged infringement of the '770 patent.

19.    Caudill denies those allegations and asserts that it does not infringe any valid claim of any of the BPP Patents or any of BPP's trademark rights, nor has it materially breached the license agreement entered into by Caudill and BPP on December 6, 2004 (the "Agreement").

20.    Accordingly, there is an actual controversy between Caudill and Plaintiffs, entitling Caudill to seek a declaration of its rights.

### Development of GR-containing Supplements by Caudill

21.    Under the Agreement, Caudill was granted a sublicense under the BPP Patents, and two applications, U.S. Patent Application Serial No. 08/528,858, and International PCT Application Serial No. PCT/US96/14866, to develop, manufacture, and sell GR-containing products. Caudill expected to collaborate with BPP to successfully commercialize the BPP Patents and bring a GR-containing supplement to market.

22.    Caudill has invested more than $2 million to research and develop seeds, to develop a production and quality process to manufacture GR-containing supplements, and to market and sell its GR-containing supplements. Caudill worked with BPP developing breeding lines to produce broccoli seed that contain a high concentration of GR. In the beginning, the two parties seemed to be able to work together. Caudill provided its confidential information, including that relating to its processing, to BPP.

23.    Caudill also developed by itself and at its own expense an entire manufacturing and quality control process for GR-containing supplements. Caudill had to develop a stabilized GR in powdered form. By itself, Caudill invented a method to purify GR on a large scale thereby

making commercial production possible. In Caudill's patent pending process, broccoli seed is pelletized by rolling and flaking the seeds. Broccoli seed oil is extracted from the pellets using supercritical $CO_2$. The de-oiled remains of the pellets contain GR. These de-oiled remains are then milled and put into capsules.

24.    In fact, Caudill introduced BPP to broccoli seed oil. Prior to Caudill's development of this product, BPP had been unaware of the oil or its properties.

25.    BPP is associated with Johns Hopkins School of Medicine, which is, on information and belief, a division of Plaintiff The Johns Hopkins University and the owner of the BPP Patents. Because of its affiliation with the medical school, much of its know-how is ultimately published. For example, Jed Fahey provided to Caudill an analytical procedure used to check for GR. Although he purported to provide that information in confidence, it had in fact already been published. Similarly, Mr. Fahey provided information about myrosinase – which Mr. Fahey claimed was confidential but had actually been published previously and so could not be confidential. Therefore, to the extent BPP provided any confidential information and that information was published, BPP has no "Confidential Information" as defined in Section 13.2 of the Agreement. Furthermore, separate and apart from the Agreement, Caudill paid over $100,000 for consulting from BPP.

**Deterioration of Relationship with BPP**

26.    BPP seemed to be actively involved and supportive of Caudill's early efforts to develop a GR-containing supplement. After development of a stabilized GR in powdered form and introduction of a commercial product by Caudill, BPP's attitude changed dramatically.

27.    The working relationship fell apart literally overnight. Dan Caudill, CEO of Caudill, attended a trade show for supplement producers and distributors with among others,

Antony Talalay, President of BPP, in April 2005. On the first day of the show, all seemed well. Mr. Caudill and Mr. Talalay worked the floor of the show together, met with potential customers, and seemed to be enjoying a smooth working relationship. Jed Fahey presented a vendor product seminar relating to Caudill's GR-containing supplement.

28.    The next morning at breakfast Mr. Talalay was cold and distant, criticizing Caudill's GR-containing supplement, its packaging and marketing materials, the supplement industry, etc. From that time on, the relationship between the two companies progressively worsened.

29.    After the April 2005 trade show, BPP became very critical of Caudill. When Caudill started manufacturing commercial quantities of GR-containing product, BPP worked to delay Caudill. BPP demanded changes to previously agreed-upon processes. BPP demanded that the manufacturing quality standard for Caudill's product be changed to one appropriate for a pharmaceutical, not that of a supplement, as required for the product (which is a supplement and not a pharmaceutical). BPP also insisted that labeling on the box be changed, so that there would be no references to potential benefits and no reference to Dr. Paul Talalay, one of the named inventors of the BPP Patents, or the association with Johns Hopkins School of Medicine even though it had previously approved the same wording on other packaging.

30.    In 2001, Dr. Talalay, a director of BPP, had published an article in ACADEMIC MEDICINE 2001; 76:238-47, relating to the dangers of using supplements. This article was published three years before BPP had licensed the rights for manufacturing and selling supplements to Caudill.

31.    In the fall of 2005, Dr. Talalay, gave an interview in which he discussed the "dangerous side effects" of supplements, calling them "neither safe nor efficacious." Johns

Hopkins Newletter, dated October 28, 2005. He further opined that, "Anyone who believes that the health food store is safe is totally wrong." *Id.* Because of the known affiliation between Caudill and BPP, this interview caused Caudill further embarrassment and loss of good will.

32. The above actions were made even more unfair and puzzling to Caudill because BPP did not adhere to the changed standards it was trying to foist on Caudill for BPP's own GR-containing products. For example, disputed references to Johns Hopkins University, with which BPP took umbrage, had been copied verbatim from BPP's own product packaging. In sharp contrast, other licensees in Asia were allowed by BPP to make even more egregious statements about the health benefits of GR, quoting Dr. Talalay and claiming that it reduces cancer or protects against cancer in humans (facts that have not been substantiated).

33. Moreover, Caudill was embarrassed by and almost thrown out of the Natural Products Expo (the "Expo") -- the largest show for supplements in the United States -- in the spring of 2006 due to its close association with BPP. BPP was forbidden from displaying at the Expo because of numerous violations of FDA regulations in connection with BPP's labeling and brochures for its tea products. More embarrassing for Caudill, BPP was unprofessional in its response to the Expo Standards Manager when these violations were brought to its attention by the Standards Manager. Only after expelling BPP (and Caudill along with it) did the Expo organizers, based on their long-standing relationship and respect for Caudill and in light of Caudill's long-standing history with the Expo, agree to allow Caudill by itself to participate. As a condition of its participation in the Expo, Caudill was required to promise not to promote any BPP products. Coming on the heels of the Talalay interview excoriating the supplement industry, this additional embarrassment damaged Caudill's hard-earned good reputation.

34.     Although working with BPP continued to be more and more difficult, Caudill persevered. For over 14 months Caudill made repeated overtures to BPP, all of which were summarily rebuffed. Sometime after entering a world-wide license agreement with market giant Kagome, BPP notified Caudill of purported "breaches" of the Agreement and its intent to terminate its Agreement with Caudill. Although Caudill tried in good faith to resolve the issues raised by BPP in that letter, BPP refused to be satisfied and terminated the Agreement on July 21, 2007.

35.     BPP wasted no time in filing suit for breach of the Agreement by Caudill, among other things, in New York state court on August 6, 2007.  Although that suit was ultimately dismissed, BPP followed up with a patent infringement and breach of contract action filed before this Court, which was filed one day after Caudill filed a declaratory judgment action of non-infringement in the Western District of Kentucky.

### BPP Patent Non-infringement, Invalidity, and Unenforceability

36.     Three of the BPP Patents were litigated and, of the claims that were litigated, all were found to be invalid. *In re Cruciferous Sprout Litigation,* 301 F.3d 1343 (Fed. Cir. 2002).

37.     Cruciferous plants are a very large family of edible plants, including broccoli, cabbage, turnip, mustard, radish, and many others. The claimed cruciferous plants and plant parts have been used, in some cases for centuries prior to the filing of the applications that became the BPP Patents, for treatment of various ailments or as an ingredient in food. In the previous litigation, where broccoli sprouts had been claimed, the claims were found to be anticipated by prior consumption of broccoli sprouts.

38.     The remaining BPP Patent claims are similarly invalid over prior art and prior practice, some of it dating back centuries.

39.    As one of the inventors named on the BPP Patents and one who has worked for years in this field, Dr. Talalay likely knew of such ancient usage of cruciferous plants and plant parts and, if so, failed to disclose material information from the patent examiner. Intentional withholding of material information by the inventor would render the BPP Patents unenforceable.

40.    Caudill's manufacture, use, sale, and offering for sale of GR-containing products does not infringe any valid or enforceable claim of any of the BPP Patents.

### BPP Is Not Accurately Labeling Its Products

41.    BPP produces its own GR-containing products. The seeds for the broccoli sprouts are provided by Caudill. BPP's website refers to Caudill as its "solely licensed seed supplier."

42.    Testing of BPP products suggests that BPP is not accurately labeling its own products with regard to GR content.

43.    Despite these questions with regard to its own products, BPP insisted that Caudill did not meet the manufacturing quality standard purportedly specified in the Agreement. In fact, there is, and has been, no Specification as defined by the Agreement. Paradoxically, while using that argument to terminate the Agreement, BPP has no qualms about continuing to order GR-containing seeds from Caudill for BPP's own products. In fact, a large order was placed after the lawsuit in New York was filed.

### Count 1 – Declaration of Non-infringement, Invalidity, and Unenforceability

44.    Caudill incorporates paragraphs 1 – 43 above as if fully restated herein.

45.    BPP, purporting to be the exclusive licensee of the BPP Patents, and The Johns Hopkins University, purporting to be the owner of the BPP Patents, has accused Caudill of infringing those patents.

46.    There is a substantial controversy between Caudill and Plaintiffs which has adverse legal interests of sufficient immediacy and reality to warrant relief.

47.    Caudill's manufacture, use, sale, and offering for sale of glucoraphanin-containing products does not infringe any valid claim of any of the BPP Patents.

48.    By reason of proceedings in the United States Patent and Trademark Office, and by reasons of the statements, admissions, and/or amendments made by the applicants or on the applicants' behalf, Plaintiffs are estopped from asserting infringement of the '895 patent, the '567 patent, the '122 patent, the '018 patent, or the '770 patent.

49.    The BPP Patents are invalid in light of substantial prior art related to cruciferous plants.

50.    The BPP Patents are unenforceable in light of inequitable conduct.

51.    Caudill is entitled to a declaratory judgment ruling that it has not infringed, and is not infringing, any of the claims of the BPP Patents; and that the BPP Patents are invalid and/or unenforceable.

**Count 2 – Unfair Competition**

52.    Caudill incorporates paragraphs 1 – 51 above as if fully restated herein.

53.    BPP has misrepresented and is misrepresenting the nature, characteristics, or qualities of its GR-containing products. Such actions constitute unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.    BPP knowingly and intentionally made the misrepresentations and so its unfair competition is willful.

55.    Because of its affiliation with Caudill and the fact that it is known to be using Caudill seeds to produce BPP GR-containing products, BPP's unfair competition is likely to

cause confusion and irreparable injury to Caudill's GR supplement business, and Caudill's business, good will, and reputation. BPP's actions, if not enjoined, will continue.

56.     As a result of BPP's unfair competition, Caudill has incurred and continues to incur damages in amounts to be proved at trial consisting of, among other things, diminution of the value and good will associated with Caudill's GR supplement business.

**Count 3 – Breach of Contract**

57.     Caudill incorporates paragraphs 1 – 56 above as if fully restated herein.

58.     Caudill fully and faithfully performed its material obligations under the Agreement.

59.     BPP has breached the Agreement by unfairly applying standards to Caudill's product that were more onerous than those BPP applied to its other licensees or itself. BPP has constantly changed requirements, costing Caudill money and effort to adjust to the whims of BPP.

60.     BPP has further breached the Agreement by unfairly and improperly terminating the Agreement.

61.     BPP further breached the Agreement by failing to return Caudill's Confidential Information upon termination of the Agreement.

62.     As a result of BPP's breaches of the Agreement, Caudill has suffered and will continue to suffer irreparable harm and monetary damages.

**Count 4 – Breach of Implied Duty of Good Faith and Fair Dealing**

63.     Caudill incorporates paragraphs 1 – 621 above as if fully restated herein.

64.     During the term of its contractual agreement with Caudill, BPP has unfairly applied standards to Caudill's product that were more onerous than those BPP applied to its other

25

licensees or itself. BPP has constantly changed requirements, costing Caudill money and effort to adjust to the whims of BPP.

65.    BPP unfairly and improperly terminated the Agreement.

66.    BPP has sought to prevent Caudill's performance under the Agreement and to deprive Caudill of the benefits of the Agreement.

67.    As a result of BPP's bad faith and unfair actions towards Caudill, Caudill has incurred and continues to incur irreparable harm and damages in an amount to be proved at trial.

## Request For Relief

WHEREFORE, Caudill respectfully requests:

A.    the entry of a judgment declaring that Caudill has not infringed and is not infringing any of the BPP Patents;

B.    the entry of a judgment declaring that the BPP Patents are invalid or unenforceable;

C.    the entry of a judgment declaring that Caudill has not infringed and is not infringing any trademark belonging to BPP;

D.    the entry of a judgment that BPP's actions be found to be unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

E.    that this Court grant injunctive relief prohibiting BPP from mislabeling its GR-containing products;

F.    that this Court order BPP to account to Caudill for any and all revenues and profits that it derived from its willful and intentional unfair competition, and to pay all damages which Caudill has sustained by reason of the acts complained of herein, and that such damages be trebled;

G.     that this case be deemed exceptional pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117(a);

G.     an award of its attorney fees (35 U.S.C. § 285);

H.     an award of its costs; and

I.     such other relief as this Court may deem appropriate under the circumstances.

## JURY TRIAL DEMANDED

Caudill hereby demands trial by jury for all issues in this action triable of right by jury.

Respectfully submitted,

s/ Ann G. Schoen
Ann G. Schoen
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio  45202
(513) 651-6128
(513) 651-6981  (fax)

and

Gregory P. Gulia
Vanessa C. Hew
DUANE MORRIS LLP
1540 Broadway
New York, NY  10036-4086
Tel:  (212) 692-1000
Fax: (212) 692-1020  (fax)

Attorneys for Defendant
Caudill Seed & Warehouse Co. Inc.
d/b/a Caudill Seed Co.

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2008, the foregoing was filed with the Clerk of the

Court via ECF and served in accordance with Southern District's Rules on Electronic Service

upon the following parties:

Richard S. Taffet
Edward L. Powers
Bingham McCutchen LLP
399 Park Avenue
New York, NY  10022-4689

s/ Ann G. Schoen

CINLibrary BT06243.0546312 1818684v1