Docket No. 46528/102/JOHQ

# DECLARATION AND POWER OF ATTORNEY

As a below named inventor, I hereby declare that:

• My residence, post office address, and citizenship are as stated below next to my name.
I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

### CANCER CHEMOPROTECTIVE FOOD PRODUCTS

the specification of which (check one)

☒ is attached hereto

☐ was filed on    as Application Serial No.    and was amended on    (if applicable).

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is known by me to be material to patentability as defined in Title 37, Code of Federal Regulations § 1.56.

I hereby claim foreign priority benefits under Title 35, United States Code, § 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

PRIOR FOREIGN APPLICATION(S)

| NUMBER | COUNTRY | DAY/MONTH/YEAR FILED | PRIORITY CLAIMED |
|--------|---------|----------------------|------------------|
|        |         |                      |                  |
|        |         |                      |                  |
|        |         |                      |                  |

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose information which is known by me to be material to patentability as defined in Title 37, Code of Federal Regulations § 1.56 which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| APPLICATION SERIAL NO. | FILING DATE | STATUS: PATENTED, PENDING, ABANDONED |
|------------------------|-------------|--------------------------------------|
|                        |             |                                      |
|                        |             |                                      |
|                        |             |                                      |

I hereby appoint as my attorneys, with full powers of substitution and revocation, to prosecute this application and transact all business in the Patent and Trademark Office connected therewith: Stephen A. Bent, Reg. No. 29,768; David A. Blumenthal, Reg. No. 26,257; John J. Feldhaus, Reg. No. 28,822; Donald D. Jeffery, Reg. No. 19,980; Eugene M. Lee, Reg. No. 32,039; Peter G. Mack, Reg. No. 26,001; Brian J. McNamara, Reg. No. 32,789; Sybil Meloy, Reg. No. 22,749; George E. Quillin, Reg. No. 32,792; Colin O. Sandercock, Reg. No. 31,298; Bernhard D. Saxe, Reg. No. 28,665; Richard L. Schwaab, Reg. No. 25,479; Arthur Schwartz, Reg. No. 22,115; Harold C. Wegner, Reg. No. 25,258.

Send all correspondence to FOLEY & LARDNER, 3000 K Street, N.W., Suite 500, Washington, DC 20007-5109. Address telephone communications to _Bernhard D. Saxe_ at (202) 672-5300.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Full Name of First or Sole Inventor Jed W. FAHEY | Signature of First or Sole Inventor Jed W. Fahey | Date 9/18/95 |
|---|---|---|
| Residence Address 6704 RIDGE RD., ELDERSBURG, MD 21784 | | Country of Citizenship United States |
| Post Office Address 6704 RIDGE RD., ELDERSBURG, MD 21784 | | |

Signatures should conform to names as typewritten.  ☒ Additional inventors on attached Page 2.

CSC017617

PAGE 2

Docket No. 46528/102/JOHO

| Full Name of Second Inventor Paul TALALAY | Signature of Second Inventor Paul Talalay | Date 9/13/95 |
|---|---|---|
| Residence Address 5512 BOXHILL LANE, BALTIMORE MD 21210 | Country of Citizenship United States | |
| Post Office Address 5512 BOXHILL LANE BALTIMORE MD 21210 | | |

0890781341249497

~~~ant or Patentee: __I__ _EY et al._

~~~ial or Patent No.: __08/528,858__    Atty. Dkt. No. __0528/102/JOHO__

Filed or Issued: 9/15/95

For: __CANCER CHEMOPROTECTIVE FOOD PRODUCTS__

## VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS
## (37 CFR 1.9(f) AND 1.27 (c)) — NONPROFIT ORGANIZATION

I hereby declare that I am an official empowered to act on behalf of the nonprofit organization identified below:

NAME OF ORGANIZATION: __Johns Hopkins School of Medicine__
ADDRESS OF ORGANIZATION: __2024 E. Monument Street, Suite 2-100, Baltimore, MD 21205__
TYPE OF ORGANIZATION:

(X)    UNIVERSITY OR OTHER INSTITUTION OF HIGHER EDUCATION
( )    TAX EXEMPT UNDER INTERNAL REVENUE SERVICE CODE (26 USC 501(a) AND 501(c)(3))
( )    NONPROFIT SCIENTIFIC OR EDUCATIONAL UNDER STATUTE OF STATE OF THE UNITED
       STATES OF AMERICA
       (NAME OF STATE  )
       (CITATION OF STATUTE  )
( )    WOULD QUALIFY AS TAX EXEMPT UNDER INTERNAL REVENUE SERVICE CODE (26 USC
       501(a) and 501(c)(3) IF LOCATED IN THE UNITED STATES OF AMERICA
( )    WOULD QUALIFY AS NONPROFIT SCIENTIFIC OR EDUCATIONAL UNDER STATUTE OF
       STATE OF THE UNITED STATES OF AMERICA IF LOCATED IN THE UNITED STATES OF
       AMERICA
       (NAME OF STATE  )
       (CITATION OF STATUTE  )

I hereby declare that the nonprofit organization identified above qualifies as a nonprofit organization as defined in 37 CFR 1.9(e) for purposes of paying reduced fees under section 41(a) or (b) of Title 35, United States Code with regard to the invention entitled __CANCER CHEMOPROTECTIVE FOOD PRODUCTS__ by inventor(s) __FAHEY et al.__ described in

(X)    the specification filed herewith
( )    application serial no. _____ , filed _____
( )    patent no. _____ , issued _____

I hereby declare that rights under contract or law have been conveyed to and remain with the nonprofit organization with regard to the above-identified invention.

If the rights held by the nonprofit organization are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(d) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e). *NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

NAME: _____
ADDRESS: _____
( ) INDIVIDUAL            ( ) SMALL BUSINESS CONCERN        ( ) NONPROFIT CORPORATION

NAME: _____
ADDRESS: _____
( ) INDIVIDUAL            ( ) SMALL BUSINESS CONCERN        ( ) NONPROFIT CORPORATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate: (37 CFR 1.28(b)).

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING: David A. Blake, Ph.D.
TITLE OF PERSON OTHER THAN OWNER: __Executive Vice Dean__
ADDRESS OF PERSON SIGNING: __720 Rutland Avenue, Baltimore, Maryland 21205__
SIGNATURE: _____    DATE: _____

CSR017619

JHU-TECHNOLOGY LICENSING TEL: 410-955-1245        Apr  4.97 15:13 No.006 P.02



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
ASSISTANT SECRETARY AND COMMISSIONER
OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

MARCH 14, 1996                                PTAS

B SAXE                                          *100091892A*
FOLEY & LARDNER
P.O. BOX 25696                                  ᴿᴱᶜᴱᴵᵛᴱᴰ
3000 K STREET, N.W., SUITE 500
WASHINGTON, D.C.  20007-5109                    MAR 20 1996

                                                FOLEY & LARDNER
          UNITED STATES PATENT AND TRADEMARK OFFICE
        NOTICE OF RECORDATION OF ASSIGNMENT DOCUMENT

THE ENCLOSED DOCUMENT HAS BEEN RECORDED BY THE ASSIGNMENT DIVISION OF THE
U.S. PATENT AND TRADEMARK OFFICE.  A COMPLETE MICROFILM COPY IS AVAILABLE
AT THE ASSIGNMENT SEARCH ROOM ON THE REEL AND FRAME NUMBER REFERENCED
BELOW.

PLEASE REVIEW ALL INFORMATION CONTAINED ON THIS NOTICE.  THE INFORMATION
CONTAINED ON THIS RECORDATION NOTICE REFLECTS THE DATA PRESENT IN THE
PATENT AND TRADEMARK ASSIGNMENT SYSTEM.  IF YOU SHOULD FIND ANY ERRORS OR
HAVE QUESTIONS CONCERNING THIS NOTICE, YOU MAY CONTACT THE EMPLOYEE WHOSE
NAME APPEARS ON THIS NOTICE AT 703-308-9723.  PLEASE SEND REQUEST FOR
CORRECTION TO:  U.S. PATENT AND TRADEMARK OFFICE, ASSIGNMENT DIVISION,
BOX ASSIGNMENTS, NORTH TOWER BUILDING, SUITE 10C35, WASHINGTON, D.C. 20231.

RECORDATION DATE: 09/15/1995          REEL/FRAME: 7694/0746
                                      NUMBER OF PAGES: 2

BRIEF:  ASSIGNMENT OF ASSIGNOR'S INTEREST (SEE DOCUMENT FOR DETAILS).

ASSIGNOR:
   FAHEY, JED W.                      DOC DATE: 09/13/1995

ASSIGNOR:
   TALALAY, PAUL                      DOC DATE: 09/13/1995

ASSIGNEE:
   JOHNS HOPKINS SCHOOL OF MEDICINE
   2024 E. MONUMENT STREET, SUITE 2-100
   BALTIMORE, MARYLAND 21205

SERIAL NUMBER: 08528858               FILING DATE: 09/15/1995
PATENT NUMBER:                        ISSUE DATE:



SEDLEY FYNE, EXAMINER
ASSIGNMENT DIVISION
OFFICE OF PUBLIC RECORDS

JHU-TECHNOLOGY LICENSING TEL: 410-955-1245    Apr  4,97 15:13 No.006 P.03

*9-15-95*

| FORM TLD-1995 modified Rev. 4-85 | SEP 15 1995 | 11-21-1995 | U.S. DEPARTMENT |
| OMB No. 0651-0011 (exp. 4/94) | | [barcode] | 11/15/95 |

To the Honorable Commissioner of Patents and Tr.    100021896 showing original documents or copy thereof.

**1. Name of conveying party(ies) TRADEMARK**

Jed W. FAHEY, Paul TALALAY

Additional name(s) of conveying party(ies) attached?  No

**2. Name and address of receiving party(ies):**

Name:  Johns Hopkins School of Medicine

Internal Address:

Street Address:  2024 E. Monument Street, Suite 2-100

City:  Baltimore, State:  MD  ZIP:  21205

Additional name(s) & address(es) attached?  No

**3. Nature of conveyance:**

XX Assignment    Merger

Security Agreement    Change of Name

Other

Execution Date: 09-13-95

**4. Application number(s) or patent number(s):**

If this document is being filed together with a new application, the execution date of the application is: 09-15-95

A. Patent Application No.(s)    B. Patent No.(s)

Additional numbers attached?  No

**5. Name and address of party to whom correspondence concerning document should be mailed:**

Name: | OLEY & LARDNER - Attn: B. Saxe

Internal Address:  P.O. Box 25696

Street Address:  3000 K Street, N.W., Suite 500

City:  Washington, D.C.    ZIP:  20007-5109

**6. Total number of applications and patents involved:** 1

**7. Total fee (37 C.F.R. § 3.41). . . . . . . .$40.00**

XX Enclosed

Authorized to be charged to deposit account

**8. Deposit account number:**

(Attach duplicate copy of this page if paying by deposit account)

DO NOT USE THIS SPACE

119 RG 10/11/95 08528058    1  581    40.00 CK

**9. Statement and signature.**

To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the original document.

Bernhard D. Saxe    Signature    September 15, 1995
Name of Person Signing    Date

Total number of pages including cover sheet, attachments, and document: **2**

Mail documents to be recorded with required cover sheet information to:
Commissioner of Patents & Trademarks, Box Assignments
Washington, D.C. 20231

0996781311244097

CSC017621

# A  IGNMENT - WORLD  DE

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each undersigned inventor has sold and assigned, and by these presents hereby sells and assigns, unto

### JOHNS HOPKINS SCHOOL OF MEDICINE

its successors and assigns, the entire right, title and interest, so far as concerns the United States and the Territories and Possessions thereof and all foreign countries in and to the invention in

### CANCER CHEMOPROTECTIVE FOOD PRODUCTS

as set forth in his United States Patent Application

XX   executed concurrently herewith
__   executed on _____
__   Serial No. _____ filed _____

said application for United States Letters Patent, including all divisional, renewal, substitute, continuation and Convention applications based in whole or in part upon said inventions or upon said applications, and any and all Letters Patent and reissues and extensions of Letters Patent granted for said inventions or upon said applications and every priority right that is or may be predicated upon or arise from said inventions, said applications, and said Letters Patent; said Assignee being hereby authorized to file patent applications in any or all countries on any or all said inventions in the name of the undersigned or in the name of said Assignee or otherwise as said Assignee may deem advisable, under the International Convention or otherwise; the Commissioner of Patents and Trademarks of the United States of America being hereby authorized to issue or transfer all said Letters Patent to said Assignee in accordance herewith; this assignment being under covenant, not only that full power to make the same is had by the undersigned, but also that such assigned right is not encumbered by any grant, license, or other right theretofore given, and that the undersigned will do all acts reasonably serving to ensure that the said inventions, patent applications and Letters Patent shall be held and enjoyed by said Assignee as fully and entirely as the same could have been held and enjoyed by the undersigned if this assignment had not been made, and particularly to execute and deliver to said Assignee all lawful documents including petitions, specifications, oaths, assignments, invention disclaimers, and lawful affidavits in form and substance which may be requested by said Assignee, to furnish said Assignee with all facts relating to said inventions or the history thereof and any and all documents, photographs, models, samples or other physical exhibits which may be of said inventions, and to testify in any proceedings relating to said inventions, patent applications and Letters Patent.

The undersigned hereby grant the firm of FOLEY & LARDNER the power to insert in this Assignment any further identification which may be necessary or desirable to comply with the rules of the U.S. Patent and Trademark Office for recordation of this Assignment.

| NAMES AND SIGNATURES OF INVENTORS | | |
|---|---|---|
| Name: Jed W. FAHEY | Signature: | Date: 9/13/95 |
| Name: Paul TALALAY | Signature: Paul Talalay | Date: 9/13/95 |
| Name: | Signature: | Date: |

| NAMES AND SIGNATURES OF WITNESSES | | |
|---|---|---|
| Name: RUTH DILLINGER | Signature: | Date: 9/13/95 |
| Name: SHARON KERRY | Signature: | Date: 9-13-95 |

Note: Prima facie evidence of execution may optionally be obtained by execution of this document before a U.S. Consul or before a local officer authorized to administer oaths whose authority is proved by a certificate from a U.S. Consul.

IPT-407:4/90(1)(modified)

0899781311224497



FIG. 1

CSC017623

## FIG. 2A



## FIG. 2B



CSC017624

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Attorney Docket No. 046528/0116/JOHO

In re patent application of
Jed FAHEY *et al.*
Serial No. Unassigned
Filed:  Concurrently herewith
For:  CANCER CHEMOPROTECTIVE FOOD PRODUCTS

(Divisional of Serial No. 08/528,858, filed Sept. 15, 1995)

PRELIMINARY AMENDMENT

Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

Preliminary to examination please amend the above-
identified application as follows:

IN THE CLAIMS:

Kindly cancel claims 1-47 without prejudice and disclaimer
and add the following new claims:

--48.    A method of increasing the chemoprotective amount
of Phase 2 enzymes in a mammal, comprising the step of
administering to a mammal an effective quantity of cruciferous
sprouts, with the exception of *Brassica oleracea capitata*,
*Lepidium sativum*, *Sinapis alba*, *Sinapis nigra*, and *Raphanus
sativus* sprouts, harvested between the onset of germination up
to and including the 2-leaf stage, or a non-toxic solvent extract
of said sprouts.

49.    The method according to claim 48, wherein said sprouts
are harvested 1 to 14 days post-germination and have at least
200,000 units per gram fresh weight of Phase 2 enzyme-inducing
potential when measured after 3-days of growth from seeds that
produce said sprouts and non-toxic levels of indole

Divisional of Serial No. 08/528,858
filed Sept. 15, 1995

glucosinolates and their breakdown products and goitrogenic
hydroxybutenyl glucosinolates.

50. The method according to claim 48, wherein said sprouts
are a *Brassica oleracea* selected from the group of varieties
consisting of *acephala, alboglabra, botrytis, costata, gemmifera,
gongylodes, italica, medullosa, palmifolia, ramosa, sabauda,
sabellica,* and *selensia.*

51. The method according to claim 50, wherein said sprouts
are a *Brassica oleracea* variety *italica.*

52. The method according to claim 50, wherein said sprouts
are a *Brassica oleracea* variety *botrytis.*

53. The method according to claim 52, wherein said sprouts
are a *Brassica oleracea* variety *botrytis* subvariety *cauliflora.*

54. The method according to claim 48, wherein said sprouts
are substantially free of Phase 1 enzyme-inducing potential.

55. The method according to claim 48, wherein said non-
toxic solvent extract is water.

56. The method according to claim 48, wherein said non-
toxic solvent extract further comprises a cruciferous vegetable
comprising an active myrosinase enzyme.

57. The method according to claim 56, wherein said
cruciferous vegetable comprising an active myrosinase enzyme is
of the genus *Raphanus.*

58. A method of increasing the chemoprotective amount of
Phase 2 enzymes in a mammal, comprising the step of administering

- 2 -

0d99781 3.1l22497

Divisional of Serial No. 08/528,858
filed Sept. 15, 1995

to a mammal an effective quantity of a food product comprising cruciferous sprouts, with the exception of *Brassica oleracea capitata*, *Lepidium sativum*, *Sinapis alba*, *Sinapis nigra*, and *Raphanus sativus* sprouts, harvested between the onset of germination up to and including the 2-leaf stage, or a non-toxic solvent extract of said food product.

59. The method according to claim 58, wherein said sprouts have at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth from seeds that produce said sprouts and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates and are harvested 1 to 14 days post-germination.

60. The method according to claim 58, wherein said sprouts are a *Brassica oleracea* selected from the group of varieties consisting of *acephala*, *alboglabra*, *botrytis*, *costata*, *gemmifera*, *gongylodes*, *italica*, *medullosa*, *palmifolia*, *ramosa*, *sabauda*, *sabellica*, and *selensia*.

61. The method according to claim 60, wherein said sprouts are a *Brassica oleracea* variety *italica*.

62. The method according to claim 60, wherein said sprouts are a *Brassica oleracea* variety *botrytis*.

63. The method according to claim 62, wherein said sprouts are a *Brassica oleracea* variety *botrytis* subvariety *cauliflora*.

64. The method according to claim 58, wherein said sprouts are substantially free of Phase 1 enzyme-inducing potential.

65. The method according to claim 58, wherein said non-toxic solvent extract is water.

- 3 -

CSC017627

Divisional of Serial No. 08/528,858
filed Sept. 15, 1995

66.  The method according to claim 58, wherein said non-toxic solvent extract further comprises a cruciferous vegetable comprising an active myrosinase enzyme.

67.  The method according to claim 66, wherein said cruciferous vegetable comprising an active myrosinase enzyme is of the genus *Raphanus*.

68.  A method of reducing the level of carcinogens in a mammal, comprising administering to a mammal an effective amount of cruciferous sprouts, with the exception of *Brassica oleracea capitata*, *Lepidium sativum*, *Sinapis alba*, *Sinapis nigra*, and *Raphanus sativus* sprouts, harvested  between the onset of germination up to and including the 2-leaf stage, or a non-toxic solvent extract of said sprouts.

69.  The method according to claim 68, wherein said sprouts are harvested 1 to 14 days post-germination and have at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth from seeds that produce  said  sprouts  and  non-toxic  levels  of  indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates.

70.  A method of reducing the level of carcinogens in a mammal, comprising administering to a mammal an effective amount of a food product comprising cruciferous sprouts, with the exception of *Brassica oleracea capitata*, *Lepidium sativum*, *Sinapis alba*, *Sinapis nigra* and *Raphanus sativus* sprouts, harvested  between the onset of germination up to and including the 2-leaf stage, or a non-toxic solvent extract of said food product.

- 4 -

Divisional of Serial No. 08/528,858
filed Sept. 15, 1995

71.  The method according to claim 70, wherein said sprouts have at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth from seeds that produce said sprouts and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates and are harvested 1 to 14 days post-germination.--

## REMARKS

Claims 48-71 are pending in the application.  Claims 1-47 have been canceled.  New claims 48-71 have been added.  Support for new claims can be found in the original claims and the specification as filed.  Specifically, see Page 8, line 33 and Page 14, line 7.

Respectfully submitted,

December 24, 1997
Date

Richard C. Peet
Registration No. 35,792

FOLEY & LARDNER
Suite 500
3000 K Street, N.W.
Washington, DC  20007-5109
(202) 672-5300

- 5 -

CSC017629

Law Offices
FOLEY & LARDNER
Suite 500
3000 K Street, N.W.
Washington, DC  20007-5109
(202) 672-5300



Assistant Commissioner for Patents
Box Patent Applications
Washington D.C.    20231

Attorney Docket No.046528/0116/JOHO
(must include alphanumeric codes if no inventors named)

## UTILITY PATENT APPLICATION TRANSMITTAL
(new nonprovisional applications under 37 CFR 1.53(b))

Transmitted herewith for filing is the patent application of:

**INVENTOR(S): Jed W. FAHEY, Paul TALALAY**

**TITLE:CANCER CHEMOPROTECTIVE FOOD PRODUCTS**

In connection with this application, the following are enclosed:

### APPLICATION ELEMENTS:

 XX   Specification -  51  TOTAL PAGES

   (preferred arrangement:)

      -Descriptive Title of the Invention
      -Cross Reference to Related Applications
      -Statement Regard Fed sponsored R&D
      -Reference to Microfiche Appendix
      -Background of the Invention
      -Brief Summary of the Invention
      -Brief Description of the Drawings (if filed)
      -Detailed Description
      -Claim(s)
      -Abstract of the Disclosure

 XX  Drawings - Total Sheets  2

 XX  Declaration and Power of Attorney - Total Sheets  2

     _ Newly executed (original or copy)

     XX Copy from a prior application (37 CFR 1.63(d))

        (relates to continuation/divisional boxes completed) - NOTE: Box below

     _ DELETION OF INVENTOR(S) - Signed statement attached deleting inventor(s)
       named in the prior application, see 37 CFR 1.63(d)(2) and 1.33(b).

 XX  Incorporation By Reference (useable if copy of prior application
      Declaration being submitted)

     The entire disclosure of the prior application, from which a COPY of the oath
     or declaration is supplied as noted above, is considered as being part of the
     disclosure of the accompanying application and is hereby incorporated by
     reference therein.

 _  Microfiche Computer Program (Appendix)

 _  Nucleotide and/or Amino Acid Sequence Submission (if applicable, all
    necessary)
     _ Computer Readable Copy
     _ Paper Copy (identical to computer copy)
     _ Statement verifying identify of above copies

### ACCOMPANYING APPLICATION PARTS
 XX  Copy of Assignment Papers (cover sheet & document(s))
 ___  37 CFR 3.73(b) Statement (when there is an assignee)
 ___  English Translation Document (if applicable)
 XX  Information Disclosure Statement (IDS) with PTO-1449.
 XX  Preliminary Amendment
 XX  Return Receipt Postcard (MPEP 503)
 ___  Small Entity Statement(s)

CSC017630

Utility Patent Appli    ion Transmittal
Attorney Docket No. .  .528/0116/JOHO - Foley & L   iner
Page 2

__XX__ Statement file in prior application, status still proper and desired.
__ Certified Copy of Priority Document(s) with Claim of Priority
      (if foreign priority is claimed).
__ OTHER.

If a **CONTINUING APPLICATION**, check appropriate box and supply the requisite information:
__ Continuation   _X_ Divisional   __ Continuation-in-part (CIP)
   of prior application Serial No.  08/528,858 .

__XX__ Amend the specification by inserting before the first line the
following sentence: --This application is a __ continuation, _X_
divisional or __ continuation-in-part of application Serial No.
08/528,858 , filed _September 15, 1995_ .--

**CORRESPONDENCE ADDRESS:**                    now U.S. Pat. 5,725,895
   Foley & Lardner Address noted above.
   Telephone: 202-672-5300
   Fax Number: 202-672-5399

**FEE CALCULATIONS:** (Small entity fees indicated in parentheses.)

| (1)<br>For | (2)<br>Number Filed | (3)<br>Number Extra | (4)<br>Rate | (5)<br>Basic Fee<br>$790 ($395) |
|---|---|---|---|---|
| Total Claims | 24 - 20 = | 4 | x $22<br>(x $11) | 44.00 |
| Independent Claims | 4 - 3 = | 1 | x $82<br>(x $41) | 41.00 |
| Multiple Dependent Claims | | | $270<br>($135) | 0 |
| Assignment Recording Fee per property | | | $40 | 0 |
| Surcharge Under 37 C.F.R. 1.16(e) | | | $130<br>($65) | 0 |
| | | | TOTAL FEE: | $480.00 |

**METHOD OF PAYMENT:**
A check in the amount of the above TOTAL FEE is attached.  If payment by
check is NOT enclosed, it is requested that the Patent and Trademark Office
advise the undersigned of the period of time within which to file the TOTAL
FEE.  If payment enclosed, this amount is believed to be correct; however,
the Commissioner is hereby authorized to charge any deficiency or credit
any overpayment to Deposit Account No. 19-0741.

                              Respectfully submitted,

Date: December 24, 1997
Docket No.: 046528/0116/JOHO         Bernhard D. Saxe
                                     Reg. No. 28,665

49

CSC017631

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
046528/0116/JOHO

In re patent application of
Jed FAHEY et al.

Serial No. UNKNOWN              Group Art Unit: UNKNOWN

Filed: December 24, 1997        Examiner: UNKNOWN

For:    CANCER CHEMOPROTECTIVE
        FOOD PRODUCTS

(Divisional of 08/528,858, filed September 15, 1995)

INFORMATION DISCLOSURE STATEMENT
UNDER 37 C.F.R. § 1.56

Honorable Assistant Secretary and
  Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

        Submitted herewith on Form PTO-1449 is a listing
of documents known to Applicants in order to comply with
applicants' duty of disclosure pursuant to 37 C.F.R. §
1.56.

        The submission of any document herewith, which is
not a statutory bar, is not intended as an admission that
such document constitutes prior art against the claims of
the present application or is considered to be material to
patentability as defined in 37 C.F.R. §·1.56(b).
Applicants not waive any rights to take any action which
would be appropriate to antedate or otherwise remove as a
competent reference any document which is determined to be
a prima facie prior art reference against the claims of
the present application.

- 1 -

CSC017632

Divisional of 08/528,858
filed September 15, 1995

CONCISE EXPLANATION OF
RELEVANCE OF EACH DOCUMENT

Applicants are submitting herewith on Form PTO-
1449, a listing of the documents cited by or submitted to
the Patent Office in parent application Serial No.
08/528,858, filed September 15, 1995. The relevance of
these prior art documents is explained in the parent
application.

Since this Information Disclosure Statement is
being filed in compliance with 37 C.F.R. §1.97(b) within
three (3) months of the filing date, no fee is required in
connection with its filing.

Applicants respectfully request that the listed
documents be considered by the Examiner and be made of
record in the present application and that an initialed
copy of Form PTO-1449 be returned in accordance with
M.P.E.P. § 609.

Respectfully submitted,

December 24, 1997

Richard C. Peet
Registration No. 35,792

FOLEY & LARDNER
3000 K Street, N.W.
Suite 500
Washington, D.C. 2007-5109
(202) 672-5300

- 2 -

CSC017633



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, DC 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/997,813 | 12/24/97 | FAHEY | J | 046528/0116/ |

```
                          HM42/0924
  FOLEY & LARDNER
  3000 K STREET NW
  SUITE 500
  WASHINGTON DC 20007-5109
```

| EXAMINER |
|---|
| JORDAN, K |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1614 | |

DATE MAILED:    09/24/98

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

1-File Copy

☆U.S. GOVERNMENT PRINTING OFFICE 1995-319-826

CSC017634

| **Office Action Summary** | Application No.<br>08/997,813 | Applicant(s)<br>Fahey et al. | |
|---|---|---|---|
| | Examiner<br>Kimberly Jordan | Group Art Unit<br>1814 | |

☐ Responsive to communication(s) filed on _____ .

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___*three*___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *48-71* _____ is/are pending in the application.

    Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *48-55, 58-65, and 68-71* _____ is/are rejected.

☒ Claim(s) *56, 57, 66, and 67* _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ Approved ☐ Disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

        ☐ received.

        ☐ received in Application No. (Series Code/Serial Number) _____

        ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____ .

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). ___*4*___

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

KIMBERLY JORDAN<br>PRIMARY EXAMINER<br>GROUP 1800<br>1610

*--- SEE OFFICE ACTION ON THE FOLLOWING PAGES ---*

U. S. Patent and Trademark Office<br>PTO-326 (Rev. 9-95)          Office Action Summary          Part of Paper No. __5__

CSC017635

Application/Control Number: 08/997,813                                    Page 2

Art Unit: 1614

Claims 48-71 are presented for examination.

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
such that the subject matter as a whole would have been obvious at the time the invention was made to a person
having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
manner in which the invention was made.

This application currently names joint inventors.  In considering patentability of the claims

under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was

commonly owned at the time any inventions covered therein were made absent any evidence to

the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor

and invention dates of each claim that was not commonly owned at the time a later invention was

made in order for the examiner to consider the applicability of 35 U.S.C. 103© and potential 35

U.S.C. 102(f) or (g) prior art under 35 U.S.C. 103(a).

Claims 48-55, 58-65, and 68-71 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Cho et al. (A1).  The claims appear to be drawn to a methods of increasing the

chemoprotective amount of Phase 2 enzymes or reducing the level of carcinogens by

administering cruciferous sprouts harvested by the 2-leaf stage.  Cho et al. teaches compounds

derived from *Brassica oleracea italica* to be potent selective inducers of Phase 2 enzymes which

are useful chemoprotectants and detoxify carcinogens (see abstract; column 1, lines 10-16;

column 3, line 24 - column 5, line 46).  The claims differ from the cited reference in claiming

administering sprouts harvested at a specific stage of growth.  To administer the sprouts at the

CSC017636

Application/Control Number: 08/997,813                                    Page 3

Art Unit: 1614

stage of growth recited in the claims would have been obvious because the chemoprotective

compounds contained in the sprouts are some of the same compounds disclosed by the reference

to be extracted from *Brassica oleracea italica* and known to be chemoprotectants. Thus, the

claims fail to patentably distinguish over the state of the art as represented by the cited reference.

   Claims 56-57 and 66-67 are objected to as being dependent upon a rejected base claim,

but would be allowable if rewritten in independent form including all of the limitations of the base

claim and any intervening claims.

   The remaining references listed on the enclosed PTO-1449 are cited to show the state of

the art.

   No claims are allowed.

   Any inquiry concerning this communication should be directed to Kimberly Jordan at

telephone number (703) 308-4611.

                                                        KIMBERLY JORDAN
                                                        PRIMARY EXAMINER
                                                        GROUP 1200
                                                             1610

JORDAN

September 21, 1998

Sheet __1__ of __2__

FORM PTO 1449 (modified)

**U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE**

LIST OF REFERENCES CITED BY APPLICANT(S)
*(Use several sheets if necessary)*

Date Submitted to PTO: December 24, 1997

| ATTY DOCKET NO. 04852S/0118/JOHO | SERIAL NO. DIV OF 08/528,858 |
| APPLICANT FAHEY *et al.* | |
| FILING DATE December 24, 1997 | GROUP 1614 |

### U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| /hm/ | A1 | 5,411,986 | 5/95 | CHO *et al.* | 514 | 514 | |

### OTHER DOCUMENT(S) *(including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| | A2 | The Good New Sprouts Recipe Book, International Sprout Growers Association, pp. 1-8, August 1992. |
| | A3 | Posner *et al.*, "Design and Synthesis of Bifunctional Isothiocyanate Analogs of Sulforaphane |
| | | ... Detoxication Enzymes", *J. Med. Chem.* 37(1): 170-175 (1994) |
| | A4 | Zhang *et al.*, "A Major Inducer of Anticarcinogenic Protective Enzymes... Structure", |
| | | *Proc. Natl Acad. Sci. USA* 89: 2399-2403 (1992) |
| | A5 | Prochaska *et al.*, "Rapid Detective of Inducers of Enzymes That Protect Against Carcinogens", |
| | | *Proc. Natl Sci. USA* 89: 2394-2398 (1992) |
| | A6 | Zhang *et al.*, "Anticarcinogenic Activities of Sulforaphane and Structurally Related Synthetic |
| | | Norbornyl Isothiocyanates", *Proc. Natl Sci. USA* 91: 3147-3150 (1994) |
| | A7 | Prochaska *et al.*, "Regulatory Mechanisms of Monofunctional...In Murine Liver", |
| | | *Cancer Research* 48: 4776-4782 (1988) |
| | A8 | Prochaska *et al.*, "Direct Measurement of NAD(P)H: Quinone Reductase from Cells Cultured...Inducers", |
| | | *Analytical Biochemistry* 169: 328-336 (1988) |
| | A9 | Beecher, "Cancer Prevention Properties of Varieties of Brassica Oleracea: A Review...", |
| | | *Am. J. Clin. Nutr.* 59(Suppl): 1166s-1170s (1994) |
| | A10 | Prestera *et al.*, "Chemical and Molecular Regulation of Enzymes that Detoxify Carcinogens", |
| | | *Proc. Natl Acad. Sci. USA* 90: 2965-2969 (1993) |
| | A11 | Zhang *et al.*, "Anticarcinogenic Activities of Organic Isothiocyanates: Chemistry and Mechanisms", |
| | | *Cancer Research suppl* 54: 1976s-1981s (1994) |
| | A12 | Talalay, "The Role of Enzyme Induction in Protection Against Carcinogenesis", |
| | | *Cancer Chemoprevention*, pp 469-478 (1992) |
| | A13 | Prestera *et al.*, "The Electrophile Counterattack Response: Protection Against Neoplasia and |
| | | Toxicity", *Advan. Enzyme Regul.* 33: 281-296 (1993) |

| EXAMINER | | DATE CONSIDERED 9/21/98 |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

IPT-212(a):4/90

CSC017638

Sheet _2_ of _2_

| | | | | | | | |
|---|---|---|---|---|---|---|---|

FORM PTO 1449 (modified)

**U.S. DEPARTMENT OF COMMERCE**
**PATENT AND TRADEMARK OFFICE**

**LIST OF REFERENCES CITED BY APPLICANT(S)**
*(Use several sheets if necessary)*

Date Submitted to PTO: December 24, 1997

ATTY DOCKET NO.
046528/0116/JOHO

SERIAL NO.
DIV OF 08/528,858

APPLICANT
FAHEY et al.

FILING DATE
December 24, 1997

GROUP  1614

**U.S. PATENT DOCUMENTS**

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

OTHER DOCUMENT(S) (including Author, Title, Date, Pertinent Pages, Etc.)

| | | | |
|---|---|---|---|
| | A14 | | Masilungan et al., "Screening of Philippine Medicinal Plants for Anticancer Agents Using CCNSC |
| | | | Protocols", *Cancer Chemotherapy Reports (Part 2)* 2(1); 135-140 (April 1971) |
| | A15 | | Poissa et al., "Cancer Preventive Properties of Varieties of Brassica Oleracea: A Review Source". |
| | | | *Am. J. of Clinical Nutrition* 59(5): (1994) |
| | A16 | | Patent Abstract of Japan Sect. No. 305, Vol. 9, No. 2371, p.2 (Sept. 1985) |
| | A17 | | Barrett et al., "Protective Effect f Cruciferous Seed Meals Against Mouse Colon Cancer", |
| | | | *Cereal Food World* 39(8): 613 (August 1994) |

9/21/98

PT-212(s):460

FORM PTO 948 (REV. 11-97)   U.S. DEPARTMENT OF COMMERCE-Patent and Trademark Office   Application No. _997813_

## NOTICE OF DRAFTPERSON'S
## PATENT DRAWING REVIEW

The drawing filled (insert date) _12/24/97_ are:

A. _____ not objected to by the Draftperson under 37 CFR 1.84 or 1.152.

B. _____ objected to by the Draftperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black Ink. Color.
   _____ Color drawing are not acceptable until petition is granted.
   _____ Fig(s)
   _____ Pencil and non black ink is not permitted. Fig(s)

2. PHOTOGRAPHS. 37 CFR 1.84(b)
   _____ Photographs are not acceptable until petition is granted.
   _____ 3 full-tone sets are required. Fig(s)
   _____ Photographs not properly mounted (must bristol board or photographic double-weight paper). Fig(s)
   _____ Poor quality (half-tone). Fig(s)

3. TYPE OF PAPER. 37 CFR 1.84(e)
   _____ Paper not flexible, strong, white and durable.
   _____ Fig(s)
   _____ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not acceptable. (too thin) Fig(s)
   _____ Mylar, vellum paper is not acceptable (too thin). Fig(s)

4. SIZE OF PAPER. 37 CFR 1.84(F): Acceptable sizes:
   _____ 21.0 cm by 29.7 cm (DIN size A4)
   _____ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
   _____ All drawings sheets not the same size.
   _____ Sheet(s)

5. MARGINS. 37 CFR 18.4(g): Acceptable margins:
   _____ Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: A4 Size
   _____ Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: 8 1/2 x 11
   _____ Margins not acceptable. Fig(s)
   _____ Top (T) _____ Left (L)
   _____ Right (R) _____ Bottom (B)

6. VIEWS. CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   _____ Views connected by projection lines or lead lines.
   _____ Fig(s)
   Partial views. 37 CFR 1.84(h)(2)
   _____ Brackets needed to show figure as one entity.
   _____ Fig(s)
   _____ Views not labeled separately or properly.
   _____ Fig(s)
   _____ Enlarged view not labeled separately or properly.
   _____ Fig(s)

7. SECTIONAL VIEWS. 37 CFR 1.84(h)(3)
   _____ Hatching not indicated for sectional portions of an object.
   _____ Fig(s)
   _____ Sectional designation should be noted with Arabic or Roman numbers. Fig(s)

8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   _____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned, so that the top becomes the right side, except for graphs. Fig(s)
   _____ Views not on the same plane on drawing sheet. Fig(s)

9. SCALE. 37 CFR 1.84(k)
   _____ Scale not large enough to show mechanism without crowding when drawing is reduced in size to two-thirds in reproduction.
   _____ Fig(s)

10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l).
   _____ Lines, numbers & letters not uniformly thick and well defined, clean, durable and black (poor line line quality).
   _____ Fig(s)

11. SHADING. 37 CFR 1.84(m).
   _____ Solid black areas pale. Fig(s)
   _____ Solid black shading not permitted. Fig(s)
   _____ Shade lines, pale, rough and blurred. Fig(s)

12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.
   37 CFR 1.48(p)
   _____ Numbers and reference characters not plain and legible.
   _____ Fig(s)
   _____ Figure legends are poor. Fig(s)
   _____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(3) Fig.(s)
   _____ English alphabet not used. 37 CFR 1.84(p)(3) Fig.(s)
   _____ Numbers, letters and reference characters must be at least .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3) Fig.(s)

13. LEAD LINES. 37 CFR 1.84(q)
   _____ Lead lines cross each other. Fig.(s)
   _____ Lead lines missing. Fig.(s)

14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
   _____ Sheets not numbered consecutively, and in Arabic numerals beginning with number 1. Fig.(s)

15. NUMBERING OF VIEWS. 37 CFR 1.84(u)
   _____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig.(s)

16. CORRECTIONS. 37 CFR 1.84(w)
   _____ Corrections not made from PTO-948 dated

17. DESIGN DRAWINGS. 37 CFR 1.152
   _____ Surface shading shown not appropriate. Fig.(s)
   _____ Solid black shading not used for color contrast.
   _____ Fig.(s)

COMMENTS

REVIEWER _N.J_   DATE _3/7/98_   TELEPHONE NO. _7033058404_

ATTACHMENT TO PAPER NO. _4_

PTO COPY

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of          :    Group Art Unit:    1634

Jed FAHEY et al.              :    Examiner:    K. Jordan

Serial No.:  08/997,813       :    Atty. Dkt. No. 46585/116

Filed:    December 24, 1997:

CANCER CHEMOPROTECTIVE FOOD PRODUCTS

**INFORMATION DISCLOSURE STATEMENT**
**UNDER 37 C.F.R. §§1.56, 1.97(c) and 1.17(p)**

Assistant Commissioner for Patents
Washington, DC 20231

Sir:

Included with the attached Form PTO-1449 is a document known to applicants in order to comply with applicants' duty of disclosure pursuant to 37 C.F.R. § 1.56.

The submission of any document herewith, which is not a statutory bar, is not intended as an admission that such document constitutes prior art against the claims of the present application or is considered to be material to patentability as defined in 37 C.F.R. §1.56(b). Applicants do not waive any rights to take any action which would be appropriate to antedate or otherwise remove as a competent reference any document which is determined to be a *prima facie* prior art reference against the claims of the present application.

Applicants respectfully request that this document be considered and made of record in the present application and that an initialled copy of form PTO-1449 be returned in accordance with M.P.E.P. §609.

Applicants submit this document under 37 C.F.R. §1.97(e), before the mailing date of either a final action under §1.113 or of a Notice of Allowance under §1.311. Accordingly, the fee set forth in §1.17(p) of $240 is attached, and it is believed that no additional fees are required. However, the Commissioner is hereby authorized to charge any deficiency or to credit any overpayment to Deposit Account No. 19-0741.

Respectfully submitted,

January 11, 1999
Date

Richard C. Peet
Reg. No. 35,792

FOLEY & LARDNER
3000 K Street, NW, Suite 500
Washington, DC 20007-5109
(202) 672-5300

- 1 -                              46528/116

CSC017641

16144

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Attorney Docket No. 046528/0116/JOHO

In re patent application of
Jed FAHEY et al.                    Group Art Unit:  1614
Serial No. 08/997,813               Examiner:  K. Jordan
Filed:  December 24, 1998
For:  CANCER CHEMOPROTECTIVE FOOD PRODUCTS

PETITION FOR EXTENSION OF TIME
UNDER 37 C.F.R. § 1.136

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

        It is respectfully requested that an extension of time for
the period indicated below be granted in accordance with the
provisions of 37 C.F.R. § 1.136 to take the action required in
the application identified in caption, as reflected by the papers
submitted herewith.

|    |    |    |    |
|----|----|----|----|
| XX | First Month  | $110 | ($ 55)* |
| ___ | Second Month | $270 | ($135)* |
| ___ | Third Month  | $490 | ($245)* |
| ___ | Fourth Month | $490 | ($245)* |
| ___ | Fifth Month  | $490 | ($245)* |

* (Small Entity)    TOTAL FEE:    $110.00

A check in the amount of the above Total Fee is attached.  This
amount is believed to be correct; however, the Commissioner is
hereby authorized to charge any deficiency or credit any
overpayment to Deposit Account No. 19-0741.  If one or more
(additional) extension(s) of time is/are required for the filing
of this paper, such extension(s) is/are hereby expressly
petitioned for and the Commissioner is authorized to charge the
required fee to Deposit Account No. 19-0741.

02/01/1999 MMARMOL 00000101 08997813
01 FC:115              110.00 OP

                                    Respectfully submitted,

January 25, 1999
Date                                Richard C. Peet
                                    Reg. No. 35,792

FOLEY & LARDNER
Suite 500
3000 K Street, N.W.
Washington, DC  20007-5109
(202) 672-5300

CSC017642

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Attorney Docket No. 046528/0116/JOHO

In re patent application of
Jed FAHEY et al.                      Group Art Unit:  1614
Serial No. 08/997,813      JAN 25 1999   Examiner:  K. Jordan
Filed:  December 24, 1997
For:  CANCER CHEMOPROTECTIVE FOOD PRODUCTS

AMENDMENT AND REQUEST FOR RECONSIDERATION
UNDER 37 C.F.R. § 1.111

Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

In response to the Office Action mailed September 24, 1998,
please amend the above-identified application as follows:

IN THE CLAIMS:

Please cancel claims 58-67 and 70-71 without prejudice or
disclaimer.

Please amend the claims as follows:

46.  A method of increasing the chemoprotective amount of
Phase 2 enzymes in a mammal, comprising the [step of
administering to a mammal an effective quantity of cruciferous
sprouts, with the exception of Brassica oleracea capitata,
Lepidium sativum, Sinapis alba, Sinapis nigra, and Raphanus
sativus sprouts, harvested between the onset of germination up
to and including the 2-leaf stage, or a non-toxic solvent extract
of said sprouts] steps of:

(a) identifying seeds which produce cruciferous sprouts,
with the exception of Brassica oleracea capitata, Lepidium
sativum, Sinapis alba, Sinapis nigra, and Raphanus sativus
sprouts, containing high Phase 2 enzyme-inducing potential and
non-toxic levels of indole glucosinolates and their breakdown
products and goitrogenic hydroxybutenyl glucosinolates;

Serial No. 08/997,813

(b)  germinating said seeds;

(c)  harvesting said sprouts between the onset of germination up to and including the 2-leaf stage to form a food product comprising a plurality of sprouts; and

(d)  administering said food product, or a non-toxic extract of said food product, to said mammal.

100.  A method of reducing the level of carcinogens in a mammal, comprising [administering to a mammal an effective amount of cruciferous sprouts, with the exception of *Brassica oleracea capitata*, *Lepidium sativum*, *Sinapis alba*, *Sinapis nigra*, and *Raphanus sativus* sprouts, harvested between the onset of germination up to and including the 2-leaf stage, or a non-toxic solvent extract of said sprouts] the steps of:

(a)  identifying seeds which produce cruciferous sprouts, with the exception of *Brassica oleracea capitata*, *Lepidium sativum*, *Sinapis alba*, *Sinapis nigra*, and *Raphanus sativus* sprouts, containing high Phase 2 enzyme-inducing potential and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates;

(b)  germinating said seeds;

(c)  harvesting said sprouts between the onset of germination up to and including the 2-leaf stage to form a food product comprising a plurality of sprouts; and

(d)  administering said food product, or a non-toxic extract of said food product, to said mammal.

Please add the following new claims.

122.  The method according to claim 49, wherein said seeds produce cruciferous sprouts containing at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential measured after 3-days of growth.

123.  The method according to claim 49, wherein said seeds produce cruciferous sprouts containing at least 300,000 units per

- 2 -

Serial No. 08/997,813

gram fresh weight of Phase 2 enzyme-inducing potential measured after 3-days of growth.

56. The method according to claim 49, wherein said seeds produce cruciferous sprouts containing at least 400,000 units per gram fresh weight of Phase 2 enzyme-inducing potential measured after 3-days of growth.

57. The method according to claim 49, wherein said seeds produce cruciferous sprouts containing at least 500,000 units per gram fresh weight of Phase 2 enzyme-inducing potential measured after 3-days of growth.

58. The method according to claim 49, wherein said seeds produce cruciferous sprouts containing at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential measured after 3-days of growth.

59. The method according to claim 58, wherein said seeds produce cruciferous sprouts containing at least 300,000 units per gram fresh weight of Phase 2 enzyme-inducing potential measured after 3-days of growth.

60. The method according to claim 58, wherein said seeds produce cruciferous sprouts containing at least 400,000 units per gram fresh weight of Phase 2 enzyme-inducing potential measured after 3-days of growth.

61. The method according to claim 58, wherein said seeds produce cruciferous sprouts containing at least 500,000 units per gram fresh weight of Phase 2 enzyme-inducing potential measured after 3-days of growth.

- 3 -

52

CSC017645

Serial No. 08/997,813

## REMARKS

Claims 58-67 and 70-71 are canceled without prejudice or disclaimer.  Claims 48 and 68 are amended and claims 72-78 are added.  Support for the amendments to claims 48 and 68 and new claims 72-79 is found in the originally presented claims and throughout the specification, for example, pages 14-15, 18 and 20.  Claims 48-57, 68-69 and 72-78 are pending and presented for examination.

Claims 48-55, 58-65 and 68-71 are rejected under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent No. 5,411,986 ("the '986 patent").  The '986 patent identifies broccoli (*Brassica oleracea var. italica*) as a source of the Phase 2 enzyme inducer sulforaphane.  Dr. Paul Talalay avers in the accompanying declaration, attached hereto as APPENDIX A, that he is one of the named inventors of the '986 patent and that this patent teaches that broccoli is a source of sulforaphane (See examples 2 and 3).  The '986 patent fails to teach or suggest that broccoli sprouts, or other cruciferous sprouts, contain high concentrations of Phase 2 inducer activity.  Accordingly, the examiner has failed to set forth a *prima facie* case of obviousness.

Even assuming the examiner had set forth a *prima facie* case of obviousness, clear evidence of unexpected results contained in the specification has been overlooked. Proof of an unexpected improvement can rebut a *prima facie* case of obviousness.  *In re Costello*, 480 F.2d 894, 178 USPQ 290 (CCPA 1973).  Specifically, the methods of the instant invention provide food products that have unexpected health benefits compared to food products available in the prior art.

More specifically, the claimed methods of the instant application provide food products comprised of certain cruciferous sprouts, and sprout extracts, with greatly increased

- 4 -

CSC017646

Serial No. 08/997,813

levels of Phase 2 inducer activity compared to mature market stage vegetables. As a consequence, a significant health benefit can be realized through ingestion of small quantities of cruciferous sprouts, or sprout extracts, prepared according to the claimed methods. The same health benefits can only be realized, if at all, through the ingestion of impractically large quantities of market stage vegetables that contain significantly lower concentrations of anticarcinogenic Phase 2 inducer activity compared to the sprouts of the instant invention.

Phase 2 enzymes conjugate functionalized products with endogenous ligands (e.g., glutathione, glucuronic acid, sulfate) and thereby serve primarily a detoxifying role in xenobiotic metabolism. There is very good evidence indicating that when Phase 2 enzymes are induced, animals and cells are protected against the toxic and neoplastic effects of carcinogens. In fact, anticarcinogens have been identified based on their ability to induce Phase 2 enzymes. See, for example, Talalay, Paul, Chemical Protection Against Cancer by Induction of Electrophile Detoxification (Phase II) Enzymes, In: CELLULAR AND MOLECULAR TARGETS OF CHEMOPREVENTION, V.E. Steele et al., (eds.), CRC Press, Boca Raton, Florida (1992).

The ability of Phase 2 enzyme inducers, such as isothiocyanates, to block carcinogenesis has been known for many years. See, for example, Zhang et al., Cancer Research 54 (Suppl): 1976-1981S (1994). In addition, numerous epidemiological studies suggest that high consumption of yellow and green vegetables, especially those of the family Cruciferae and the genus Brassica such as cauliflower, cabbage or broccoli reduces the risk of developing cancer of various organs. See, for example, Graham et al., J. Natl. Cancer Inst. 61: 709-714 (1978). However, the quantity of mature market stage vegetables that must be consumed in order to provide even a 50% reduction

- 5 -

Serial No. 08/997,813

in cancer risk ratio is so very large as to be difficult for many individuals and further risk reduction is impractical.

Dr. Talalay notes in the accompanying Rule 132 Declaration, attached hereto as Appendix A that consumption of 425 g/wk of mature market stage *Brassica* vegetables, such as broccoli, would result in an odds ratio of approximately 0.5 (50% risk reduction) for colon cancer. It is frequently impractical and many individuals cannot tolerate consumption of such a large quantity of market stage broccoli each week. The large quantity of fiber and other phytochemicals associated with the consumption of such large quantities of this vegetable is likely to cause bowel irritation and/or flatulence in a significant portion of the population. In addition, many individuals dislike the taste of cruciferous vegetables and will not consume such large quantities for this reason.

Cruciferous sprouts prepared according to the instant invention provide 20 to 50-fold higher levels of Phase 2 enzyme inducer activity than mature, market stage cruciferous vegetables (see Appendix A1). Accordingly, much smaller quantities of the sprouts can be consumed to realize the same health benefit obtained through consumption of larger quantities of mature market stage vegetables. Dr. Talalay in the accompanying Rule 132 Declaration calculates that 3 grams of 3-day old sprouts, or 150 milligrams of lyophilized hot water extract of sprouts, contain the same quantity of Phase 2 inducer activity as 150 grams of mature market stage broccoli. The quantity of mature market stage broccoli, sprouts and sprout extracts that must be consumed to realize the same health benefit (2-1/4 million units of anticarcinogen Phase 2 enzyme inducer activity) is shown in Appendix A2 attached to Dr. Talalay's Rule 132 Declaration.

Another unrecognized and unexpected benefit of the claimed methods is to provide food products comprised of certain

- 6 -

CSC017648

Serial No. 08/997,813

cruciferous sprouts and sprout extracts that do not contain significant levels of Phase 1 inducer activity, derived from indole glucosinolates. Phase 1 enzymes (cytochromes P-450) functionalize compounds, usually by oxidation or reduction. Although one role of Phase 1 enzymes is to detoxify xenobiotics, **several cytochromes P-450 activate various types of procarcinogens to highly reactive ultimate carcinogens.**

Attached to Dr. Talalay's Rule 132 Declaration as Appendix A3 are graphs showing comparative paired ion chromatographs of broccoli sprouts and mature market stage broccoli. The paired ion chromatographs were prepared according to the method developed in his laboratory by Prestera et al., Anal. Biochem. 239: 168-179 (1996). The principal peaks are glucoraphanin, glucoerucin, glucobrassicin and neoglucobrassicin (Appendix A3) The former two glucosinolates are alkythioglucosinolates with potent Phase 2 enzyme inducer activity and are the predominant glucosinolates found in sprouts. The latter two glucosinolates are indole glucosinolates which predominate in mature market stage broccoli. The indole glucosinolates are (1) very weak Phase 2 enzyme inducers; (2) are bifunctional inducers and therefore induce both Phase 1 and Phase 2 enzymes; (3) degrade to produce products which bind to the Ah receptor and induce certain cytochromes P-450 that activate carcinogens; and (4) may actually enhance carcinogenic activity. Accordingly, the methods of the instant application provide food products that not only contain unexpectedly high levels of anticarcinogenic Phase 2 inducer activity but also contain unexpectedly low levels of carcinogenic Phase 1 enzyme inducer activity.

The prior art does not teach or suggest methods for increasing the chemoprotective amount of Phase 2 enzymes in a mammal or reducing the level of carcinogens in a mammal. Accordingly, the examiner has failed to set forth a prima facie case of obviousness. Although unnecessary to overcome the

- 7 -

CSC017649

Serial No. 08/997,813

examiner's obviousness rejection because of the lack of a *prima facie* case of obviousness, evidence of totally unexpected results is presented.   The claimed methods of the instant application provide food products comprised of certain cruciferous sprouts, and sprout extracts, with greatly increased levels of Phase 2 inducer activity compared to mature market stage vegetables. Additionally, food products prepared according to the claimed invention do not contain significant levels of Phase 1 inducer activity which may actually enhance carcinogenic activity.

It is therefore respectfully urged that the claims are not obvious over the prior art cited by the examiner and the rejection should be withdrawn.

In view of the amendments to the claims and the foregoing remarks, it is believed that all claims are in condition for allowance.   Reconsideration of all rejections and a notice of allowance are respectfully requested.   Should there be any questions concerning this application, Examiner Jordan is urged to contact the undersigned at the telephone number listed below.

Respectfully submitted,

January 25, 1999
Date

Richard C. Peet
Reg. No. 35,792

FOLEY & LARDNER
Suite 500
3000 K Street, N.W.
Washington, DC  20007-5109
(202) 672-5300

- 8 -

CSC017650



CSC017651

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Docket No. 046585/0116

In re patent application of

Jed FAHEY *et al.*

Serial No. 08/997,813

Filed: April 11, 1997

For: CANCER CHEMOPROTECTIVE FOOD PRODUCTS

DECLARATION OF PAUL TALALAY
UNDER 37 C.F.R. §1.132

I, Paul Talalay, being duly warned, hereby declare and say:

1.    I am a citizen of the United States of America, and reside at 5512 Boxhill Lane, Baltimore, MD 21210.

2.    I am John Jacob Abel Distinguished Service Professor, Department of Pharmacology and Molecular Sciences, Johns Hopkins University School of Medicine, Baltimore, Maryland 21205. I am a member of the National Academy of Sciences of the United States, a Member of the American Philosophical Society founded in Philadelphia for the promotion of useful knowledge, and a former Professor of the American Cancer Society.

3.    I am a physician and medical scientist who has been involved for the last 20 years in devising chemical and dietary strategies for reducing the risk of human cancer.

4.    I am a co-inventor named in U.S. application serial No. 08/997,813 ("the application"). In relation to the application, I have reviewed an Official Action, mailed September

Serial No. 08/997,813

24, 1998, and the prior art cited therein, and I make the following observations.

5.    I am a named inventor of U.S. Patent No. 5,411,986 ("the '986 patent"). The Examiner asserts that the claims of the instant application are obvious over the teachings of the '986 patent. However, the '986 patent fails to teach or suggest that broccoli sprouts, or other cruciferous sprouts, are a source of sulforaphane or phase 2 enzyme inducer activity.

6.    Examples 2 and 3 of the '986 patent teach that broccoli is a source of sulforaphane. Market stage, mature broccoli was used in the experiments described in Examples 2 and 3 of the '986 patent. The '986 patent therefore fails to teach or suggest that broccoli sprouts, or other cruciferous sprouts are a source of sulforaphane or Phase 2 inducer activity. In fact, we were extremely surprised to subsequently find that broccoli and other cruciferous sprouts contain high concentrations of Phase 2 enzyme inducer activity.

7.    The claimed methods of the application provide food products that not only contain unexpectedly high levels of anticarcinogenic Phase 2 inducer activity, but also contain unexpectedly low levels of potentially carcinogenic Phase 1 enzyme inducer activity. The prior art reference relied on by the examiner does not teach or suggest these unexpected

- 2 -

CSC017653

Serial No. 08/997,813

attributes of the human food product made by the claimed methods.
The sprouts and their extracts are therefore both qualitatively
and quantitatively radically different in their content of enzyme
inducer activities compared to mature, market stage vegetables.

8.    There is a continuing proliferation of epidemiological
studies that demonstrate an inverse relation between the _quantity_
of vegetables consumed and the risk of cancer.    Furthermore,
several of these studies emphasize the protective effect of
cruciferous vegetables, specifically, and demonstrate a _dose
dependence_ of the magnitude of the effect. Consumption of >425
g/wk of mature, market stage _Brassica_ sp. reduces the cancer odds
ratio to approximately 0.5 (50% risk reduction) for colon cancer
in comparison to the consumption of <125 g/wk. Kune et al., _Nutr.
Cancer_ 9: 21-42 (1987).    The odds ratios for colon cancer in
relation to vegetable consumption was determined. Graham et al.,
_J. Natl. Cancer Inst._ 61: 709—714 (1978). Individuals who ate an
average of 0-20, 21-40, 41-60 and more than 61 servings per month
had odds ratios of 1.00, 0.66, 0.57 and 0.47 respectively. If one
extrapolates the results of Graham, a 75% reduction in cancer
risk would require consumption of perhaps 750 g (ca. 1.5 lbs.)
of vegetables per day. The results of 7 cohort studies and 87
case—control studies have been summarized. See Verhoeven et al.,
_Cancer Epid. Biomarkers & Preventions_ 5: 733— 748 (1996). Cohort
studies showed: inverse associations between the consumption of
cabbage, cauliflower and broccoli and risk of lung cancer;

- 3 -

CSC017654

Serial No. 08/997,813

between consumption of brassica vegetables and risk of stomach cancer; between broccoli consumption and risk of all cancers taken together and between brassica consumption and the occurrence of second primary cancers. They conclude that a high consumption of brassica vegetables is associated with a decreased risk of cancer.

9.    It is impractical for most individuals to consume the large quantities of market stage broccoli or other vegetables to achieve maximum protection, because the quantity of fiber and other phytochemicals that need to be consumed can cause bowel irritation and/or flatulence.

10.    Cruciferous sprouts and sprout extracts prepared according to the claimed methods provide 20 to 50-fold higher levels of Phase 2 enzyme inducer activity than mature market stage cruciferous vegetables. The data from Tables 1 and 3 of the application are summarized in APPENDIX A1 attached hereto. A significant health benefit can be realized through ingestion of small quantities of cruciferous sprouts, or sprout extracts, prepared according to the claimed methods. The same health benefits can only be realized, if at all, through the ingestion of intolerably large quantities of market stage vegetables that contain significantly lower concentrations of anticarcinogenic Phase 2 inducer activity compared to the sprouts prepared according to the application.

- 4 -

CSC017655

Serial No. 08/997,813

11. For purposes of illustration, we determined in one experiment that 3 grams of 3-day old broccoli sprouts, or 150 milligrams of a lyophilized hot water extract made from 3-day old broccoli sprouts, contain the same quantity of Phase 2 enzyme inducer activity as 150 grams of mature market stage broccoli. Phase 2 enzyme inducer activity is measured in the Hepa 1c1c7 murine hepatoma cells grown in 96-well microtiter plates according to the method of Prochaska et al., Anal. Biochem. 169: 328-336 (1988). One unit of Phase 2 enzyme inducer activity is defined as the amount that when added to a single microtiter well, doubles the quinone reductase activity. The quantity of mature market stage broccoli, sprouts and sprout extracts that must be consumed to realize the same health benefit (2-1/4 million units of anticarcinogenic Phase 2 enzyme inducer activity) is shown in APPENDIX A2 attached hereto.

12. The methods of the application also provide food products comprised of certain cruciferous sprouts and sprout extracts that do not contain significant levels of indole glucosinolates which generate Phase 1 inducers. Phase 1 enzymes (cytochromes P-450) functionalize compounds, usually by oxidation or reduction. Although one role of Phase 1 enzymes is to detoxify xenobiotics, several cytochromes P-450 activate procarcinogens to highly reactive ultimate carcinogens.

- 5 -

CSC017656

Serial No. 08/997,813

13.  Attached hereto as APPENDIX A3 are graphs showing comparative paired ion chromatographs of broccoli sprouts and mature market stage broccoli. The paired ion chromatographs were prepared according to the method developed in our laboratory by Prestera et al., Anal. Biochem. 239: 168-179 (1996).  Shaded peaks on the chromatograph represent glucoraphanin, glucoerucin, glucobrassicin and neoglucobrassicin, respectively.  The former two glucosinolates are alkylthioglucosinolates with potent Phase 2 enzyme inducer activity and are the predominant glucosinolates found in sprouts.  The latter two glucosinolates are indole glucosinolates which predominate in mature market stage broccoli.

14.  Recent studies have shown that sulforaphane (the hydrolysis product of glucoraphanin which is the principal inducer precursor in sprouts) has a number of favorable properties with respect to its use as a chemoprotector. Sulforaphane inhibits mammary tumor formation in female Sprague-Dawley rats treated with single doses of dimethylbenzanthracene. Zhang et al., Proc. Natl. Acad. Sci. USA 91: 3147-3150 (1994). Sulforaphane shows exceedingly potent inhibitory activity against DMBA-induced neoplastic mammary lesions in mouse mammary gland explants in culture: 84, 56, and 34% inhibition at 1 μM, 100 nM, and 10 nM concentrations, respectively. Gerhauser et al., Cancer Research 57: 272-278 (1997). Sulforaphane is not itself genotoxic (i.e., does not produce unscheduled DNA synthesis) but inhibits the genotoxicity of N-nitrosodimethylamine (NDMA) in Salmonella

- 6 -

CSC017657

Serial No. 08/997,813

*typhimurium* and NDMA-induced unscheduled DNA synthesis in mouse hepatocytes. Barcelo et al., *Carcinogenesis* 17: 277—282 (1996). Sulforaphane has the unusual property of inhibiting cytochrome P-450 type 2E1 which is involved in the metabolic activation of carcinogenic nitrosamines. Barcelo et al., *Carcinogenesis* 17: 277—282 (1996).

15. The indole glucosinolates do not give rise to isothiocyanates upon myrosinase hydrolysis because the indole isothiocyanates are unstable. One major degradation product is indole-3-carbinol which has attracted a great deal of recent attention. Although this compound exerts anticarcinogenic activity in some experimental tumor systems when administered before the carcinogen, it has obvious tumor-promoting properties if given after the carcinogen. Indole-3-carbinol has a number of other undesirable properties that raise questions with respect to the advisability of its use in chemoprotection. Thus, indole-3-carbinol is: (1) a very weak Phase 2 enzyme inducer; (2) is converted (especially at the acid pH prevailing in the stomach) to dimeric and trimeric condensation products that bind with very high affinity to the Ah receptor and thereby induce certain cytochromes P-450 that activate carcinogens, i.e., it is a bifunctional inducer that elevates both Phase 1 and Phase 2 enzymes; and (3) upon chronic administration indole-3-carbinol enhances carcinogenic activity. Such continuous administration represents a likely scenario in any chemoprotective strategy, and

- 7 -

CSC017658

Serial No. 08/997,813

indole glucosinolates are therefore not very desirable agents for these purposes.

16. The undersigned declares that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true; and further, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent resulting therefrom.

_____          _____
Date                             Paul Talalay

- 8 -

CSC017659

1

CSC017660



CSC017661

2

CSC017662

# BROCCOLI

MARKET STAGE
(150 GRAMS)

3-DAY SPROUTS
(3 GRAMS)



FREEZE DRIED WATER EXTRACT
OF 3-DAY SPROUTS
(150 MG)

ALL PREPARATIONS CONTAIN THE SAME QUANTITY
(2-1/4 MILLION UNITS) OF ANTICARCINOGENIC
ENZYME INDUCER ACTIVITY

FIGURE 1

CSC017663

**3**

CSC017664

# PAIRED ION CHROMATOGRAPHY SHOWING
## GLUCOSINOLATE PROFILES OF BROCCOLI (cv. SAGA)



| 5 DAY SPROUTS | | MATURE PLANTS |
|---|---|---|
| Glucoraphanin | Main Peak | Glucobrassicin |
| 5.5 mg | Amount analyzed (fresh wt. equiv) | 14.6 mg |
| 990 Units | Amount of inducer activity | 9.38 Units |

CSC017665