44

*What Is Claimed Is:*

1.   Cruciferous sprouts, with the exception of cabbage, cress, mustard and radish sprouts, harvested prior to the 2-leaf stage.

2.   The cruciferous sprouts according to claim 1, wherein said sprouts are a *Brassica oleracea* selected from the group of varieties consisting of *acephala, alboglabra, botrytis, costata, gemmifera, gongylodes, italica, medullosa, palmifolia, ramosa, sabauda, sabellica, and selensia.*

3.   The cruciferous sprouts according to claim 2, wherein said sprouts are a *Brassica oleracea* variety *italica.*

4.   The cruciferous sprouts according to claim 1, wherein said sprouts are a *Brassica oleracea* variety *botrytis.*

5.   The cruciferous sprouts according to claim 1, wherein said sprouts are a *Brassica oleracea* variety *botrytis* subvariety *cauliflora.*

6.   The cruciferous sprouts according to claim 1, wherein said sprouts are substantially free of Phase 1 enzyme-inducing potential.

7.   A non-toxic solvent extract of the cruciferous sprouts according to claim 1.

8.   The non-toxic solvent extract according to claim 7, wherein said solvent is water.

9.   The non-toxic solvent extract according to claim 8, further comprising a cruciferous vegetable comprising an active myrosinase enzyme.

Exhibit 1-C

45

10.  The non-toxic solvent extract according to claim 9, wherein said cruciferous vegetable is of the genus *Raphanus*.

11.  A method of increasing the chemoprotective amount of Phase 2 enzymes in a mammal, comprising the step of administering an effective quantity of the cruciferous sprouts according to claim 1.

12.  Cruciferous sprouts harvested prior to the 2-leaf stage, wherein said sprouts have at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth from seeds that produce said sprouts and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates.

13.  The cruciferous sprouts according to claim 12, wherein said sprouts are a *Brassica oleracea* selected from the group of varieties consisting of *acephala, alboglabra, botrytis, costata, gemmifera, gongylodes, italica, medullosa, palmifolia, ramosa, sabauda, sabellica,* and *selensia*.

14.  The cruciferous sprouts according to claim 13, wherein said sprouts are a *Brassica oleracea* variety *italica*.

15.  The cruciferous sprouts according to claim 13, wherein said sprouts are a *Brassica oleracea* variety *botrytis*.

16.  The cruciferous sprouts according to claim 15, wherein said sprouts are a *Brassica oleracea* variety *botrytis* subvariety *cauliflora*.

17.  A non-toxic solvent extract of the cruciferous sprouts according to claim 12.

46

18. The non-toxic solvent extract according to claim 17, wherein said solvent is water.

19. The non-toxic solvent extract according to claim 18, further comprising a cruciferous vegetable comprising an active myrosinase enzyme.

20. The non-toxic solvent extract according to claim 19, wherein said cruciferous vegetable is of the genus *Raphanus*.

21. A method of preparing a food product rich in glucosinolates, comprising germinating cruciferous seeds, with the exception of cabbage, cress, mustard and radish seeds, and harvesting sprouts prior to the 2-leaf stage, to form a food product comprising a plurality of sprouts.

22. The method according to claim 21, wherein said sprouts contain non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates.

23. The method according to claim 21, wherein said seeds are a *Brassica oleracea* selected from the group of varieties consisting of *acephala, alboglabra, botrytis, costata, gemnifera, gongylodes, italica, medullosa, palmifolia, ramosa, sabauda, sabellica*, and *selensia*.

24. The method according to claim 23, wherein said seeds are *Brassica oleracea* variety *italica*.

25. The method according to claim 23, wherein said seeds are *Brassica oleracea* variety *botrytis*.

26. The method according to claim 25, wherein said seeds are *Brassica oleracea* variety *botrytis* subvariety *cauliflora*.

1-C3

47

27. A food product rich in glucosinolates made by the process according to claim 21.

28. A method of preparing a food product, comprising extracting glucosinolates and isothiocyanates from cruciferous sprouts, with the exception of cabbage, cress, mustard and radish sprouts, harvested prior to the 2-leaf stage, according to claim 1 with a non-toxic solvent, removing the extracted sprouts from said solvent, and recovering the extracted glucosinolates and isothiocyanates.

29. A method of preparing a food product according to claim 28, wherein active myrosinase enzyme is mixed with said cruciferous sprouts, or said extracted glucosinolates and isothiocyanates, or both said cruciferous sprouts or said extract.

30. A method of preparing a food product rich in glucosinolates, comprising germinating cruciferous seeds that produce sprouts having at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth and which contain non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates, and harvesting sprouts prior to the 2-leaf stage to form a food product comprising a plurality of sprouts.

31. The method according to claim 30, wherein said seeds are a *Brassica oleracea* selected from the group of varieties consisting of *acephala, alboglabra, botrytis, costata, gemmifera, gongylodes, italica, medullosa, palmifolia, ramosa, sabauda, sabellica,* and *selensia.*

32. The method according to claim 31, wherein said seeds are *Brassica oleracea* variety *italica.*

33. The method according to claim 31, wherein said seeds are *Brassica oleracea* variety *botrytis.*

48

13

34. The method according to claim 33, wherein said seeds are *Brassica oleracea* variety *botrytis* subvariety *cauliflora*.

35. A food product rich in glucosinolates, made by the process according to claim 30.

14

36. A method of preparing a food product, comprising introducing cruciferous seeds, wherein said seeds produce sprouts having at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates, into another edible ingredient.

15

37. A method of preparing a food product, comprising extracting glucosinolates and isothiocyanates with a non-toxic solvent and isothiocyananates from cruciferous seeds, sprouts, plants or plant parts wherein seeds that produce said sprouts, plant, or plant parts, have at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth and wherein said seeds, sprouts, plants or plant parts have non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates, and recovering the extracted glucosinolates and isothiocyanates.

16

38. A method of preparing a food product according to claim 37, wherein active myrosinase enzyme is mixed with said cruciferous seeds, sprouts or plants; or said extracted glucosinolates and isothiocyanates; or both said cruciferous seeds, sprouts or plants and said extract.

39. A method of reducing the level of carcinogens in a mammal comprising administering to a mammal an

49

effective amount of cruciferous sprouts, with the exception of cabbage, cress, mustard and radish sprouts.

40. A method of reducing the level of carcinogens in a mammal, comprising administering to a mammal an effective amount of cruciferous sprouts having at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth from seeds that produce said sprouts and non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates.

41. A method of extracting glucosinolates and isothiocyanates from plant tissue comprising the steps of homogenizing said plant tissue in an excess of a mixture of dimethyl sulfoxide, acetonitrile and dimethylformamide at a temperature sufficient to inactivate myrosinase enzyme activity.

42. A food product comprising cruciferous sprouts, with the exception of cabbage, cress, mustard and radish sprouts, harvested prior to the 2-leaf stage, cruciferous seeds; extracts of said sprouts or seeds; or any combination of said sprouts, seeds or extracts.

43. A method of increasing the chemoprotective amount of Phase 2 enzymes in a mammal, comprising the step of administering an effective quantity of the food product according to claim 42.

44. A food product comprising cruciferous sprouts harvested prior to the 2-leaf stage, wherein said sprouts have at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth from seeds that produce said sprouts and non-toxic levels of indole glucosinolate and goitrogenic hydroxybutenyl glucosinolates; cruciferous seeds; extracts of said sprouts or seeds; or any combination of said sprouts, seeds or extracts.

50

45. A method of increasing the chemoprotective amount of Phase 2 enzymes in a mammal, comprising the step of administering an effective quantity of the food product according to claim 44.

46. Cruciferous sprouts harvested prior to the 2-leaf stage, wherein the ratio of monofunctional to bifunctional inducers is at least 20 to 1.

47. A food product supplemented with a purified or partially purified glucosinolate.

51

*ABSTRACT OF THE DISCLOSURE*

Vegetable sources of cancer chemoprotective agents have been identified which are extraordinarily rich in glucosinolates, metabolic precursors of isothiocyanates. The vegetable sources are used to provide a dietary means of reducing the level of carcinogens in mammals.

Docket No. 46528/102/JOHO

# DECLARATION AND POWER OF ATTORNEY

As a below named inventor, I hereby declare that:

My residence, post office address, and citizenship are as stated below next to my name.
I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:

*CANCER CHEMOPROTECTIVE FOOD PRODUCTS*

the specification of which (check one)

☒ is attached hereto

☐ was filed on    as Application Serial No.    and was amended on    (if applicable).

I hereby state that I have reviewed and understand the contents of the above-identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is known by me to be material to patentability as defined in Title 37, Code of Federal Regulations § 1.56.

I hereby claim foreign priority benefits under Title 35, United States Code, § 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

## PRIOR FOREIGN APPLICATION(S)

| NUMBER | COUNTRY | DAY/MONTH/YEAR FILED | PRIORITY CLAIMED |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

I hereby claim the benefit under Title 35, United States Code, § 120 of any United States application(s) listed below and insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, § 112, I acknowledge the duty to disclose information which is known by me to be material to patentability as defined in Title 37, Code of Federal Regulations § 1.56 which occurred between the filing date of the prior application and the national or PCT international filing date of this application:

| APPLICATION SERIAL NO. | FILING DATE | STATUS: PATENTED, PENDING, ABANDONED |
|---|---|---|
|  |  |  |
|  |  |  |

I hereby appoint as my attorneys, with full powers of substitution and revocation, to prosecute this application and transact all business in the Patent and Trademark Office connected therewith:  Stephen A. Bent, Reg. No. 29,768; David A. Blumenthal, Reg. No. 26,257; John J. Feldhaus, Reg. No. 28,822; Donald D. Jeffery, Reg. No. 19,980; Eugene M. Lee, Reg. No. 32,039; Peter G. Mack, Reg. No. 26,001; Brian J. McNamara, Reg. No. 32,789; Sybil Meloy, Reg. No. 22,749; George E. Quillin, Reg. No. 32,792; Colin G. Sandercock, Reg. No. 31,398; Bernhard D. Saxe, Reg. No. 28,665; Richard L. Schwaab, Reg. No. 25,479; Arthur Schwartz, Reg. No. 22,115; Harold C. Wegner, Reg. No. 25,258.

Send all correspondence to FOLEY & LARDNER, 3000 K Street, N.W., Suite 500, Washington, DC 20007-5109. Address telephone communications to *Bernhard D. Saxe* at (202) 672-5300.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| Full Name of First or Sole Inventor | Signature of First or Sole Inventor | Date |
|---|---|---|
| *Jed W. FAHEY* | *Jed W. Fahey* | 9/13/95 |
| **Residence Address** 6704 RIDGE RD., ELDERSBURG, (MD) 21784 | **Country of Citizenship** *United States* | |
| **Post Office Address** 6704 RIDGE RD., ELDERSBURG, MD 21784 | | |

Signatures should conform to names as typewritten.    ☒  Additional inventors on attached Page 2.

PAGE 2                    Docket No._46528/102/JOHO_

| Full Name of Second Inventor<br>Paul TALALAY | Signature of Second Inventor<br>Paul Talalay | Date<br>9/13/95 |
|---|---|---|
| Residence Address<br>5512 BOXHILL LANE, BALTIMORE MD 21210 | Country of Citizenship<br>United States | |
| Post Office Address<br>5512 BOXHILL LANE BALTIMORE MD 21210 | | |

1-C10

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08/528858



Figure 1

PPINT OF DRAWINGS
AS ORIGINALLY FILED

08 528858



High Resolution NMR (600 MHz) in $D_2O$. Note: chirality of SO in Peak A induces multiplet for $CH_2SO$ (Peak A), not observed for $CH_2S$ (Peak C).

Figure 2



85 Rec'd PCT/PTO 2 4 OCT 1995

*FC*
*REFUND*
*0260*
*0150*

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

**ATTN. FINANCE DEPARTMENT**
**REFUND DIVISION**

In re Patent Application of

FAHEY *et al.*

Serial No.: 08/528,858          Group Art Unit:  UNKNOWN

Filed:  September 15, 1995      Examiner:  UNKNOWN

For:   CANCER CHEMOPROTECTIVE FOOD
       PRODUCTS

**REQUEST FOR REFUND**

Commissioner of Patents and Trademarks
Washington, D. C.  20231

Sir:

        A verified statement claiming small entity status
is filed concurrently herewith in connection with the
subject application.

        The first fee in this application, paid on
September 15, 1995 in the amount of $2,200.00 established
for a non-small entity.  Therefore, Applicant is entitled
to a 50% refund of said fee, consistent with the Notice of
the Acting Commissioner of Patent and Trademarks of
February 15, 1983 (1027 OG 115).

        Therefore, the Patent and Trademark Office is
requested to make a refund in the form of a check in the
amount of $1,100.00 forwarded to the undersigned at the

- 1 -

Serial No.: 08/528,858


address indicated below.  This paper is being submitted in
duplicate for the convenience of the Finance Branch.

                              Respectfully submitted,

October 24, 1995

                              Bernhard D. Saxe
                              Registration No. 28,665


FOLEY & LARDNER
3000 K Street, N.W.
Suite 500
Washington, D.C.  20007-5109
(202) 672-5300



                         - 2 -

#2

Applicant or Patentee:    FAHEY *et al.*
Serial or Patent No.: _08/528,858_    Atty. Dkt. No. _46528/102/JOHO_
Filed or Issued: _9/15/95_
For: _CANCER CHEMOPROTECTIVE FOOD PRODUCTS_

**VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS
(37 CFR 1.9(f) AND 1.27 (c)) — NONPROFIT ORGANIZATION**

I hereby declare that I am an official empowered to act on behalf of the nonprofit organization identified below:

NAME OF ORGANIZATION:  Johns Hopkins School of Medicine
ADDRESS OF ORGANIZATION:  2024 E. Monument Street, Suite 2-100, Baltimore, MD 21205
TYPE OF ORGANIZATION:
(X)    UNIVERSITY OR OTHER INSTITUTION OF HIGHER EDUCATION
( )    TAX EXEMPT UNDER INTERNAL REVENUE SERVICE CODE (26 USC 501(a) AND 501(c)(3))
( )    NONPROFIT SCIENTIFIC OR EDUCATIONAL UNDER STATUTE OF STATE OF THE UNITED
        STATES OF AMERICA
        (NAME OF STATE  )
        (CITATION OF STATUTE  )
( )    WOULD QUALIFY AS TAX EXEMPT UNDER INTERNAL REVENUE SERVICE CODE (26 USC
        501(a) and 501(c)(3) IF LOCATED IN THE UNITED STATES OF AMERICA
( )    WOULD QUALIFY AS NONPROFIT SCIENTIFIC OR EDUCATIONAL UNDER STATUTE OF
        STATE OF AMERICA OF STATE OF AMERICA IF LOCATED IN THE UNITED STATES OF
        AMERICA
        (NAME OF STATE  )
        (CITATION OF STATUTE  )

I hereby declare that the nonprofit organization identified above qualifies as a nonprofit organization as defined in 37 CFR
1.9(e) for purposes of paying reduced fees under section 41(a) or (b) of Title 35, United States Code with regard to the
invention entitled _CANCER CHEMOPROTECTIVE FOOD PRODUCTS_ by inventor(s) FAHEY *et'al.* described in

(X)    the specification filed herewith
( )    application serial no. _____, filed _____
( )    patent no. _____, issued _____

I hereby declare that rights under contract or law have been conveyed to and remain with the nonprofit organization with
regard to the above-identified invention.

If the rights held by the nonprofit organization are not exclusive, each individual, concern or organization having rights
to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could
not qualify as a small business concern under 37 CFR 1.9(d) or by any concern which would not qualify as a small
business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).  *NOTE: Separate verified
statements are required from each named person, concern or organization having rights to the invention averring to their
status as small entities. (37 CFR 1.27)

NAME:  _____
ADDRESS:  _____
() INDIVIDUAL                    () SMALL BUSINESS CONCERN          () NONPROFIT CORPORATION

NAME:  _____
ADDRESS:  _____
() INDIVIDUAL                    () SMALL BUSINESS CONCERN          () NONPROFIT CORPORATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of
entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance
fee due after the date on which status as a small entity is no longer appropriate: (37 CFR 1.28(b)).

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information
and belief are believed to be true; and further that these statements were made with the knowledge that willful false
statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the
United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing
thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING:  David A. Blake, Ph.D.
TITLE OF PERSON OTHER THAN OWNER:  Executive Vice Dean
ADDRESS OF PERSON SIGNING: _720 Rutland Avenue, Baltimore, Maryland 21205_
SIGNATURE: _David A. Blake_    DATE: _2/2/__

UNITED STATES PATENT & TRADEMARK OFFICE
Washington, D.C. 20231

| REQUEST FOR **PATENT** FEE REFUND | | | | |
|---|---|---|---|---|
| 1 Date of Request: 11/14/95 | | 2 Serial/Patent # 08/528858 | | |
| 3 Please refund the following fee(s): | 4 PAPER NUMBER | 5 DATE FILED | 6 AMOUNT | |
| ✓ Filing | | 9/15/95 | $ 16 — | |
| Amendment | | | $ | |
| Extension of Time | | | $ | |
| Notice of Appeal/Appeal | | | $ | |
| Petition | | | $ | |
| Issue | | | $ | |
| Cert of Correction/Terminal Disc. | | | $ | |
| Maintenance | | | $ | |
| Assignment | | | $ | |
| Other | | | $ | |

| 7 TOTAL AMOUNT OF REFUND | $ 16 — |
|---|---|

| 8 TO BE REFUNDED BY: |
|---|
| Treasury Check |

| 10 REASON: | |
|---|---|
| ✓ Overpayment | X Credit Deposit A/C #: |
| Duplicate Payment | 9   1   9   --   0   7   4   1 |
| No Fee Due (Explanation): | |

11 REFUND REQUESTED BY:

TYPED/PRINTED NAME: _____  TITLE Legal Ins. Ex.

SIGNATURE: Glenda Washington  PHONE: 308 1056

OFFICE: OIPE
**************************************************************
THIS SPACE RESERVED FOR FINANCE USE ONLY:

APPROVED: Bill Phillips  DATE: 12-8-95

*Instructions for completion of this form appear on the back. After completion, attach white and yellow copies to the official file and mail or hand-carry to:*

**Office of Finance
Refund Branch
Crystal Park One, Room 802B**

FORM PTO 1577
(01/90)

_1-C16

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

ATTY. DOCKET NO. 46528/102/JOHO

In re Patent Application of

FAHEY *et al.*

Serial No.  08/528,858        Group Art Unit:

Filed:  September 15, 1995  Examiner:

For:    CANCER CHEMOPROTECTIVE FOOD PRODUCTS

**INFORMATION DISCLOSURE STATEMENT**
**UNDER 37 CFR 1.56**

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Submitted herewith on Form PTO-1449 is a listing
of documents known to Applicants in order to comply with
Applicants' duty of disclosure pursuant to 37 CFR 1.56.
A copy of each listed document is being submitted to
comply with the provisions of 37 CFR 1.97 and 1.98.

The submission of any document herewith, which is
not a statutory bar, is not intended as an admission that
such document constitutes prior art against the claims of
the present application or that such document is
considered material to patentability as defined in 37 CFR
§1.56(b).  Applicants do not waive any rights to take any
action which would be appropriate to antedate or otherwise
remove as a competent reference any document which is
determined to be a prima facie prior art reference against
the claims of the present application.

Serial No. 08/528,858

<u>CONCISE EXPLANATION OF</u>
<u>RELEVANCE OF EACH DOCUMENT</u>

The relevance of the documents is described in the present specification.

The listed document is being submitted in compliance with 37 C.F.R. §1.97(b), within three (3) months of the filing date.

Applicants respectfully request that the listed documents be considered by the Examiner and formally be made of record in the present application and that an initialled copy of Form PTO-1449 be returned in accordance with MPEP §609.

Respectfully submitted,

<u>December 14, 1995</u>

Richard C. Peet
Reg. No. 35,792

FOLEY & LARDNER
3000 K Street, N.W.
Suite 500
Washington, D.C. 20007-5109
Tel: (202) 672-5300

- 2 -

Sheet __1__ of __5__

| FORM PTO 1449 (modified) | ATTY DOCKET NO. 46528/102/JOHO | SERIAL NO. 08/528,858 |
|---|---|---|
| U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | APPLICANT FAHEY et al. | |
| LIST OF REFERENCES CITED BY APPLICANT(S) (Use several sheets if necessary) | | |
| Date Submitted to PTO: December 14, 1995 | FILING DATE September 15, 1995 | GROUP _1300_ |

**U.S. PATENT DOCUMENTS**

| *EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

MAIL ROOM
DEC 14 1995
PATENT & TRADEMARK OFFICE
52

**FOREIGN PATENT DOCUMENTS**

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**OTHER DOCUMENT(S) (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | | |
|---|---|---|
| LAW | A1 | The Good New Sprouts Recipe Book, International Sprout Growers Association, pp. 1-8, August 1992. |
| LAW | A2 | Posner et al., "Design and Synthesis of Bifunctional Isothiocyanate Analogs of Sulforaphane |
| | | Correlation between Structure and Potency as Inducers of Anticarcinogenic Detoxication Enzymes", |
| | | Journal of Medicinal Chemistry, Vol. 37, No. 1, pp. 170-175, 1994. |

| EXAMINER  Leslie Wong | DATE CONSIDERED  12/19/96 |
|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

IPT-212(a):4/90

**1-C19**

Sheet _2_ of _5_

| FORM PTO 1449 (modified) | | | ATTY DOCKET NO. 46528/102/JOHO | | SERIAL NO. 08/528,858 |
|---|---|---|---|---|---|

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

LIST OF REFERENCES CITED BY APPLICANT(S)
(*Use several sheets if necessary*)

Date Submitted to PTO: December 14, 1995

APPLICANT
FAHEY *et al.*

FILING DATE
September 15, 1995

GROUP

### U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

### OTHER DOCUMENT(S) (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| LAW | A3 | Zhang et al., "A major inducer of anticarcinogenic protective enzymes from broccoli: Isolation and elucidation of structure", Proc. Natl. Acad. Sci. USA, Vol. 89, pp. 2399-2403, March 1992. |
| iAW | A4 | Prochaska et al., "Rapid detective of inducers of enzymes that protect against carcinogens", Proc. Natl. Sci. USA, Vol. 89, pp. 2394-2398, March 1992. |
| iAW | A5 | Zhang et al., "Anticarcinogenic activities of sulforaphane and structurally related synthetic norbornyl isothiocyanates", Proc. Natl. Sci. USA, Vol. 91, pp. 3147-3150, April 1994. |

| EXAMINER   Leslie Wong | DATE CONSIDERED   12/10/96 |
|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

1-C20

Sheet _3_ of _5_

FORM PTO 1449 *(modified)*

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

LIST OF REFERENCES CITED BY APPLICANT(S)
*(Use several sheets if necessary)*

Date Submitted to PTO: December 14, 1995

| ATTY DOCKET NO. | SERIAL NO. |
|---|---|
| 46528/102/JOHO | 08/528,858 |
| APPLICANT FAHEY *et al.* | |
| FILING DATE September 15, 1995 | GROUP |

### U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

### OTHER DOCUMENT(S) *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| LAW | A6 | Prochaska et al., "Regulatory Mechanisms of Monofunctional and Bifunctional Anticarcinogenic Enzyme Inducers in Murine Liver", Cancer Research Vol. 48, pp. 4776-4782, September 1988. |
| LAW | A7 | Prochaska et al., "Direct Measurement of NAD(P)H: Quinone Reductase from Cells Cultured in Microtiter Wells: A Screening Assay for Anticarcinogenic Enzyme Inducers", Analytical Biochemistry, Vol. 169, pp. 328-336, 1988. |
| LAW | A8 | Beecher, "Cancer prevention properties of varieties of Brassica oleracea: a review [1-3]", Am J. Clin. Nutr.:59(suppl.) pp. 1166s-1170s, 1994. |

| EXAMINER Leslie Wong | DATE CONSIDERED 12/19/96 |
|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

Sheet _4_ of _5_

| FORM PTO 1449 (modified) | | ATTY DOCKET NO.<br>46528/102/JOHO | | SERIAL NO.<br>08/528,858 | | |
| --- | --- | --- | --- | --- | --- | --- |
| U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE<br><br>LIST OF REFERENCES CITED BY APPLICANT(S)<br>(Use several sheets if necessary)<br><br>Date Submitted to PTO: December 14, 1995 | | APPLICANT<br>FAHEY et al. | | | | |
| | | FILING DATE<br>September 15, 1995 | | GROUP | | |

### U.S. PATENT DOCUMENTS

| *EXAMINER<br>INITIAL | DOCUMENT<br>NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF<br>APPROPRIATE |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT<br>NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION<br>YES | NO |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | |
| | | | | | | | |

### OTHER DOCUMENT(S) (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
| --- | --- | --- |
| _VRW_ | A9 | Prestera et al, "Chemical and molecular regulation of enzymes that detoxify carcinogens", Proc.<br>Natl. Acad. Sci. USA, Vol. 90, pp. 2965-2969, April 1993. |
| _VRW_ | A10 | Zhang et al., "Anticarcinogenic Activities of Organic Isothiocyanates: Chemistry and Mechanisms[1]",<br>Cancer Research suppl., 54, pp. 1976s-1981s, April 1, 1994. |
| _VRW_ | A11 | Talalay, "The role of Enzyme Induction in Protection Against Carcinogenesis", Cancer Chemoprevention,<br>pp. 469-478, 1992. |
| _VRW_ | A12 | Prestera et al., "The Electrophile Counterattack Response: Protection Against Neoplasia and Toxicity",<br>Advan. Enzyme Regul., Vol. 33, pp. 281-296, 1993. |
| _VRW_ | A13 | Masilungan et al., "Screening of Philippine Medicinal Plants for Anticancer Agents using CCNSC<br>Protocols", Cancer Chemotherapy Reports (Part 2) Vol. 2, No. 1, pp. 135-140, April 1971. |

| EXAMINER    Leslie Wong | DATE CONSIDERED    12/19/9? |
| --- | --- |

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered.
Include copy of this form with next communication to applicant.

IPT-212(a):4/90

Sheet _5_ of _5_

| FORM PTO 1449 (modified)<br><br>U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE<br><br>LIST OF REFERENCES CITED BY APPLICANT(S)<br>(Use several sheets if necessary)<br><br>Date Submitted to PTO: December 14, 1995 | ATTY DOCKET NO.<br>46528/102/JOHO | | | SERIAL NO.<br>08/528,858 | |
|---|---|---|---|---|---|
| | APPLICANT<br>FAHEY et al. | | | | |
| | FILING DATE<br>September 15, 1995 | | | GROUP | |

## U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

## OTHER DOCUMENT(S) (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| *(initials)* | A14 | Polasa et al., "Cancer preventive properties of varieties of Brassica oleracea: A review Source", |
| | | American Journal of Clinical Nutrition 59 (5 Suppl.), 1994. |
| *(initials)* | A15 | Patent Abstracts of Japan Sect. No. 305, Vol. 9, No. 2371, p. 2, September 1985. |
| | | |
| *(initials)* | A16 | Barrett et al., "Protective Effect of Cruciferous Seed Meals Against Mouse Colon Cancer", Cereal |
| | | Foods World 613, Vol. 39, No. 6, pp. 613, August 1994. |

| EXAMINER    Leslie Wong | DATE CONSIDERED    12/19/96 |
|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

IPT-212(a):4/90

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/528,858 | 09/15/95 | FAHEY    J | 46528/102/J0 |

| EXAMINER |
|---|
| WONG, L. |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1302 | 4 |

13M1/0903

FOLEY AND LARDNER
3000 K STREET NW
SUITE 500
WASHINGTON DC 20007-5109

DATE MAILED:
09/03/96

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## OFFICE ACTION SUMMARY

☐ Responsive to communication(s) filed on _____

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 D.C. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire_____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _____ 1-47 _____ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☐ Claim(s) _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☒ Claims _____ 1-47 _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☐ Notice of Reference Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

**1-C24**

-- SEE OFFICE ACTION ON THE FOLLOWING PAGES --

Serial Number: 08/528858                                          Page 2

Art Unit: 1302

# DETAILED ACTION

### *Election/Restriction*

Restriction to one of the following inventions is required under 35 U.S.C. 121:

I.      Claims 1-6 and 12-16, drawn to cruciferous sprouts, classified in class 800,

        subclass 200.

II.     Claims 7-10 and 17-20, drawn to a solvent extract of cruciferous sprouts,

        classified in class 530, subclass 370.

III.    Claims 21-26, 28-34, and 36-38, drawn to a method of preparing a food product

        rich in glucosinolates, classified in class 426, subclass 049.

IV.     Claims 27, 35, 42, 44, and 47, drawn to a food product rich in glucosinolates,

        classified in class 426, subclass 615.

V.      Claims 39 and 40, drawn to a method of reducing the level of carcinogens in a

        mammal, classified in class 514, subclass 514.

VI.     Claim 41, drawn to a method of extracting glucosinolates and isothiocyanates from

        plant tissue, classified in class 530, subclass 370.

VII.    Claims 11, 43, and 45, drawn to a method of increasing the chemoprotective

        amount of Phase 2 enzymes in a mammal, classified in class 514, subclass 002+.

VIII.   Claim 46, drawn to cruciferous sprouts, classified in class 800, subclass 200.

The inventions are distinct, each from the other because of the following reasons:

Serial Number: 08/528858                                              Page 3

Art Unit: 1302

    As between the subject matter of the claims of Group I and claims of Groups II, III, IV V,

VI, VII, and VIII; as between the subject matter of the claims of Group II and the claims of

Groups III, IV, V, VI, VII, and VIII; as between the subject matter of the claims of Group III and

the claims of Groups IV, V, VI, VII, and VIII; as between the subject matter of the claims of

Group V and the claims of Groups VI, VII, and VIII; as between the subject matter of the claims

of Group VI and the claims of Groups VII and VIII; and as between the subject matter of the

claims of Group VII and Group VIII, it is considered that each set of claims to the other are

drawn to mutually exclusive subject matter.  The requirements of one set of claims to the other

are not mandatory.

    Because these inventions are distinct for the reasons given above and have acquired a

separate status in the art as shown by their different classification and their recognized divergent

subject matter, restriction for examination purposes as indicated is proper.

    Applicant is advised that the response to this requirement to be complete must include an

election of the invention to be examined even though the requirement be traversed (37

CFR 1.143).

    Applicant is reminded that upon the cancellation of claims to a non-elected invention, the

inventorship must be amended in compliance with 37 CFR 1.48(b) if one or more of the currently

named inventors is no longer an inventor of at least one claim remaining in the application.  Any

amendment of inventorship must be accompanied by a diligently-filed petition under 37

CFR 1.48(b) and by the fee required under 37 CFR 1.17(h).

Serial Number: 08/528858                                    Page 4

Art Unit: 1302

     Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Leslie Wong whose telephone number is (703) 308-1979.

*Leslie Wong*

**LESLIE WONG**
**PRIMARY EXAMINER**
**GROUP 1300**

LAW

August 29, 1996

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re patent application of
Jed FAHEY et al.
Serial No. 08/528,858                    Group Art Unit: 1302
Filed:   September 15, 1995              Examiner:  L. Wong
For:     CANCER CHEMOPROTECTIVE FOOD PRODUCTS

### RESPONSE TO RESTRICTION REQUIREMENT

The Honorable Commissioner of
    Patents and Trademarks
Washington, D.C.  20231

Sir:

        Responsive to the Office Action dated September 3,
1996, applicant hereby elects, **with traverse**, to prosecute
claims 21-16, 28-34 and 36-38 of Group III in the above-
identified application.

        Applicants believe that it would not constitute an
undue burden for the examiner to consider all claims in the
pending application.   In particular, the subject matter
incorporated in the claims of Groups I, III and IV would
require a search of similar scope.  Accordingly, Applicants
request that the examiner at least consider examining the
claims of Groups I, III and IV together.

        Applicants reserve the right to file one or more
divisional applications for the non-elected subject matter.

Serial No. 08/528,858

Receipt of the initial office Action on the merits is awaited.

Respectfully submitted,

October 3, 1996
Date

for Richard C. Peet
Reg. No. 35,792

FOLEY & LARDNER
3000 K Street, N.W.
Suite 500
Washington, D.C. 20006-5109
Tel: (202) 672-5300

**UNITED STATES D. ARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER 8 | 09/1 FILING DATE FAHE Y | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO: /10 /JO |
|---|---|---|---|

FOLEY AND LARDNER                    13M1/1224
3000 K STREET NW
SUITE 500
WASHINGTON DC 20007-5109

| | EXAMINER |
|---|---|
| ART UNIT 02 | PAPER NUMBER |

DATE MAILED: 12 06

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## OFFICE ACTION SUMMARY

☑ Responsive to communication(s) filed on _____ 10/3/96 _____

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 D.C. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire _____ 3 _____ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☑ Claim(s) _____ 1-47 _____ is/are pending in the application.

Of the above, claim(s) _____ 1-20, 27, 35 and 39-47 _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☑ Claim(s) _____ 21-26, 28-34, 36, 37 and 38 _____ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☑ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

  ☐ All ☐ Some* ☐ None   of the CERTIFIED copies of the priority documents have been

    ☐ received.

    ☐ received in Application No. (Series Code/Serial Number) _____.

    ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

  *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☑ Notice of Reference Cited, PTO-892

☑ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☑ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152     **1-C30**

-- SEE OFFICE ACTION ON THE FOLLOWING PAGES --

Serial Number: 08/528858                                                    Page 2

Art Unit: 1302

Applicant's election with traverse of Group III in Paper No. 5 is acknowledged. The

traversal is on the ground(s) that examination of Group I, III, and IV would not constitute undue

burden. This is not found persuasive because the inventions have recognized divergent subject

matter.

The requirement is still deemed proper and is therefore made FINAL.

Claims 21-26, 28-34, and 36-38 are rejected under 35 U.S.C. 103(a) as being unpatentable

over Kenjirou (abstract of JP 60094056) in view of Beecher (Am. J. Clin. Nutr., A8), Zhang et al

(A3), Zhang et al (A10), and Cho et al ('986).

Kenjirou disclose broccoli sprouts (see abstract). The production of sprouts (e.g.

broccoli) is notoriously well-known.

The claims differ as to the specific recitation of glucosinolates/isothiocyanates.

Nothing patentable is seen here as Zhang et al disclose the anticarcinogenic activities of

isothiocyanates (see pages 1976s-1981s).

Beecher discloses the cancer preventive properties of varieties of Brassica oleracea (see

pages 1166s-1170s).

Zhang et al disclose a major inducer of anticarcinogenic protective enzymes from broccoli

(see pages 2399-2403).

Cho et al disclose chemoprotective isothiocyanates (see entire patent).

It would have been obvious to a person of ordinary skill in the art, at the time the

invention was made, that the process of preparing the product of Kenjirou would be rich in

Serial Number: 08/528858                                                    Page 3

Art Unit: 1302

chemoprotective agents as Beecher, Zhang et al (A3), Zhang et al (A10), and Cho et al, all teach

the cancer preventive properties of *Brassica*.

In the absence of unexpected results, it is not seen how the claimed invention differs from

the teachings of the prior art. Applicant's claims are drawn to a combination of known

components which produces expected results, see In re Kerkhoven 205 USPQ 1069 and In re

Gershon 152 USPQ 602.

All of the claim limitations have been considered. None of them are seen as serving as

basis for patentability.

No claim is allowed.

Any inquiry concerning this communication or earlier communications from the examiner

should be directed to Leslie Wong whose telephone number is (703) 308-1979. The examiner can

normally be reached on Tuesday-Thursday from 6:30 AM to 5:00 PM.

The fax number for this Group is (703) 305-3602.

Any inquiry of a general nature or relating to the status of this application should be

directed to the Group receptionist whose telephone number is (703) 308-0651.

**Leslie Wong**
**Primary Examiner**
**Art Unit 1302**

LAW
December 19, 1996

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

| FORM PTO-892 (REV. 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 08/528858 | GROUP ART UNIT 1302 | ATTACHMENT TO PAPER NUMBER 6 |
|---|---|---|---|---|

**NOTICE OF REFERENCES CITED**

APPLICANT(S) Fahey et al.

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 5411986 | 5/95 | Cho et al. | 514 | 514 | |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER Leslie Wong | DATE 12/19/96 | 1-C33 |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

Form PTO 948 (Rev. 10-94)     U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office     Application No. 528868

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

PTO Draftspersons review all originally filed drawings regardless of whether they are designated as formal or informal. Additionally, patent Examiners will review the drawings for compliance with the regulations. Direct telephone inquiries concerning this review to the Drawing Review Branch, 703-305-8404.

The drawings filed (insert date) 9/5/95 are
A. ___ not objected to by the Draftsperson under 37 CFR 1.84 or 1.152.
B. ✓ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this Notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings: Black ink. Color.
___ Not black solid lines. Fig(s)_____
___ Color drawings are not acceptable until petition is granted. Fig(s) _____
2. PHOTOGRAPHS. 37 CFR 1.84(b)
___ Photographs are not acceptable until petition is granted. Fig(s)_____
___ Photographs not properly mounted (must use bristol board or photographic double-weight paper). Fig(s)_____
___ Poor quality (half-tone). Fig(s)_____
3. GRAPHIC FORMS. 37 CFR 1.84 (d)
___ Chemical or mathematical formula not labeled as separate figure. Fig(s)_____
___ Group of waveforms not presented as a single figure, using common vertical axis with time extending along horizontal axis. Fig(s)_____
___ Individuals waveform not identified with a separate letter designation adjacent to the vertical axis. Fig(s)_____
4. TYPE OF PAPER. 37 CFR 1.84(e)
___ Paper not flexible, strong, white, smooth, nonshiny, and durable. Sheet(s)_____
✓ Erasures, alterations, overwritings, interlineations, cracks, creases, and folds copy machine marks not accepted. Fig(s)_____
___ Mylar, velum paper is not acceptable (too thin). Fig(s)_____
5. SIZE OF PAPER. 37 CFR 1.84(f): Acceptable sizes:
___ 21.6 cm. by 35.6 cm. (8 1/2 by 14 inches)
___ 21.6 cm. by 33.1 cm. (8 1/2 by 13 inches)
___ 21.6 cm. by 27.9 cm. (8 1/2 by 11 inches)
___ 21.0 cm. by 29.7 cm. (DIN size A4)
___ All drawing sheets not the same size. Sheet(s)_____
___ Drawing sheet not an acceptable size. Sheet(s) _____
6. MARGINS. 37 CFR 1.84(g): Acceptable margins:

Paper size

| | 21.6 cm. X 35.6 cm. (8 1/2 X 14 inches) | 21.6 cm. X 33.1 cm. (8 1/2 X 13 inches) | 21.6 cm. X 27.9 cm. (8 1/2 X 11 inches) | 21.0 cm. X 29.7 cm. (DIN Size A4) |
|---|---|---|---|---|
| T | 5.1 cm. (2") | 2.5 cm. (1") | 2.5 cm. (1") | 2.5cm. |
| L | .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 2.5 cm. |
| R | .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.5 cm. |
| B | .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.0 cm. |

Margins do not conform to chart above. Sheet(s)_____
___Top (T) ___Left (L) ___Right (R) ___Bottom (B)
7. VIEWS. 37 CFR 1.84(h)
REMINDER: Specification may require revision to correspond to drawing changes.
___ All views not grouped together. Fig(s)_____
___ Views connected by projection lines or lead lines. Fig(s)_____
Partial views. 37 CFR 1.84(h) 2

___ View and enlarged view not labled separatly or properly. Fig(s)_____
___ Sectional views. 37 CFR 1.84 (h) 3
___ Hatching not indicated for sectional portions of an object. Fig(s)_____
___ Cross section not drawn same as view with parts in cross section with regularly spaced parallel oblique strokes. Fig(s)_____
8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
___ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned so that the top becomes the right side, except for graphs. Fig(s)_____
9. SCALE. 37 CFR 1.84(k)
___ Scale not large enough to show mechanism with crowding when drawing is reduced in size to two-thirds in reproduction. Fig(s)_____
___ Indication such as "actual size" or scale 1/2" not permitted. Fig(s)_____
10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)
✓ Lines, numbers & letters not uniformly thick and well defined, clean, durable, and black (except for color drawings). Fig(s) ✓
11. SHADING. 37 CFR 1.84(m)
___ Solid black shading areas not permitted.
___ Shade lines, pale, rough and blurred. Fig(s)_____
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS. 37 CFR 1.84(p)
✓ Numbers and reference characters not plain and legible. 37 CFR 1.84(p)(1) Fig(s) ✓
___ Numbers and reference characters not oriented in same direction as the view. 37 CFR 1.84(p)(1) Fig(s)_____
___ English alphabet not used. 37 CFR 1.84(p)(2)_____
✓ Numbers, letters, and reference characters do not measure at least .32 cm. (1/8 inch) in height. 37 CFR(p)(3) Fig(s) ✓
13. LEAD LINES. 37 CFR 1.84(q)
___ Lead lines cross each other. Fig(s)_____
___ Lead lines missing. Fig(s)_____
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
___ Sheets not numbered consecutively, and in Arabic numerals, beginning with number 1. Sheet(s)_____
15. NUMBER OF VIEWS. 37 CFR 1.84(u)
✓ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s)_____
___ View numbers not preceded by the abbreviation Fig.
16. CORRECTIONS. 37 CFR 1.84(w)
___ Corrections not made from prior PTO-948. Fig(s)_____
17. DESIGN DRAWING. 37 CFR 1.152
___ Surface shading shown not appropriate. Fig(s)_____
___ Solid black shading not used for color contrast. Fig(s)_____

COMMENTS:

- FIG. LEG. MUST BE PARALLEL TO FIG. (FIG.1)

- REMOVE BOX AROUND FIG. (FIG. 2)

1-C34

12/27/05

**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/528858 | 9/15/95 | Fahey et al. | 46528/102 PO |

| EXAMINER |
|---|
| L. Wong |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1302 | 7 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Richard Peet     (3) Jed. Fahey

(2) Paul Talalay     (4) Leslie Wong

Date of interview ____3/11/97____

Type: ☐ Telephonic ☑ Personal (copy is given to ☐ applicant ☑ applicant's representative).

Exhibit shown or demonstration conducted: ☑ Yes ☐ No. If yes, brief description: Presentation of the chemistry and benefits of the application.

Agreement ☑ was reached with respect to some or all of the claims in question. ☐ was not reached.

Claims discussed: all

Identification of prior art discussed: that cited especially Japanese reference (Kenjiro)

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: Discussed applicability of cited prior references, especially Kenjiro. It appears that Kenjiro is an improper translation. Applicant will provide support for proof of improper translation and will also provide

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

☑ 1. It is not necessary for applicant to provide a separate record of the substance of the interview.

declaration for presentation material. It appears that claims will be allowed over the prior art of record.

Unless the paragraph below has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., Items 1-7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ 2. Since the examiner's interview summary (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the substance of the interview unless box 1 above is also checked.

Examiner's Signature _Leslie Wong_

PTOL-413 (REV. 2 -93)

1-C35

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Attorney Docket No. 46528/102/JOHO

In re patent application of
Jed FAHEY et al.                  Group Art Unit:  1302
Serial No. 08/528,858             Examiner:  L. Wong
Filed:  September 15, 1995
For: CANCER CHEMOPROTECTIVE FOOD PRODUCTS

## AMENDMENT AND REQUEST FOR RECONSIDERATION
## UNDER 37 C.F.R. § 1.111

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

    In response to the Official Action mailed December 24, 1996,
applicants respectfully request that the examiner reconsider the
propriety of the restriction requirement, as well as the
rejection of claims 21-26, 28-34 and 36-38 as obvious over the
prior art, in view of the following remarks.

### REMARKS

**I.    INTERVIEW**

    Applicants and their representative thank Examiner Wong for
the courtesies extended during an interview held at the USPTO on
March 11, 1997.  Examiner Wong indicated that claims 21-26, 28-34
and 36-38 are allowable over the prior art of record.

**II.    THE RESTRICTION REQUIREMENT**

    Applicants acknowledge that the examiner made the
restriction requirement final in the last Official Action.  In
a Response to the Restriction Requirement filed October 3, 1996,
applicants elected with traverse to prosecute the claims
contained in the examiner's Group III (claims 21-26, 28-34 and
36-38).  Accordingly, claims 21-26, 28-34 and 36-38 are pending
and presented for reconsideration by the examiner, while claims

Serial No. 08/528,858

1-20, 27, 35 and 39-47 are withdrawn from consideration as directed to non-elected inventions.

However, applicants respectfully urge the examiner to reconsider the propriety of the restriction requirement at least with respect to dependent claims 27 and 35. Claim 27 depends from claim 21 and is drawn to a food product rich in glucosinolates made by the process recited in the independent claim. Likewise, claim 35 is also drawn to a food product rich in glucosinolates which, in this instance, is made by the process recited in independent claim 30. It is respectfully asserted that it would not constitute an undue burden for the examiner to consider dependent claims 27 and 35 since the search, and issues of patentability, are similar in scope with respect to all of these claims. Accordingly, it is respectfully urged that the examiner reconsider the propriety of the restriction requirement and examine claims 21-38.

### III. THE OBVIOUSNESS REJECTION

Claims 21-26, 28-34, and 36-38 are rejected under 35 U.S.C. §103 as obvious over Patent Abstracts of Japan, Unexamined Applications, Section: C, Sect. No. 305, Vol. 9, No. 2371, p.2. in view of Beecher, Christopher W.W., *Am. J. Clin. Nutr.* <u>59</u> (Suppl): 1166-1170S (1994) (" the '94056 application"), Zhang *et al.*, *Proc. Natl. Acad. Sci. USA.* <u>89</u>: 2399-2403 (1992), Zhang *et al.*, *Cancer Research* <u>54</u> (Suppl): 1976-1981S (1994) and Cho *et al.* U.S. Patent 5,411,986. It is respectfully asserted that the examiner has failed to set forth a *prima facie* case of obviousness.

> **A.    The Prior Art Fails to Teach or Suggest Methods for Preparing Food Products Comprised of the Recited Cruciferous Sprouts or Extracts of These Sprouts**

The '94056 application, referred to by the examiner as the "Kenjirou" reference, allegedly provides "a sprout product

- 2 -

Serial No. 08/528,858

preserved in [a] bag capable of preserving freshness for a long period . . . ." (*See* Abstract.)  Beecher summarizes evidence suggesting that consumption of vegetables produced by varieties of *Brassica oleracea*, including broccoli, cauliflower and cabbage, reduce cancer risk.  Beecher therefore does not teach or suggest methods for the production of food products comprised of the recited cruciferous sprouts or sprout extracts.

Likewise, the two Zhang articles and the Cho patent fail to teach or suggest methods for the production of food products comprised of the recited cruciferous sprouts or sprout extracts. The Zhang references describe the characterization of anticarcinogenic isothiocyanates found in cruciferous **vegetables**. The Cho patent describes and claims pharmaceutical compositions comprising sulforaphane, and analogues of sulforaphane, that are anticarcinogenic.

The examiner takes the position that:

> the process of preparing the product of Kenjirou would be rich in chemoprotrective agents as Beecher, Zhang et al (A3), Zhang et al (A10), and Cho et al all teach the cancer preventive properties of *Brassica*.

(paragraph bridging pages 2 and 3).  However, the '94056 application fails to teach the claimed methods for preparing food products comprised of the recited cruciferous **sprouts** or **sprout** extracts.  As will be described in greater detail below, the English language abstract cited by the examiner contains an inaccurate English translation from the Japanese of the invention disclosed in the '94056 application.  The '94056 application does not describe a method for preparing broccoli sprouts but provides a method for storing **mature market stage broccoli** to delay yellowing of **flower buds**.

- 3 -

Serial No. 08/528,858

One embodiment of the invention, claimed in the instant application, is directed to a process comprising the steps of germinating certain cruciferous seeds and harvesting sprouts prior to the 2-leaf stage to form a food product comprising a plurality of these cruciferous **sprouts**. Another embodiment of the claimed invention involves germinating certain cruciferous seeds that produce sprouts having at least 200,000 units per gram fresh weight of Phase 2 enzyme-inducing potential when measured after 3-days of growth and which contain non-toxic levels of indole glucosinolates and their breakdown products and goitrogenic hydroxybutenyl glucosinolates, and harvesting sprouts prior to the 2-leaf stage to form a food product comprising a plurality of **sprouts**. Yet another embodiment of the claimed invention involves extracting glucosinolates and isothiocyanates from the recited cruciferous **sprouts**.

The '94056 application does **not** describe a method for preparing broccoli **sprouts**. Attached as APPENDIX A is the Translator's Declaration of Mr. Yoichiro Yamaguchi who is familiar with both the Japanese and English languages and is a graduate of Waseda School of Law, Waseda University, Tokyo, Japan and the National Law Center, George Washington University, Washington, D.C. Mr. Yamaguchi is admitted to practice as a patent attorney in Japan and is a registered attorney in the United States. Mr. Yamaguchi translated relevant portions of the '94056 application from the Japanese to the English language and his translation is attached to the Declaration as APPENDIX A1. The '94,056 application is attached as APPENDIX A2.

Following review of the '94056 application and the examiner's first Official Action, Mr. Yamaguchi concludes that:

> [t]he English language abstract relied on by the examiner contains an inaccurate description of the '94506 application. Specifically, the '94506 application does not provide a bag capable of preserving the freshness of

- 4 -

Serial No. 08/528,858


**broccoli sprouts.** Rather, the '94506 application provides
a bag capable of preserving the freshness of **mature market**
**stage broccoli**.

(paragraph 4, emphasis in original.)  Accordingly, the '94056
application does not describe a method for preserving broccoli
sprouts but describes a method of preserving mature market stage
broccoli so that the flower buds do not rapidly yellow and become
unmarketable.  Accordingly, none of the references, either alone,
or in combination, teach or suggest the claimed methods for
preparing food products comprised of the recited cruciferous
sprouts or extracts made from these sprouts.

      B.    **The Cruciferous Sprouts and Sprout Extracts Prepared**
            **According to the Claimed Methods Contain Unexpectedly**
            **High Levels of Phase 2 Enzyme Inducer Activity and**
            **Unexpectedly Low Levels of Phase 1 Enzyme Inducer**
            **Activity**

      Even assuming the examiner had set forth a *prima facie* case
of obviousness, clear evidence of unexpected results contained
in the specification has been overlooked.  Proof of an unexpected
improvement can rebut a *prima facie* case of obviousness.  *In re*
*Costello*, 480 F.2d 894, 178 USPQ 290 (CCPA 1973).  Specifically,
the methods of the instant invention provide food products that
have unexpected health benefits compared to food products
available in the prior art.

      More specifically, the claimed methods of the instant
application provide food products comprised of certain
cruciferous sprouts, and sprout extracts, with greatly increased
levels of Phase 2 inducer activity compared to mature market
stage vegetables. As a consequence, a significant health benefit
can be realized through ingestion of small quantities of
cruciferous sprouts, or sprout extracts, prepared according to
the claimed methods.  The same health benefits can only be
realized, if at all, through the ingestion of impractically large
quantities of market stage vegetables that contain significantly

- 5 -

Serial No. 08/528,858

lower quantities of anticarcinogenic Phase 2 inducer activity
compared to the sprouts of the instant invention.

Phase 2 enzymes conjugate functionalized products with
endogenous ligands (e.g. glutathione, glucuronic acid, sulfate)
and thereby serve primarily a detoxifying role in xenobiotic
metabolism. There is very good evidence indicating that when
Phase 2 enzymes are induced, animals and cells are protected
against the toxic and neoplastic effects of carcinogens. In
fact, anticarcinogens have been identified based on their ability
to induce Phase 2 enzymes. See, for example, Talalay, Paul,
*Chemical Protection Against Cancer by Induction of Electrophile
Detoxification (Phase II) Enzymes*, In: CELLULAR AND MOLECULAR
TARGETS OF CHEMOPREVENTION, V.E. Steele et al. (eds.), CRC Press,
Boca Raton, FL (1992).

The ability of Phase 2 enzyme inducers, such as
isothiocyanates, to block carcinogenesis has been known for many
years. See, for example, Zhang et al., *Cancer Research* 54
(Suppl): 1976-1981S (1994). In addition, numerous
epidemiological studies suggest that high consumption of yellow
and green vegetables, especially those of the family Cruciferae
and the genus *Brassica* such as cauliflower, cabbage or broccoli,
reduces the risk of developing cancer of various organs. See,
for example, Graham et al., *J. Natl. Cancer Inst.* 61: 709-714
(1978). However, the quantity of mature market stage vegetables
that must be consumed in order to provide even a 50% reduction
in cancer risk ratio is so very large as to be difficult for many
individuals and further risk reduction is impractical.

Dr. Talalay notes in the accompanying Rule 132 Declaration,
attached hereto as APPENDIX B, that consumption of 425 g/wk of
mature market stage *Brassica* vegetables, such as broccoli, would
result in an odds ratio of approximately 0.5 (50% risk reduction)
for colon cancer. It is frequently impractical and many

- 6 -

Serial No. 08/528,858

individuals cannot tolerate consumption of such a large quantity of market stage broccoli each week. The large quantity of fiber and other phytochemicals associated with consumption of such large quantities of this vegetable is likely to cause bowel irritation and/or flatulence in a significant portion of the population. In addition, many individuals dislike the taste of cruciferous vegetables and will not consume such large quantities for this reason.

Cruciferous sprouts prepared according to the instant invention provide 20 to 50-fold higher levels of Phase 2 enzyme inducer activity than mature, market stage cruciferous vegetables (see APPENDIX B1). Accordingly, much smaller quantities of the sprouts can be consumed to realize the same health benefit obtained through consumption of larger quantities of mature market stage vegetables. Dr. Talalay in the accompanying Rule 132 Declaration calculates that 3 grams of 3-day old sprouts, or 150 milligrams of lyophilized hot water extract of sprouts, contain the same quantity of Phase 2 enzyme inducer activity as 150 grams of mature market stage broccoli. The quantity of mature market stage broccoli, sprouts and sprout extracts that must be consumed to realize the same health benefit (2-1/4 million units of anticarcinogen Phase 2 enzyme inducer activity) is shown in APPENDIX B2 attached to Dr. Talalay's Rule 132 Declaration.

Another unrecognized and unexpected benefit of the claimed methods is to provide food products comprised of certain cruciferous sprouts and sprout extracts that do not contain significant levels of Phase 1 inducer activity, derived from indole glucosinolates. Phase 1 enzymes (cytochromes P-450) functionalize compounds, usually by oxidation or reduction. Although one role of Phase 1 enzymes is to detoxify xenobiotics, **several cytochromes P-450 activate various types of procarcinogens to highly reactive ultimate carcinogens**.

- 7 -

Serial No. 08/528,858

Attached to Dr. Talalay's Rule 132 Declaration as APPENDIX B3 are graphs showing comparative paired ion chromatographs of broccoli sprouts and mature market stage broccoli. The paired ion chromatographs were prepared according to the method developed in our laboratory by Prestera *et al.*, *Anal. Biochem.* **239**: 168-179 (1996). The principal peaks are glucoraphanin, glucoerucin, glucobrassicin and neoglucobrassicin (APPENDIX B3). The former two glucosinolates are alkylthioglucosinolates with potent Phase 2 enzyme inducer activity and are the predominant glucosinolates found in sprouts. The latter two glucosinolates are indole glucosinolates which predominate in mature market stage broccoli. The indole glucosinolates are (1) very weak Phase 2 enzyme inducers; (2) are bifunctional inducers and therefore induce both Phase 1 and Phase 2 enzymes; (3) degrade to produce condensation products which bind to the Ah receptor and induce certain cytochromes P-450 that activate carcinogens; and (4) may actually enhance carcinogenic activity. Accordingly, the food products of the instant invention not only contain unexpectedly high levels of anticarcinogenic Phase 2 inducer activity but also contain unexpectedly low levels of carcinogenic Phase 1 enzyme inducer activity.

### C.    Conclusion

The prior art does not teach or suggest methods for production of food products comprised of the recited cruciferous sprouts or sprout extracts. Accordingly, the examiner has failed to set forth a *prima facie* case of obviousness. Although unnecessary to overcome the examiner's obviousness rejection because of the lack of a *prima facie* case of obviousness, evidence of totally unexpected results is presented. The claimed methods of the instant application provide food products comprised of certain cruciferous sprouts, and sprout extracts, with greatly increased levels of Phase 2 inducer activity compared to mature market stage vegetables. In addition, food products prepared according to the claimed invention do not

- 8 -

Serial No. 08/528,858

contain significant levels of Phase 1 inducer activity which may actually enhance carcinogenic activity.   It is therefore respectfully urged that the claims are not obvious over the prior art cited by the examiner and the rejection should be withdrawn.

    For all the foregoing reasons, it is respectfully urged that the present claims are in condition for allowance.   An early notice to this effect is earnestly solicited.   Should there be any questions regarding this application, Examiner Wong is invited to contact the undersigned at the number shown below.

                                    Respectfully submitted,

_March 17, 1997_                    _Richard C. Peet_
Date                                Richard C. Peet
                                    Reg. No. 35,792

FOLEY & LARDNER
Suite 500
3000 K Street, N.W.
Washington, D.C.  20007-5109
(202) 672-5300

- 9 -

CONTENTS

APPENDIX

A            Translator's Declaration

A1           English language translation of
             Japanese '94056 application

A2           Japanese '94056 application

A3           Abstract relied upon by examiner


B            Declaration of Paul Talalay
             Under 37 C.F.R. § 1.132

B1           Phase 2 Enzyme Inducer Activity
             of Broccoli Chart

B2           Market Stage/3-Day Sprout Stage
             Broccoli Photograph

B3           Paired Ion Chromatograph (P.I.C.)

A

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

**Attorney Docket No. 046585/0102**

In re patent application of
Jed FAHEY *et al.*
Serial No. 08/528,858
Filed:  September 15, 1995
For:  CANCER CHEMOPROTECTIVE FOOD PRODUCTS

**TRANSLATOR'S DECLARATION**

Commissioner of Patents and Trademarks
Washington, D.C.  20231

Sir:

I, Yoichiro Yamaguchi, being duly warned, hereby declare and say:

1.   I am a graduate of Waseda School of Law, Waseda University, Tokyo, Japan and National Law Center, George Washington University, Washington, D.C.  I am admitted to practice as a patent attorney in Japan and am a registered attorney in the United States.  I am familiar with both the Japanese and English languages.

2.   I translated relevant portions of Japanese Laid-Open (*Kokai*) Patent Application No. 64-94056 ("the '94056 application") from the Japanese to the English language, and this translation is attached hereto as APPENDIX A1.  My translation of the '94056 application is a true, faithful and exact translation of the corresponding Japanese language found in the '94056 application.  The '94056 application is attached hereto as APPENDIX A2.

3.   I have read the examiner's Official Action issued in the above-identified patent application on December 24, 1996 and understand that the examiner has relied on an English language abstract that allegedly describes the contents of the '94056 application.  The English language abstract relied on by the

**Attorney Docket No. 046585/0102**

examiner is attached hereto as APPENDIX A3. (*See* Patent Abstracts of Japan, Unexamined Applications, Section: C, Sect. No. 305, Vol. 9, No. 2371, p.2.)

4.  The English language abstract relied on by the examiner contains an inaccurate description of the '94506 application. Specifically, the '94506 application does not provide a bag capable of preserving the freshness of **broccoli sprouts**. Rather, the '94506 application provides a bag capable of preserving the freshness of <u>**mature market stage broccoli**</u>. For example, the '94506 application teaches that:

> By this invention, broccoli, which easily changes color and produces a bad odor and is conventionally considered to be difficult produce in maintaining freshness, can be preserved for 5 to 7 days in a fresh manner, then commercial value of broccoli can be remarkably increased and the distribution can be expanded.

Examples of the present invention are explained below.

Example 1

> An absorbent with a urethane foam [sheet] having 2mm in thickness and 150mm by 200mm in size, to which 4g of active carbon having 1,700 $m^2$/g specific surface area and having particle size of 90% passing through 100 mesh was added, was enclosed in a bag formed by dual axis extended polypropylene film with a size of 670mm by 550mm, a thickness of $25\mu$ together with 2 kg of broccoli. The bag was sealed and preserved at a room temperature. Even after 7 days, **yellowing of flower buds** [of broccoli] and bad odor were hardly observed.

(*See* page 2, lower right column, emphasis added.) Accordingly, the '94056 application does <u>not</u> describe a method for preserving <u>broccoli sprouts</u> but describes a method of preserving <u>**mature market stage broccoli**</u> so that the **flower buds** do not rapidly yellow and become unmarketable.

Attorney Docket No. 046585/0102

5.   The undersigned declares that all statements made
herein of his own knowledge are true and that all statements made
on information and belief are believed to be true; and further,
that these statements were made with the knowledge that willful
false statements and the like so made are punishable by fine or
imprisonment, or both, under Section 1001 of Title 18 of the
United States Code and that such willful false statements may
jeopardize the validity of the application or any patent
resulting therefrom.

_March 17, 1997_                    _____
Date                                Yoichiro Yamaguchi

- 3 -