Gregory P. Gulia
Vanessa C. Hew
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
(212) 692-1062
(212) 202-6151 (fax)
GPGulia@duanemorris.com
VCHew@duanemorris.com

and

Ann G. Schoen
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6128
(513) 651-6981 (fax)
aschoen@fbtlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

BRASSICA PROTECTION PRODUCTS LLC, and:    1:07-cv-07844-SAS
THE JOHNS HOPKINS UNIVERSITY

                Plaintiffs,          :

        -against-            :    **CAUDILL SEED &**
                                             **WAREHOUSE CO., INC.'S**
                                           **REPLY IN SUPPORT OF ITS**
CAUDILL SEED & WAREHOUSE CO., INC.    :    **CLAIM CONSTRUCTION**
                                           **BRIEF(REDACTED)**

              Defendant.     :
-------------------------------------------------------------X

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.     INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ........................................................................................................ 1

       A.     "Food Product" Was Clearly, Deliberately, and Precisely Defined
              In the Patents ............................................................................................ 1

       B.     Extract ........................................................................................................ 5

       C.     Caudill's Expert Provided The Only Proper Evidence Of Claim
              Term Meanings .......................................................................................... 8

       D.     Other Claim Terms to be Construed ...................................................... 10

III.   CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen Engineering Corp. v. Bartell Industrial, Inc.*, 299 F.3d 1336 (Fed. Cir. 2002)............................................................................................................................3

*Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004)...................2, 3

*In re Cruciferous Sprout Litigation*, 301 F.3d 1343 (Fed. Cir. 2002) ................................3

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572 (Fed.Cir.1996).............6

*Linkco, Inc. v. Fujitsu Ltd.*, 00 Civ. 7242, 2002 WL. 1585551 (S.D.N.Y. July 16, 2002)............................................................................................................................9

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..........................................8, 9, 10

*SRI International v. Matsushita Electric Corp. of America*, 775 F.2d 1107 (Fed. Cir. 1985).....................................................................................................................8

*In re Sabatino*, 480 F.2d 911 (C.C.P.A. 1973) ..................................................................6

*Sinorgchem Co., Shandong v. International Trade Commission*, 511 F.3d 1132 (Fed. Cir. 2007) .....................................................................................1, 2, 4, 8, 10

*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995)...................8, 9

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, Case No. 2007-1201, -1239 (Fed. Cir. April 11, 2008).........................................................................8

*Vas-Cath*, 935 F.2d at 1565 ...............................................................................................3

*White v. Dunbar*, 119 U.S. 47 (1886)..................................................................................2

## FEDERAL STATUTES

37 C.F.R. § 1.77...................................................................................................................1

## I.    INTRODUCTION

Plaintiffs argue that the claims should be construed to encompass the "goal" or "objectives of the inventions." *See, e.g.,* Plaintiff's Memorandum of Law regarding Claim Construction ("Pl. Mem."), at 3, 4, 8, 13, 15, 18, 20. That "goal" is to provide certain chemicals ("G&I") through diet. Thus, according to Plaintiffs, if one has crucifers in any ingestible form in one's diet, then it is covered by their patents. To ensure their "goal" is met, they insist on claim constructions that are completely at odds with the definitions provided by the patent applicants and the ordinary meaning of well-known and well-documented terms. Plaintiffs object to the constructions proposed by Caudill because they define the scope of the asserted claims according to the words – words that were chosen by the patent applicants to describe their invention. The canons of claim construction do not allow this. The Court should accept Caudill's proposed claim constructions and reject Plaintiffs' attempt to improperly expand claim scope to encompass the "goal" of their invention by molding claim language retrospectively.

## II.    ARGUMENT

### A.    "Food Product" Was Clearly, Deliberately, and Precisely Defined In the Patents

The Court of Appeals for the Federal Circuit has been crystal clear: when a patent applicant defines a term in the patent, that definition is binding. *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007). In the patents-in-suit, the applicants were unambiguous that they were defining the term "food product." They created a special section in the patent specification entitled "Definitions" for the few words they chose to specially define. Such a section is not a required part of the patent specification. 37 C.F.R. § 1.77. The patent applicants purposely chose to include a "Definitions" section in their patent application and "food product" was among the few defined terms. The applicants acted as their own

lexicographer and "clearly, deliberately, and precisely defined" the term "food product."

*Sinorgchem,* 511 F.3d at 1136; Exh. 1-A, at col. 6, ll. 26-31.

Now, in litigation, Plaintiffs struggle to distance themselves from this plain definition, by turning a blind eye to that portion of the express definition that they find inconvenient. Plaintiffs cannot now change the words chosen by the patent applicants when the patent application was filed. *Chef Am., Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("Thus, in accord with our settled practice we construe the claim as written, not as the patentees wish they had written it."). Plaintiffs' tactics are as improper today as they were over 120 years ago:

> Some persons seem to suppose that a claim in a patent is like a nose of wax which may be turned and twisted in any direction, by merely referring to the specification, so as to make it include something more than, or something different from what its words express. The context may, undoubtedly, be resorted to, and often is resorted to, for the purpose of better understanding the meaning of the claim; but not for the purpose of changing it, and making it different from what it is. The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.

*White v. Dunbar,* 119 U.S. 47, 51-52 (1886).

Plaintiffs ask this Court to disregard the clear definition of food product provided by the patent applicants and to twist that term to "include something more than, or something different from what its words express." *Id.* The applicants expressly limited this term to ingestible preparations that contain sprouts or extracts or preparations made from sprouts. Exh. 1-A, col. 6, ll. 26-31. They cannot walk away from that limitation after the patents have issued by relying on the "goal of the claimed invention." Pl. Mem., at 15.

Plaintiffs argue that only their proposed construction is "consistent with the objectives of the invention." Pl. Mem., at 18. According to Plaintiffs, the "goal of the claimed invention" is to provide beneficial chemicals, glucosinolates and isothiocyanates which are Phase 2 enzyme

inducers ("G&I"), using a dietary approach. Pl. Mem., at 15. They are attempting to expand their claims to cover any "dietary" approach, *i.e.,* anything ingestible that comes from or contains any crucifer, no matter how it is produced. That argument fails for two reasons.

First, the Court of Appeals for the Federal Circuit has been very clear. Patent scope is limited to the words of the claim. *Vas-Cath,* 935 F.2d at 1565. There is no coverage for the "goal" of the invention. *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1345 (Fed. Cir. 2002) ("It is well settled that 'there is no legally recognizable or protected 'essential' element, 'gist' or 'heart' of the invention in a combination patent.'"). In other words, if the words chosen by the patent applicants do not cover the "goal" of their invention, those words cannot be expanded by claim construction in litigation. *Chef Am.,* 358 F.3d at 1374 (refusing to construe "to" to mean "at" in a claim directed to baking dough, where the claim stated heating dough "to" 400 - 850 degrees, which burned the dough to a crisp thereby preventing the patented process from performing the function the patentees intended).

Second, the named inventors of the patents-in-suit did not invent a cure for cancer. In fact, in the patent itself, the patent applicants admit that the compounds of interest (G&I) were known; that G&I's cancer-fighting ability was known; that these compounds were found in crucifers was known and how to obtain G&I from crucifers was known. Caudill's Brief on Claim Construction ("Brief"), at 3-4. As the Federal Circuit noted when it held all of the claims of the patents-in-suit that were asserted in a previous lawsuit to be invalid, these facts were well-documented in the published literature years before the filing date of the first application of the patents-in-suit. *See In re Cruciferous Sprout Litigation,* 301 F.3d 1343, 1350-52 (Fed. Cir. 2002). As the patent applicants explained, the only thing they developed was a better way to remove G&I from broccoli. Exhibit 1-A, col. 8, ll. 25-28.

Although not necessary, Caudill's construction is not inconsistent with Plaintiffs' alleged "goal." There is no reason that a sprout- or sprout preparation or sprout extract-containing product is not ingestible. In fact, all of the patent examples are of sprout or sprout extracts, some of which are eaten. *See, e.g.,* Exh. 1-A at Examples 10 and 11. Furthermore, these examples show that Phase 2 enzyme inducers, G&I, are present in these sprouts or sprout extracts. *Id.* The addition of seeds into a food product containing sprouts is not inconsistent with Caudill's claim construction. The patent teaches that "[f]ood products of the instant invention may include sprouts, seeds or extracts of sprouts or seeds taken from one or more different crucifer genera, species, varieties, subvarieties or cultivars." Exh. 1-A, col. 11, at 11. 50-53. In other words, the claimed "food product," which must contain sprouts or sprout extracts or sprout preparations, can include any of those items in addition to the sprouts. Nowhere is there any prohibition against adding seeds to a sprout- or sprout extract- containing food product.

Plaintiffs lean on their "expert", Mr. Sybert, to bolster their broad construction of food product. Mr. Sybert purports to explain what the term "food product" would mean to "one of skill in the art at the time of the invention." Pl. Mem., at 19. He merely regurgitates Plaintiffs legal arguments. This is not surprising, given the fact that Plaintiffs' counsel wrote his report for him. Exh. 11, Sybert Dep., p. 261, l. 2 – p. 266, l. 3. Moreover, he provides no objective evidence to support his assertion. For at least that reason, his opinion is neither relevant nor credible, and should be given no weight. *Sinorgchem,* 511 F.3d at 1137, n. 3.

Plaintiffs attack Caudill's construction as too narrow, but they never explain why the clear definition provided by the patent applicants does not control. Pl. Mem., at 21. In essence, they call Caudill's construction "nonsensical" because that construction does not cover Caudill's product or its process. Plaintiffs wrongly attempt to bolster their arguments by pointing to

- 4 -

claim 9 of the '122 patent, which does not even include the term "food product."

### B.    Extract

"Extract" is a word used in everyday conversation, *e.g.,* to "extract" a tooth. It is also a word that has a well-known technical meaning, as shown by the various technical treatises cited by Caudill's expert, Dr. Ziegler, and listed in Caudill's Exh. AA to its Brief, at 17 -18. Caudill's construction recognizes that "extract," and its variations, means "to remove." This meaning comports with the plain meaning of the word and its usage in the technical context.

Plaintiffs provide a construction for the term "extract" as a noun. This is not the only term in the patents-in-suit to be construed. "Extract" and its variations are used in the claims as a noun, a verb, and an adjective (in two senses in the patent claims). Each of those uses needs to be construed in the context of the claims. Plaintiffs seem to assert that only the noun "extract" needs to be construed; they have not provided a contradictory construction to those proposed by Defendants for "extracting ... from," and "extracted." As a result, the Court should adopt Caudill's proposed constructions for "extracting ... from" and "extracted."

To the extent Plaintiffs' proposed construction can be understood to apply to the various uses of "extract" throughout the patent claims, it is not supported by the plain meaning of the words, their use in the context of the patent claims, the patent specification, the prosecution histories of the patents-in-suit, or the relevant, admissible extrinsic evidence.

As noted above, "extract" is used as a verb in everyday speech to mean "remove." The patent claims highlighted by Plaintiffs themselves reinforce this meaning: Claim 9 of the '567 patent requires "extracting glucosinolates and isothiocyanates <u>from</u>" sprouts or seeds. Even if extract could be read so broadly as to encompass any of Plaintiffs' vaguely defined "manipulation" to cause separation into their "component fractions," the word "from" in the

- 5 -

claims requires that the separation result in the G&I being removed <u>from</u> or separated <u>from</u> the seed or sprout. To ignore the term "from" would run afoul of the rule that "we must give meaning to all words in [the] claims," *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1582 (Fed.Cir.1996) (citations omitted), and, similarly, that "claim limitations defining the subject matter of the invention are never disregarded." *In re Sabatino*, 480 F.2d 911, 913 (C.C.P.A. 1973). The phrase requires that after the step of "extracting" or "manipulating," the seed or sprout and the G&I are no longer together.

Comparing Plaintiffs' description (Pl. Mem., at 8-9) to the words of claim 9 of the '567 patent shows that Plaintiffs are choosing their words carefully to avoid the obvious meaning of the claim terms. The claim requires "extracting glucosinolates and isothiocyanates <u>from</u> cruciferous sprouts rich in glucosinolates . . . or from cruciferous seeds, or a combination thereof, with a non-toxic solvent [and] removing the extracted sprouts, seeds, or a combination thereof from said solvent." Plaintiffs argue that this fairly straightforward statement means the starting material (seeds or sprouts) is manipulated by exposing it to a non-toxic solvent" and [f]ollowing exposure to the solvent, the extracted sprouts and/or seeds are removed from the solvent, resulting in a solvent fraction and a fraction that is mostly extracted seeds and/or sprouts." Pl. Mem., at 9. Plaintiffs are working much too hard – there are far too many words in their explanation of these simple steps. The plain meaning of the claim does not support such a convoluted construction.

Plaintiffs argue that the patent specification supports their complex construction. They rely on a carefully edited passage from the patents. Pl. Mem., at 11. The part of the paragraph that is represented by the ellipses in their quoted passage is telling. It describes a process that tracks Caudill's construction:

> The sprouts can be extracted with cold, warm, or preferably hot or boiling water
> which denature or inactivate myrosinase. The <u>residue</u> of the sprouts, post-
> extraction, may or may not be removed from the extract.

Exh. 1-A, col. 11, ll. 22-26. The reference to the "residue of sprouts" makes clear that it is the

material that is left-over. It has been depleted of the desirable material – the G&I. This residue

is the "extracted sprout" of the claims. The G&I have been removed to the water solvent. That

water containing the G&I is the "extract."

As with "food product," Plaintiffs must lean on their "expert", Mr. Sybert. Contrary to

the Federal Circuit warnings about the limitations on using expert witnesses, Plaintiffs have

Mr. Sybert argue, based on his review of the patent and its prosecution history, that "extract" has

the meaning they espouse. He further argues that his forty years of experience have taught him

that "extract" means to manipulate a starting material "by exposing them to a solvent in such a

way that two or more fractions are produced, including one that contains glucosinolates and

isothiocyanates." Pl. Mem., at 12.

This assertion is not supported by Mr. Sybert's deposition testimony and the facts.

Mr. Sybert stated that he did not use the term "extract" in his career. Exh. 11, p. 117, ll. 11-21,

p. 118, ll. 14-18. He said that he did not remember it being used to describe processes for which

he received a patent. *Id.*, p. 95, l. 13 – p. 96, l. 15. In fact, U.S. Patent Nos. 4,488,912 and

4,547,226, Exhs. FF & GG, respectively, on which Mr. Sybert is a named inventor, describes and

claims an extraction process in which sugars are extracted, or removed, from citrus solids using

hot water as a solvent. Furthermore, Mr. Sybert points to no treatises or other documentation to

support his claim construction. In fact, he knows of none that supports his position. Exh. 11, p.

199, ll. 4-13.

The rules of claim construction are clear: one looks at how one of skill in the art would understand the claim terms to mean <u>at the time the patent application was filed</u>. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). In this case, the relevant time frame is September 15, 1995. Furthermore, it is improper to look to the accused product or process when construing claim terms. *SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1118 (Fed. Cir. 1985). It is true that Caudill used to call its product a "broccoli seed extract." First, under the former Agreement, BPP controlled Caudill's labeling and insisted on that language. Exh. HH, Agreement, at §§ 3.4; 4.3. Second, the time frame (more than 10 years after the patent filing date) makes such usage by Caudill irrelevant and a waste of this Court's time. Third, usage of the term "extract" was marketing speak, not a technical evaluation. In fact, BPP admitted the SGS 100 product, discussed at Pl. Mem., at 12, was not an extract. Exh. II, B013380 (Parenthetical and Exhibit II redacted).

### C.    Caudill's Expert Provided The Only Proper Evidence Of Claim Term Meanings

The Court of Appeals for the Federal Circuit has held that conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court. *Id.* at 1318.; *see Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, Case No. 2007-1201, -1239, slip op., at 12 (Fed. Cir. April 11, 2008) (The Court found the expert testimony, which simply recited how the expert construed the term "computer system" based on his own reading of the specification, to be of no use since the expert failed to identify the "accepted meaning in the field" to one skilled in the art. ); *Sinorgchem*, 511 F.3d at 1137 n.3 (Fed. Cir. 2007) (The Court found expert testimony about the meaning of specification terms to be of no use where the expert failed to present evidence of the generally accepted meaning of those terms to persons of ordinary skill in the art); *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1577-78 (Fed.

- 8 -

Cir. 1995) (Court dismissed expert testimony of two technical experts who stated 'it is my opinion the term means...' as conclusory legal opinions rather than as evidence of how that term is commonly used and understood in the art.); *cf. Linkco, Inc. v. Fujitsu Ltd.*, 00 Civ. 7242, 2002 WL 1585551, at \*4 (S.D.N.Y. July 16, 2002) ("While it is permissible for an expert to base his own opinion on his own experience, he must do more than aver conclusorily that his experience led to his opinion," without benefit of citation to research, studies or other generally accepted support for expert testimony.).

In addition to the fact that Mr. Sybert lacks relevant experience in the field of food processing, his report offers nothing but unsupported, conclusory legal opinions about the meaning of "extract" and "food product" based on his own reading of the specification and prosecution histories. Mr. Sybert admitted that neither he nor his coworkers use those words, and, in particular, would not use them to describe the process. Exh. 11, p. 261, l. 2 – p. 266, l. 3. Further, he does not support his construction with technical publications or books or any other generally accepted materials that provide support for expert testimony, rather he simply gives his improper, unsupported legal conclusions. *Southwall Techs.*, 54 F.3d at 1577-78. These conclusory legal opinions are not appropriate for the role of an expert and appear to be the type of biased, litigation-induced opining that the Federal Circuit attempted to stamp out in *Phillips*, 415 F.3d at 1317-18.

In contrast to Mr. Sybert, Dr. Ziegler is an expert in the field of producing foods. He has formal training and practical experience in the production of food. Ziegler Expert Report, Exh. 8, at 3-4; *see also,* Curriculum Vitae of G. Ziegler, at Exh. 8. Unlike Mr. Sybert, who claimed the term "extract" and its variations was not used in his experience, Dr. Ziegler is familiar with the term, uses it regularly, and has published on the topic. *Id.* He also maintains

-9-

extraction equipment as part of his research program. *Id.* He is certainly familiar with what a person of ordinary skill in the art of extraction would know and what terminology such a person would use.

In conformance with the Federal Circuit rules regarding expert testimony, Dr. Ziegler has provided the Court objective, documented evidence of what a person of ordinary skill in the art at the time the patent application was filed would think the term "extract" and its variations mean. *Sinorgchem*, 511 F.3d at 1137 n.3. He has provided numerous treatises in the relevant art from the relevant time period, including at least one that refers to extracting materials from seeds – the very subject in dispute. Robert E. Treybal, Mass-Transfer Operations 477, 717-19 (3d ed. McGraw-Hill Book Company 1980). Exh. CC at CSC023323-26; *see also,* Exh. AA to Caudill's Brief.

Dr. Ziegler properly did not provide conclusory legal opinions – he did not trod on the province of the Court. He provided relevant technical background material. *Phillips,* 415 F.3d at 1318.

### D.    Other Claim Terms to be Construed

Plaintiffs assert that the balance of the claim terms proposed by Caudill need not be construed. However, because they do not agree with Caudill's proposed construction, each of the terms is properly before this Court to be construed and should be construed as proposed by Caudill in Exh. AA.

## III.    CONCLUSION

For all of the reasons set forth above, and in Caudill's Claim Construction Brief, including its exhibits, the terms of the asserted claims should be construed as proposed by Caudill.

- 10 -

Respectfully submitted,

Gregory P. Gulia
Vanessa C. Hew
DUANE MORRIS LLP
1540 Broadway
New York, NY 10036-4086
Tel: (212) 692-1000
Fax: (212) 692-1020 (fax)

and

Ann G. Schoen
FROST BROWN TODD LLC
2200 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
(513) 651-6128
(513) 651-6981 (fax)


Attorneys for Defendant
Caudill Seed & Warehouse Co. Inc.
d/b/a Caudill Seed Co.

- 11 -

CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2008, a redacted version of Caudill Seed & Warehouse

Co., Inc.'s Reply in Support of Its Claim Construction Brief was filed with the Clerk of the Court

via ECF and served in accordance with Southern District's Rules on Electronic Service and an

unredacted version of Caudill Seed & Warehouse Co., Inc.'s Reply in Support of Its Claim

Construction Brief was served by first class mail upon the following parties:

Richard S. Taffet
Edward L. Powers
Bingham McCutchen LLP
399 Park Avenue
New York, NY  10022-4689

Edwin Grullon

- 12 -